## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Bk. No. 00-02142 (PJW) |
| STONE & WEBSTER, INCORPORATED ) | Jointly Administered |
| <u>et al.</u>, ) | |
| ) | |
| Debtors ) | |
| ) | |
| SAUDI AMERICAN BANK ) | Civil No. 06-399-SLR |
| ) | |
| Appellant, ) | |
| v. ) | |
| ) | |
| SAUDI ARABIAN OIL COMPANY, ) | |
| STONE & WEBSTER, INC., STONE & ) | |
| WEBSTER ENGINEERING CORP. and ) | |
| SWE&C LIQUIDATING TRUSTEE, ) | |
| ) | |
| Appellees. ) | |

## <u>APPELLANT SAUDI AMERICAN BANK'S OPENING BRIEF IN SUPPORT OF ITS APPEAL OF THE BANKRUPTCY COURT'S DENIAL OF SAUDI AMERICAN BANK'S MOTION TO INTERVENE</u>

**Monzack & Monaco, P.A.**
Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8163

**Kirkpatrick & Lockhart Preston Gates Ellis LLP**
Daniel E. Rosenfeld
John C. Hutchins
Amy B. Abbott
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

Dated: January 16, 2007

59372

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv-vi

I.     NATURE AND STAGE OF THE PROCEEDINGS .......................................................... 1

       A.    Nature of the Proceedings........................................................................................ 1

             1.    Debtors' Complaint in Adversary Proceeding No. 02-03963...................... 1

             2.    SAMBA's Complaint in Intervention......................................................... 2

       B.    Stage of the Proceedings.......................................................................................... 2

II.    SUMMARY OF THE ARGUMENT ................................................................................. 7

III.   CONCISE STATEMENT OF FACTS ............................................................................... 8

       A.    SAMBA is Entitled to Avail Itself of All Collateral Security Until
             SAMBA Receives Payment in Full of BS&W's Obligations................................... 9

             1.    Assignment of Contract Proceeds............................................................... 9

             2.    SWEC's Guaranty...................................................................................... 13

                   a.    SAMBA has Not Collected Any Principal or Interest
                         Due and Owing on the '98 Loan...................................................... 13

                   b.    "Preference Action" – Adversary Proceeding No. 01-
                         1120................................................................................................ 14

                   c.    "Recovery Action" – Adversary Proceeding No. 01-
                         7766................................................................................................ 14

IV.    ARGUMENT.................................................................................................................... 16

       A.    The Bankruptcy Court's Denial of SAMBA's Motion to Intervene as
             of Right Constitutes Reversible Error..................................................................... 17

             1.    SAMBA Satisfied the Elements of Federal Rule of Civil
                   Procedure 24(a)(1) .................................................................................... 17

             2.    SAMBA Also Satisfied the Elements of Federal Rule of Civil
                   Procedure 24(a)(2) .................................................................................... 19

                   a.    SAMBA's Application for Intervention is Timely ......................... 19

                   b.    SAMBA has an Interest in the Property Which is the
                         Subject of the Saudi Aramco Proceeding ...................................... 19

        c.     The Disposition of the Saudi Aramco Proceeding Without SAMBA's Involvement Will Impair or Impede SAMBA's Ability to Protect its Interests ........................20

        d.     SAMBA is not Adequately Represented by the Existing Parties ..............................................................................22

B.    The Bankruptcy Court's Denial of SAMBA's Motion to Intervene Constitutes an Abuse of Discretion.........................................................................23

C.    The Bankruptcy Court's Order Denying SAMBA's Motion to Intervene is Not Supported by the Doctrines of Election of Remedies or Judicial Estoppel................................................................................................24

    1.     SAMBA Should Not be Estopped from Intervening in the Saudi Aramco Adversary Proceeding Because Neither the Election of Remedies nor the Judicial Estoppel Doctrine is Applicable to the Facts Before the Court...................................................25

    2.     SAMBA has Neither Pursued Nor Taken Inconsistent Positions Concerning its Security Interest in the Proceeds of the In-Kingdom Contract ..........................................................26

    3.     Satisfaction has Not Been Obtained in the Recovery Action ....................27

    4.     Under New York Law, Which Governs the Guaranty, the Election of Remedies Doctrine Does Not Apply to Remedies for the Enforcement of Commercial Loans ...............................................27

    5.     The Theory of Judicial Estoppel is Inapplicable to the Facts Before the Bankruptcy Court.....................................................................28

D.    The Bankruptcy Court's Statements and Purported Reasoning for Denying SAMBA's Motion to Intervene do Not Constitute Proper Grounds for the Denial of SAMBA's Motion .........................................................29

    1.     SAMBA's Complaint in Intervention Establishes, *Prima Facie*, a Valid and Enforceable Assignment of Contract Proceeds ....................................................................................................30

    2.     Federal Courts Routinely Decide Issues of Foreign Law ..........................31

    3.     The Possible Availability of Another Forum in Which SAMBA Could Prosecute its Claim Does Not Defeat SAMBA's Substantial Interest in the Saudi Aramco Proceeding..................................................................................................33

E.    The Bankruptcy Court's Comments and Conduct Require Withdrawal
of the Reference or Reassignment of the Case Upon Remand ...............................33

V.    CONCLUSION...................................................................................................................40

## TABLE OF AUTHORITIES[1]

### FEDERAL CASES

Adrian Research and Chemical Co., 269 F.2d 734 (3rd Cir. 1959)...............................................26

Alexander v. Primerica Holdings, 10 F.3d 155 (3rd Cir. 1993) ...............................................35, 39

Ali v. Al-Faisal, 73 F.3d 356 (4th Cir. 1995) ...........................................................................32, 38

Central States, Se. and Sw. Areas Health and Welfare Fund v. Old Sec. Life
    Insurance Co., 600 F.2d 671 (7th Cir. 1979) .......................................................16, 17, 30

Chadwick v. Arabian American Oil Co., 656 F. Supp. 857 (D. Del. 1987) ...................................38

Clark v. Sandusky, 205 F.2d 915, 918 (7th Cir. 1953) ..................................................................33

In re Charles Bobroff, Civ. A. No. 89-8123, 1990 WL. 178557 (E.D. Penn. 1990) .....................28

Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54 F.3d 156
    (3rd Cir. 1995) ...................................................................................................................22

In re EXDS, Inc., 316 B.R. 817 (Bankr. D. Del. 2004) .................................................................28

Fairley v. Andrews, 423 F. Supp. 2d 800 (N.D. Ill. 2006) ............................................................40

In re First Interregional Equity Corp., 218 B.R. 731 (1997) ...................................................18, 23

In re First Quality Realty, LLC, No. 02-14758(PCB), 2006 WL. 686868 (Bankr.
    S.D.N.Y. Feb. 17, 2006) ......................................................................................................4

Fogleman v. ARAMCO (Arabian America Oil Co.), 920 F.2d 278 (5th Cir. 1991)...............32, 38

Forzley v. AVCO Corp. Electric Division, 826 F.2d 974 (11th Cir. 1987)....................................32

Gregory v. Correctional Connection, Inc., Civ. A. No. 88-7990, 1990 WL 178207
    (E.D. Pa. Nov. 13, 1990)....................................................................................................19

Haines v. Liggett Group Inc., 975 F.2d 81 (3rd Cir. 1992) .....................................................34, 37

Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc., 107 B.R. 34 (D. Del.
    1989) ..................................................................................................................................34

Jet Traders Investment Corp. v. Tekair, Ltd., 89 F.R.D. 560 (D. Del. 1981) ................................19

---

[1] Unpublished and/or unreported decisions are attached hereto as Exhibit 1.

In re Kensington International Limited, 368 F.3d 289 (3rd Cir. 2004) ....................................34, 35

LaSalle National Bank v. First Connecticut Holding Group, L.L.C. XXIII, 287
    F.3d 279 (3rd Cir. 2001) ...............................................................................................35, 39

Matter of Marin Motor Oil, Inc., 689 F.2d 445 (3rd Cir. 1982) ......................................................18

In re Mason, 916 F.2d 384 (7th Cir. 1990) ....................................................................................35

McGhee v. Arabian American Oil Co., 871 F.2d 1412 (9th Cir. 1989) ........................................32

Mountain Top Condo. Association v. Dave Stabbert Master Builder, Inc., 72 F.3d
    361 (3rd Cir. 1995) ......................................................................................................20, 21

In re Onco Investment Co., 320 B.R. 577 (D. Del. 2005) ..............................................................38

Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208 (1st Cir. 1987) ............................28

Pennamco, Inc. v. Nardo Management Co., 435 A.2d 726 (Del. Super. 1981) .............................30

Phar-Mor, Inc., v. Coopers & Lybrand, 22 F.3d 1228 (3rd Cir. 1994) ..........................................18

Princeton-New York Investors, Inc., 255 B.R. 376 (D. N.J. 2000) ................................................25

Prudential Prop. & Casualty Insurance Co. v. Leach, No. Civ. A. 03-6352, 2004
    WL 1243763 (E.D. Pa. June 7, 2004) ..................................................................................22

Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355 (3rd Cir.
    1996) ....................................................................................................................................28

United Minerals and Grains Corp. v. Hong Sung Industrial Co., 76 B.R. 991
    (E.D. Pa. 1987) .........................................................................................................17, 19, 24

United States v. Alcan Aluminum, Inc., 25 F.3d 1174 (3rd Cir. 1994) ....................................16, 20

United States v. DeTemple, 162 F.3d 279 (4th Cir. 1998) .............................................................35

United States v. Jordan, 49 F.3d 152 (5th Cir. 1995) ....................................................................35

United States v. State Street Bank and Trust Co., No. ADV A-01-04605, 2002
    WL 417013 (Bankr. D. Del. Mar. 4, 2002) ..........................................................17, 18, 22

Webbe v. McGhie Land Title Co., 549 F.2d 1358 (10th Cir. 1977) ...............................................37

# FEDERAL STATUTES

11 U.S.C. § 1109(b) ..................................................................................................17, 18

28 U.S.C. § 157 ..........................................................................................................7, 34

28 U.S.C. § 158(a) .............................................................................................................1

28 U.S.C. § 455(a) ...........................................................................................................34

Fed. R. Bankr. P. 5004(a) ...........................................................................................34, 35

Fed. R. Bankr. P. 7024 ....................................................................................................16

Fed. R. Bankr. P. 9007 ....................................................................................................32

Fed. R. Civ. P. 8(c) .........................................................................................................24

Fed. R. Civ. P. 24(a) ....................................................................................16, 17, 19, 24

Fed. R. Civ. P. 24(b) ..................................................................................................23, 24

Fed. R. Civ. P. 44.1 .........................................................................................................33

# STATE STATUTE

N.Y. Real Property Actions and Proceedings Law § 1301 (McKinney 1962)
(A1763) ......................................................................................................................27

# TREATISES

25 Am. Jur. 2d Election of Remedies §§ 4, 21 ...............................................................25

Business and Commercial Litigation in Federal Courts §§ 6.1(i)(2), 12.8 (Robert
L. Haig ed.) (West Group & ABA 1998) ................................................................24

Wright & Miller Federal Practice and Procedure: Civil 3d § 1902 .........................16, 30

Wright & Miller Federal Practice and Procedure: Civil 3d § 1271 ................................24

Wright, Miller & Cooper Federal Practice and Procedure: Jurisdiction 2d § 4106.......34

# PERIODICAL

Daniel Wise, Bankruptcy Arbitration Award is Overturned, 36 N.Y.L.J., Feb. 23,
2006.............................................................................................................................4

## I.    NATURE AND STAGE OF THE PROCEEDINGS

### A.    Nature of the Proceedings

Saudi American Bank ("SAMBA"), the movant for intervention in Adversary Proceeding No. 02-03963-PJW ("Saudi Aramco Proceeding"), appeals under 28 U.S.C. § 158(a) from the May 1, 2006 Bankruptcy Court Order denying SAMBA's Motion to Intervene in the Saudi Aramco Proceeding.

#### 1.    Debtors' Complaint in Adversary Proceeding No. 02-03963

Stone & Webster, Incorporated ("SWINC"), and its direct and indirect subsidiaries, including Stone & Webster Engineering Corporation ("SWEC")[2], (collectively, "Debtors"), commenced Adversary Proceeding No. 02-03963-PJW against Saudi Arabian Oil Company ("Saudi Aramco"). Debtors' Complaint sets forth four causes of action against Saudi Aramco, including counts for declaratory relief, indemnification, breach of contract and turnover. Debtors' Complaint principally concerns the rights to payments and proceeds under a certain contract, Contract No. 65004/00 ("In-Kingdom Contract"), between Saudi Aramco and Bugshan Stone & Webster ("BS&W") for the design and construction of various facilities at an oil refinery owned by Saudi Aramco located in Ras Tanura, Saudi Arabia. Most notably, Debtors' Complaint seeks damages allegedly caused by Saudi Aramco's breach of its contract with BS&W, and the turnover of $148 million due and owing from Saudi Aramco to BS&W under the In-Kingdom Contract. The Debtors have alleged that the amount owed with respect to the In-Kingdom Contract constitutes an asset of BS&W, to which SWEC is entitled to assert rights and which constitutes estate property held by Saudi Aramco.

---

[2] The SWE&C Liquidating Trustee is the successor to Stone & Webster Engineering Corporation.

## 2.    SAMBA's Complaint in Intervention

SAMBA's Complaint in Intervention is an action for declaratory and injunctive relief. SAMBA has a first security interest in the proceeds of the In-Kingdom Contract under an Assignment of Contract Proceeds made by BS&W in favor of SAMBA and acknowledged by Saudi Aramco (the "Assignment of Contract Proceeds"), so that any proceeds arising from settlements between or among Saudi Aramco and the shareholders of BS&W, namely Debtors and Abdullah Said Bugshan & Brothers ("ASB&B"), or judgments resulting from Debtors' Complaint against Saudi Aramco, must be paid directly to SAMBA for credit against BS&W's liability to SAMBA for unpaid loans. SAMBA's contractual rights under the Assignment of Contract Proceeds, along with Saudi Aramco's acknowledgement of those rights, entitle SAMBA to a first priority right to receive all payments made by Saudi Aramco in connection with the In-Kingdom Contract. To protect SAMBA's first priority right, SAMBA moved to intervene in the Saudi Aramco Proceeding.

## B.    Stage of the Proceedings

Debtors commenced the Adversary Proceeding against Saudi Aramco on or about May 31, 2002. [D.I. 1][3] (A1-22)[4]. On or about September 25, 2002, Saudi Aramco filed a motion to dismiss Debtors' Complaint. [D.I. 4] (A27-28). Debtors have not filed an opposition to that motion, and a notice of completion of briefing has not been filed.

On or about September 27, 2002, Saudi Aramco filed a motion in the District Court for withdrawal of the reference and a motion for a determination that the Adversary

---

[3] Unless otherwise noted, all docket entry citations are to Adversary Proceeding No. 02-03963-PJW.

[4] All citations to pages with an "A" prefix are to SAMBA's Record on Appeal.

2

Proceeding is a non-core proceeding. [D.I. 10, 12] (A399-400, A435-436). On August 12, 2004, the District Court dismissed the motion to withdraw the reference "without prejudice to renew should settlement efforts fail. . . ." [D.I. 29] (A1505).

On or about November 7, 2002, SAMBA filed a Motion to Intervene and Join ASB&B as a Defendant, an Opening Brief in Support of its Motion and a Complaint in Intervention.[5] [D.I. 19-20] (A1309-1436). On or about December 9, 2002, Debtors filed an Answering Brief in Opposition to SAMBA's Motion to Intervene, and on or about December 19, 2002, SAMBA filed a Reply Brief. [D.I. 23, 24] (1437-52, 1453-88). Finally, on or about December 23, 2002, SAMBA filed a notice of completion of briefing. [D.I. 25] (A1489-91).

For almost 18 months, the Bankruptcy Court took no action on SAMBA's Motion to Intervene, or otherwise. On June 7, 2004, the Honorable Peter J. Walsh appointed former Bankruptcy Judge Francis G. Conrad to preside at one or more sessions of non-binding mediation and stayed the case pending the conclusion of the mediation. [D.I. 28] (A1502-04). The Court ordered the SWE&C Liquidating Trustee, Saudi Aramco and SAMBA to participate in the mediation. In October of 2004, the parties participated in a mediation session in New York; however, the mediation did not result in a resolution that was acceptable to all parties. Nonetheless, Mr. Conrad apparently continued to mediate with Saudi Aramco and the SWE&C Liquidating Trustee, but excluded SAMBA from the process.

---

[5] SAMBA's Complaint in Intervention was filed as Exhibit A to SAMBA's Motion to Intervene and Join ASB&B.

3

On March 16, 2005, Mr. Conrad notified SAMBA's counsel of a potential adverse engagement.[6] After learning the nature of the adverse engagement and statements Mr. Conrad made in connection with that engagement, SAMBA determined that it would be in the best interest of the parties, including SAMBA, for Mr. Conrad to recuse himself as mediator in the Saudi Aramco matter.[7] See Letter from D. Rosenfeld to

---

[6] Specifically, Mr. Conrad sent an e-mail to Mr. Rosenfeld stating: "I want to advise you that a member of your firm, Gerald Novak, has been retained recently by a party to arbitration where I am the arbitrator. His retention is possibly adverse to me. I want to disclose this to you in the event it may impair my position as a mediator in this matter. I do not believe it does, but I wanted to disclose it to you because it is your call." (emphasis added). When SAMBA notified Mr. Conrad that it would be in the best interest of the parties for Mr. Conrad to recuse himself from the mediation, he refused.

[7] Kirkpatrick & Lockhart Preston Gates Ellis LLP, formerly known as Kirkpatrick & Lockhart Nicholson Graham LLP, ("K&L Gates") represented a party seeking to disqualify Mr. Conrad as an arbitrator and vacate the arbitration award issued by Mr. Conrad. The U.S. Bankruptcy Court in the Southern District of New York disqualified Mr. Conrad and vacated the arbitration award because Mr. Conrad's "actions both during the arbitration and while the matter was under advisement" gave rise to an appearance of partiality. See In re First Quality Realty, LLC, No. 02-14758(PCB), 2006 WL 686868 (Bankr. S.D.N.Y. Feb. 17, 2006) (disqualifying Mr. Conrad as arbitrator because during the course of the arbitration he (a) enjoyed private lunches and meetings with landlord's attorneys, clients and witnesses; (b) requested and received free use of landlord's attorneys' conference rooms and free legal support (without disclosure and consent of the opposing party); and (c) failed to disclose his direct interest in one of the landlord's attorneys' cases). Notably, the Bankruptcy Court's decision was the cover story of the February 23, 2006 issue of the New York Law Journal. See Daniel Wise, Bankruptcy Arbitration Award is Overturned, 36 N.Y.L.J., Feb. 23, 2006, at 1.

In connection with the above-mentioned arbitration and K&L Gates' motion to vacate the award based upon the appearance of bias, the following exchange took place at a hearing in the U.S. Bankruptcy Court in the Southern District of New York on March 23, 2005:

> Mr. Conrad: I have another statement I want to raise for record. I think Mr. Novak's firm [K&L Gates] already has a conflict. He should check his database. If he wants to raise issues about my neutrality, he should check his Saudi Arabia case.
>
> The Court: This is really getting nasty.

4

F. Conrad dated May 10, 2005 (A1523-24). Ultimately, Mr. Conrad refused to recuse

himself from the matter, despite his offer to do so; therefore, SAMBA brought Mr.

Conrad's conflict of interest to the Bankruptcy Court's attention. SAMBA's request to

have Mr. Conrad recused, however, was denied by Judge Walsh at a status conference

held in the Saudi Aramco Proceeding on June 13, 2005. See June 13, 2005 Transcript at

47-49 (A4274-4276).

On April 15, 2005, the SWE&C Liquidating Trustee filed a Status Report stating

that "the parties had met for a mediation and had tentatively settled the matter. . . . A

further mediation currently is scheduled for April 15, 2005." SAMBA had not been

made aware of and was not asked to participate in any discussions or mediation sessions

---

> Mr. Conrad: That is correct. I have already filed the
> necessary disclosures with one of the partners in his firm.
> He should check his database. That is all I have to say,
> Judge.
>
> The Court: All right.
>
> Mr. Conrad: I am glad to have appeared before you, but I
> feel bad that it will have to go down to some of the
> sleaziness that occurs when lawyers let their clients do their
> directions. That is how I feel and I am not holding back.

See June 13, 2005 Tr. at 38-39 (A4265-66). Mr. Conrad's hostile statements directed to
K&L Gates and the ensuing decision of U.S. Bankruptcy Court in the Southern District of
New York significantly call into question Mr. Conrad's ability to serve as an impartial
neutral in the Saudi Aramco Proceeding.

When SAMBA raised the issue of Mr. Conrad's hostility towards K&L Gates and
resulting disqualification in the arbitration case, however, Judge Walsh did not "see any
conflict involved here" or any "disqualification basis -- [.]" June 13, 2005 Tr. at 47, 49
(A4274, 4276). Judge Walsh stated that he did not understand Mr. Conrad's comments
to illustrate a belief that K&L Gates acted improperly, rather "he is characterizing
perhaps one or more of your partners, but I don't think that's an indictment of your firm,
by any means." Id. at 39 (A4266). Judge Walsh's failure to acknowledge the court
appointed mediator's appearance of partiality further calls into question Judge Walsh's
own impartiality. See infra § IV.E.

after the conclusion of the unsuccessful mediation session in October of 2004. It became apparent to SAMBA that the other parties and Mr. Conrad were excluding SAMBA from on-going mediation sessions and/or settlement discussions. Accordingly, SAMBA formally requested oral argument on its Motion to Intervene and requested that the Court officially terminate the mediation (as provided for in the Court's June 7, 2004 Order [D.I. 28] (A1502-04)).

At an omnibus hearing held on February 16, 2006, the Bankruptcy Court scheduled oral argument on SAMBA's Motion to Intervene for April 25, 2006. On April 18, 2006, the SWE&C Liquidating Trustee filed an Opposition to SAMBA's Motion to Intervene and on April 24, 2006, SAMBA filed a Reply. [D.I. 41, 46] (A1563-1618, A1713-75).

On April 25, 2006, the Bankruptcy Court heard oral argument on SAMBA's Motion to Intervene and the Honorable Peter J. Walsh summarily denied SAMBA's Motion from the bench. The transcript of the hearing suggests that the Bankruptcy Court arbitrarily denied SAMBA's Motion to Intervene on one or more of three improper grounds. The pertinent statements and comments of Judge Walsh at the hearing are as follows: (1) "whether [SAMBA] has an assignment is extremely questionable"; (2) "I don't think it's appropriate for this Court to decide Arabian commercial law issues"; and (3) "I see – understand no reason why the bank can't sue the oil company in the Courts in Saudi Arabia. It's home Court, as I indicated." Apr. 25, 2006 Tr. at 21, 24 (A1819).

As explained below, none of these enunciated grounds, singly or combined, provides a proper basis to deny SAMBA's Motion to Intervene. Accordingly, this Court

must reverse the Bankruptcy Court's ruling and grant SAMBA's Motion to Intervene in the Saudi Aramco Proceeding.

## II.   SUMMARY OF THE ARGUMENT

The May 1, 2006 Order of the Bankruptcy Court denying SAMBA's Motion to Intervene should be reversed for the following reasons:

First, the Bankruptcy Court erred in ruling that SAMBA is not entitled to intervene as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure. The Bankruptcy Court did not apply the correct legal standard and as a result, rendered an incorrect decision.

Second, the Bankruptcy Court abused its discretion in ruling that SAMBA is not entitled to intervene permissively pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.

Third, the Bankruptcy Court's order is not supported by the doctrines of election of remedies or judicial estoppel.

Fourth, the Bankruptcy Court's statements concerning the validity of SAMBA's Assignment of Contract Proceeds, the need to apply Saudi Arabian law and the availability of another potential forum, do not constitute proper grounds for denying SAMBA's Motion to Intervene.

Fifth, the comments and actions of the Bankruptcy judge give rise to an appearance of prejudice against SAMBA, calling into question his impartiality and necessitating withdrawal of the reference pursuant to 28 U.S.C. § 157(d), or in the alternative, reassignment of the case to another judge upon remand.

## III.    CONCISE STATEMENT OF FACTS

SAMBA, a Saudi Arabian bank, provided financing to BS&W. BS&W is a joint venture formed under the laws of Saudi Arabia and owned on a 50/50 basis by SWEC and ASB&B, a Saudi Arabian business enterprise. The purpose of the BS&W joint venture was to conduct an engineering and construction business in Saudi Arabia. SWEC did business in Saudi Arabia through BS&W and other affiliates.

In January of 1998, SAMBA made a loan of $35,000,000 to BS&W (the "'98 Loan"). In connection with its loan and related agreement to grant credit to BS&W, SAMBA sought and obtained two sources for repayment to supplement BS&W's contractual agreement to repay the loan. One such source was the In-Kingdom Contract. More specifically, SAMBA obtained security by means of an Assignment of Contract Proceeds of the revenues which BS&W would receive under the In-Kingdom Contract. A second source securing payment of the '98 Loan was the guaranties of the two owners of BS&W, SWEC and ASB&B, each of whom guaranteed payment of fifty percent (50%) of the '98 Loan.

For various reasons, SAMBA restructured the '98 Loan at the end of 1998 and began looking to the guarantors as the primary source of repayment. On the date of Debtors' bankruptcy petition, June 2, 2000, the amount outstanding on the portion of the loan for which SWEC had agreed to be responsible was $6,728,549.

Ultimately, BS&W defaulted on its obligations to SAMBA. ASB&B paid its obligations under its guaranty in full. However, the part of the '98 Loan covered by SWEC's guaranty has not been paid. As a result, SAMBA has been attempting to recover BS&W's outstanding obligations from the two remaining sources that SAMBA

8

negotiated for and obtained as security for the '98 Loan, namely the Assignment of

Contract Proceeds (as defined below) and SWEC's guaranty.

      A.     <u>SAMBA is Entitled to Avail Itself of All Collateral Security Until
SAMBA Receives Payment in Full of BS&W's Obligations</u>

          1.     <u>Assignment of Contract Proceeds</u>

To secure its obligations to SAMBA, on or about January 22, 1995, BS&W

executed and delivered to SAMBA an Assignment of Contract Proceeds. <u>See</u> Complaint

in Intervention at ¶ 29 (A1321). Pursuant to the Assignment of Contract Proceeds,

BS&W assigned to SAMBA its rights to all payments to be made by Saudi Aramco under

the In-Kingdom Contract, including proceeds of all claims arising out of the In-Kingdom

Contract. <u>See id.</u> at ¶ 30 (A1321). The Assignment provides that all proceeds of the In-

Kingdom Contract would be security for all obligations of BS&W to SAMBA and could

be applied by SAMBA in satisfaction of all such obligations, whether incurred in

connection with the In-Kingdom Contract or otherwise. <u>See id.</u> at ¶ 31(A1321).

BS&W agreed to notify all payors under the In-Kingdom Contract, including but

not limited to Saudi Aramco, that (a) an assignment of proceeds of the In-Kingdom

Contract was executed by BS&W in favor of SAMBA, (b) all proceeds of the In-

Kingdom Contract due to BS&W should therefore be paid directly to SAMBA, and (c)

BS&W's authorization would remain in effect unless and until such payors received a

written revocation signed by SAMBA. <u>See id.</u> at ¶ 32 (A1322).

BS&W also agreed that SAMBA could establish a collateral account for BS&W

and deposit all proceeds of the In-Kingdom Contract into such account. BS&W also

appointed SAMBA as its attorney to file claims, institute proceedings and take such other

9

actions concerning proceeds as SAMBA might consider necessary or desirable to protect its rights under the Assignment of Contract Proceeds. See id. at ¶¶ 34-35 (A1322).

By letter dated September 21, 1994, BS&W requested and authorized Saudi Aramco to pay SAMBA for credit to BS&W's account any and all compensation due from Saudi Aramco under the In-Kingdom Contract ("Specific Payment Instruction Letter"). See id. at ¶ 36 (A1322). The Specific Payment Instruction Letter further states, in pertinent part, that it shall not be revocable by BS&W and shall remain in effect until final settlement of the In-Kingdom Contract. See id. at ¶ 37 (A1323).

On or about November 13, 1994, Saudi Aramco executed an Acknowledgment of Assignment to BS&W, attaching BS&W's September 21, 1994 Specific Payment Instruction Letter. See id. at ¶ 38 (1323). Saudi Aramco sent a copy of the Acknowledgment of Assignment to SAMBA. See id.

On or about May 11, 2002 (prior to Debtors having commenced the Saudi Aramco Proceeding), SAMBA wrote to Saudi Aramco reminding it that the Assignment of Contract Proceeds remained in full force and effect and that the Specific Payment Instruction Letter, including the assignment and authorization referred to therein, was not revocable and continued in effect. See id. at ¶ 39 (A1323). SAMBA further requested and directed Saudi Aramco to continue to pay any proceeds (whether progress payments, retention payments, or in settlement of claims or otherwise) directly to SAMBA and notified Saudi Aramco that BS&W remained in debt to SAMBA for an amount in excess of $7,000,000. See id. In fact, BS&W's total obligation to SAMBA now exceeds $11,000,000.

By letter dated June 2, 2002 (the "2002 Confirmation"), Saudi Aramco confirmed to SAMBA that both the Assignment of Contract Proceeds and the authorization contained in the Specific Payment Instruction Letter are irrevocable and continue to be in full force and effect. See id. at ¶ 40 (A1323).

On October 3, 2002, at a hearing before the United States Bankruptcy Court for the District of Delaware, Debtors, Saudi Aramco and ASB&B represented to the Court that conditioned upon the resolution of a Saudi Lawsuit between BS&W and Mohammad Al-Mo'Jil Group (as described in ASB&B's Proof of Claim No. 4419), a settlement of the Saudi Aramco Proceeding would be presented to the Bankruptcy Court for final approval. Id. at ¶¶ 27, 46 (A1320, A1324). During the October 3, 2002 hearing, Debtors' counsel stated that the settlements between Debtors, Saudi Aramco and ASB&B all related to each other and that the settlement would resolve the Saudi Aramco Adversary Proceeding as well as ASB&B's Proof of Claim No. 4419 and Debtors' Objection thereto. Id. at ¶ 47 (A1324-25). Debtors' counsel also stated that the contract that gave rise to the disputes between Debtors and Saudi Aramco and Debtors and ASB&B was a contract between Saudi Aramco and BS&W. Id. at ¶ 48 (A1325). Upon information and belief, the contract to which Debtors' counsel was referring as having given rise to the disputes between Debtors and Saudi Aramco and Debtors and ASB&B is the In-Kingdom Contract. Id. at ¶¶ 48-49 (A1325).

On October 3, 2002, SAMBA's counsel informed Debtors' counsel that to the extent a settlement of the claims arising out of the In-Kingdom Contract involved a payment by Saudi Aramco to ASB&B or Debtors, such settlement would violate SAMBA's rights under the Assignment of Contract Proceeds. Id. at ¶ 50 (A1325). In

11

response thereto, Debtors' counsel made a statement to the effect that Debtors intended to
circumvent SAMBA's rights under the Assignment of Contract Proceeds and to damage
SAMBA by means of the proposed settlement. Id.

During the October 3, 2002 hearing, Debtors' counsel stated that the proposed
settlement between Debtors, Saudi Aramco and ASB&B included a pledge by Saudi
Aramco to pay at least $15,000,000 towards a resolution of the claims. Id. at ¶ 51
(A1325).

At the hearing on SAMBA's Motion to Intervene held on April 25, 2006, counsel
for the SWE&C Liquidating Trustee represented to the Court that since the mediation
session with Mr. Conrad in New York,

> the parties [excluding SAMBA] have continued to
> negotiate sometimes with and sometimes without the
> mediator in hopes of reaching an agreement. We have
> made some progress. . . . [W]e still think that settlement is
> possible. . . . I don't want to say that we are on the verge of
> a settlement, but we certainly have made great progress. . . .
> I would hope that within the very next few months we
> would be able to report to Your Honor one way or the other
> that we have reached a settlement, or that we would need to
> lift the stay in the case.

April 25, 2006 Tr. at 26-27 [D.I. 54] (A1821-22). To date, Debtors, Saudi Aramco and
ASB&B have neither filed settlement documents nor requested a hearing for approval of
a settlement of the Saudi Aramco Proceeding. As such, the Saudi Aramco Proceeding
remains stayed.

In addition, at the hearing on SAMBA's Motion to Intervene, counsel for the
SWE&C Liquidating Trustee represented to the Bankruptcy Court that if the "mediation
negotiations break down[,]" the SWE&C Liquidating Trustee has an Amended
Complaint ready to be filed

12

> that would make it absolutely abundantly clear that these
> claims are claims of SWEC, there are not claims of
> Bugshan, Stone, & Webster, [sic] and they're not claims of
> Abdullah Said Bugshan Brothers.  They are claims asserted
> by SWEC through its successor, the SWE&C Liquidating
> Trustee.

Id. at 26 (A1821).  The following exchange ensued:

> The Court:  Where did you say you stood on filing an
> amended complaint?
>
> Mr. Houpt:  . . . We do have an amended complaint.  It may
> not be, however, in the best interests of the mediation to
> file that complaint until and unless the mediation breaks
> down.
>
> The Court:  But it sounds to me like filing the amended
> complaint would further buttress the decision that I've just
> made.  That these are inconceivably proceeds that are owed
> to the creditor, I'm sorry, the Debtor to the bank.
>
> Mr. Houpt:  I think that is true, Your Honor.  I think it
> would buttress Your Honor's decision.

Id. at 27-28 (A1822-23).

### 2. SWEC's Guaranty

#### a. SAMBA has Not Collected Any Principal or Interest Due and Owing on the '98 Loan

SAMBA has been involved in two other separate, but related adversary

proceedings in connection with its efforts to seek recovery from the remaining sources of

repayment that SAMBA specifically bargained for when it made the '98 Loan to BS&W

– a preference action brought by the Debtors and a recovery action brought against the

Shaw Group, Inc. ("Shaw"), which purchased most of the assets of the Debtors shortly

after the Debtors' cases were filed and in connection with that purchase, assumed

liabilities of the Debtors.  As set forth below, despite SAMBA's participation in these

related adversary proceedings, SAMBA has not collected any portion of the principal or

13

interest due and owing on the '98 Loan. As such, SAMBA is entitled to proceed against Saudi Aramco and avail itself of all collateral security until its receives payment in full of BS&W's obligations with respect to the '98 Loan.

        b.      "Preference Action" – Adversary Proceeding No. 01-1120

Debtors and SAMBA entered into a settlement agreement in the Preference Action. Under the terms of the settlement agreement, SAMBA received from Debtors a one-time cash payment of $1,000,000, to be credited against attorneys' fees, and an allowed, general, unsecured claim in the amount of $2,500,000 against SWEC. See Settlement Agreement at ¶¶ 1, 2, 7 (A7206-07). In addition, the settlement agreement provided, in part, that if SAMBA recovered an amount in excess of $3,000,000 from Shaw in the Recovery Action, SAMBA's allowed claim against SWEC would be reduced dollar-for-dollar by the amount of such recovery in excess of $3,000,000. See id. at ¶ 7 (A7207). As of the date of this filing, SAMBA has not received any payment from Shaw under its Complaint against Shaw, SWINC and SWEC (the "Recovery Action"), nor has SAMBA received any distributions from SWEC on its general, unsecured claim. Significantly, the settlement agreement and the Order Approving the Settlement Agreement state that the settlement has no effect on this Adversary Proceeding or on SAMBA's Motion to Intervene. See id. at ¶ 5 (A7207); Order Approving Settlement Agreement at ¶ 5 (A7202). Thus, while the Preference Action is related to the Saudi Aramco Proceeding, SAMBA's efforts in the Preference Action do not preclude SAMBA from pursuing its security interest in the proceeds of the In-Kingdom Contract.

        c.      "Recovery Action" – Adversary Proceeding No. 01-7766

On October 18, 2001, SAMBA filed a complaint against Shaw, SWINC and SWEC to recover $6,725,000 plus interest and commissions accrued after May 31, 2000,

14

and expenses, including attorneys' fees, under SWEC's guaranty of the '98 Loan and a related letter agreement dated December 22, 1998 (the "Payment Letter") which established a payment schedule for SWEC to provide funds for repayment of BS&W's obligations to SAMBA. See generally Complaint of SAMBA [No. 01-7766-PJW, D.I. 1] (A1832-1908). SAMBA's Complaint alleged that Shaw had assumed and agreed to pay SWEC's liability under its guaranty of BS&W's obligations to SAMBA. See id. at ¶¶ 49-55 (A1842). On May 3, 2005, the U.S. District Court granted SAMBA's Motion for Summary Judgment. See Memorandum Opinion at 17 [No. 04-834-SLR, D.I. 11] (A5870). The District Court concluded that Shaw had assumed SWEC's liability to SAMBA under the secondary source for payment of the '98 Loan -- the Guaranty of BS&W's parent, SWEC. See id.

Shortly thereafter, SAMBA filed a Motion for Assessment of Damages and Shaw filed a Notice of Appeal to the Third Circuit. [No. 04-834-SLR, D.I. 14, 24] (A5873-5881, 6705-6736). The Court of Appeals remanded the case to the District Court for clarification regarding damages. [No. 04-834-SLR, D.I. 32, 33] (A6930-34). The District Court issued a Memorandum Opinion and Order granting SAMBA's Motion for Assessment of Damages. [No. 04-834-SLR, D.I. 39, 40]. Pursuant to the Order, SAMBA filed its itemization of fees and costs on November 20, 2006, Shaw filed a Response on December 7, 2006, and SAMBA filed a Reply on December 18, 2006. [No. 04-834-SLR, D.I. 51, 52, 54]. SAMBA's Itemization and the related papers remain *sub judice.* Shaw's Notice of Appeal to the Third Circuit is still pending.

Notably, the Assignment of Contract Proceeds was not at issue in the Recovery Action. The relief being sought by SAMBA in the Saudi Aramco Proceeding is

predicated entirely on SAMBA's rights under the Assignment of Contract Proceeds.
Until such time as SAMBA receives full and complete recovery of BS&W's obligations
with respect to the '98 Loan, SAMBA is entitled to pursue its contractual right to
payment under the Assignment of Contract Proceeds in the Saudi Aramco Proceeding.

## IV.   ARGUMENT

The Bankruptcy Court did not consider the merits of SAMBA's Motion to
Intervene. Rather, the Bankruptcy Court improperly focused on the validity and
enforceability of the Assignment of Contract Proceeds, the potential availability of a
different forum for SAMBA to prosecute its claims and the fact that if SAMBA is
allowed to intervene, SAMBA's claims may require the application of foreign law. All
of these potential issues are irrelevant at this stage of the proceeding and were
inappropriately considered by the Bankruptcy Judge. The relevant inquiry is whether
SAMBA satisfies the criteria set forth in Rule 24(a) of the Federal Rules of Civil
Procedure, which is applicable in adversary proceedings in the Bankruptcy Courts
pursuant to Rule 7024 of the Federal Rules of Bankruptcy Procedure. As discussed
below, SAMBA unquestionably meets the intervention standard. Intervention as of right
is not discretionary. If the required showing is made, as is the case here, an application
for intervention as of right must be granted. See Wright & Miller Federal Practice and
Procedure: Civil 3d § 1902. The Bankruptcy Court did not apply the correct legal
standard. Therefore this Court must reverse the Bankruptcy Court's denial of SAMBA's
Motion to Intervene. See United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1179 (3rd
Cir. 1994) (district court will be reversed if district court "applied an improper legal
standard or reached a decision we are confident is incorrect"); Central States, Se. and Sw.

16

Areas Health and Welfare Fund v. Old Sec. Life Ins. Co., 600 F. 2d 671, 679 n.15 (7th

Cir. 1979).

A.    The Bankruptcy Court's Denial of SAMBA's Motion to Intervene as of
Right Constitutes Reversible Error

SAMBA specifically alleged in its Complaint in Intervention material,

nonconclusory allegations sufficient to warrant a grant of intervention as of right. See

Fed. R. Civ. P. 24(a)(2); Central States, Se. and Sw. Areas Health and Welfare Fund, 600

F.2d at 679.  In determining the intervention issues, the Bankruptcy Court improperly

purported to decide the ultimate validity of SAMBA's rights on the merits and failed to

address whether SAMBA met the intervention standards set forth in Rule 24(a) of the

Federal Rules of Civil Procedure which provides:

> Upon timely application anyone **shall** be permitted to
> intervene in an action: (1) when a statute of the United
> States confers an unconditional right to intervene; or (2)
> when an applicant claims an interest relating to the property
> or transaction which is the subject of the action and he is so
> situated that the disposition of the action may as a practical
> matter impair or impede his ability to protect that interest,
> unless the applicant's interest is adequately represented by
> existing parties.

Fed. R. Civ. P. 24(a) (emphasis added).  An examination of the intervention standards set

forth in Rule 24(a) reveals that SAMBA meets the requirements of both Rules 24(a)(1)

and 24(a)(2), either of which is sufficient to require the court to allow intervention.

United Minerals and Grains Corp. v. Hong Sung Indus. Co., 76 B.R. 991, 995-1000 (E.D.

Pa. 1987).  Therefore, intervention of right is justified.

1.    SAMBA Satisfied the Elements of Federal Rule of Civil Procedure
24(a)(1)

SAMBA is entitled to intervene pursuant to Rule 24(a)(1) because 11 U.S.C. §

1109(b) confers upon SAMBA an unconditional right to do so.  See United States v. State

17

Street Bank and Trust Co., No. ADV. A-01-04605, 2002 WL 417013, at *2 (Bankr. D.

Del. Mar. 4, 2002) (ruling by Judge Walsh that all parties listed in section 1109(b) have

an absolute right to intervene). Section 1109(b) of the Bankruptcy Code provides as

follows:

> A party in interest, including the debtor, trustee, creditors'
> committee, an equity security holders' committee, a
> creditor, an equity security holder, or any indenture trustee,
> may raise and may appear and be heard on any issue in a
> case under this chapter.

(emphasis added).

This statute provides SAMBA, as a party in interest, with the unconditional

statutory right to intervene in the Saudi Aramco Proceeding. See generally Phar-Mor,

Inc., v. Coopers & Lybrand, 22 F.3d 1228 (3rd Cir. 1994) (discussing unconditional right

to intervene in adversary proceedings associated with chapter 11 cases). According to the

plain language of the statute, SAMBA is a proper "party in interest" under Section

1109(b) as set forth in the Third Circuit's interpretation of the statute. See Matter of

Marin Motor Oil, Inc., 689 F.2d 445, 451-54 (3rd Cir. 1982). SAMBA holds a direct

financial stake in the outcome of this case and should be allowed to participate in the

adjudication of issues that will influence the disposition of its interest. See In re First

Interregional Equity Corp., 218 B.R. 731, 735 (1997). Despite the Third Circuit's

recognition that all parties listed in § 1109(b) have the "absolute right to intervene 'and

be heard on any issue in a case under' chapter 11[,]" the Bankruptcy Court summarily,

but improperly, denied SAMBA's Motion to Intervene. State Street Bank and Trust Co.,

2002 WL 417013, at *2. In doing so, the Court failed to adhere to the mandates set forth

in the Bankruptcy Code and applicable precedents in this jurisdiction. Accordingly, the

Bankruptcy Court's denial of SAMBA's Motion to Intervene must be reversed.

2.      SAMBA Also Satisfied the Elements of Federal Rule of Civil
        Procedure 24(a)(2)

a.      SAMBA's Application for Intervention is Timely

SAMBA's Motion to Intervene was filed prior to Saudi Aramco having answered

Debtors' Complaint, prior to the completion of briefing with respect to Saudi Aramco's

Motion to Dismiss the complaint, prior to the documentation of any settlement and prior

to the filing of any motion or scheduling of any hearing for approval of a settlement of

the Saudi Aramco Proceeding. Because of the early procedural status of the case,

SAMBA's intervention is not unfairly prejudicial to any party. See United Minerals and

Grains Corp., 76 B.R. at 997 (reciting pertinent considerations of timeliness element).

Where, as here, it is clear that "discovery has not been completed, there have been no

significant decisions on the merits considered or decided, and the parties could not be

prejudiced by that delay, the motion must be considered timely." Jet Traders Inv. Corp.

v. Tekair, Ltd., 89 F.R.D. 560, 568 (D. Del. 1981).

b.      SAMBA has an Interest in the Property Which is the
        Subject of the Saudi Aramco Proceeding

Rule 24(a)(2) creates an independent, mandatory right to intervene in an action.

Whether a narrow or broad view of the interest test for Rule 24(a)(2) is applied, SAMBA

has a sufficient interest in the subject matter of this litigation to warrant intervention.

"Interests in property are the most elementary type of right that Rule 24(a)(2) is designed

to protect." Gregory v. Corr. Connection, Inc., Civ. A. No. 88-7990, 1990 WL 178207,

at *2 (E.D. Pa. Nov. 13, 1990). "The Supreme Court has stated that the applicant's

'interest' in the litigation need not be an outright ownership interest in the disputed

property nor even a primary role in the disputed transaction, so long as the outcome will

significantly affect the claimant's interests." United Minerals and Grains Corp., 76 B.R.

19

at 999. Unless SAMBA is allowed to intervene, the outcome of the Saudi Aramco

Proceeding, whether by settlement or judgment, is likely to result in a direct, blatant

violation of SAMBA's rights under the Assignment of Contract Proceeds and an

impairment of Saudi Aramco's obligations under its acknowledgment of the Assignment

of Contract Proceeds. SAMBA's direct, substantial and legally protectable interest as an

assignee in the funds at issue is sufficient to support intervention.[8] See Mountain Top

Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361 (3rd Cir. 1995) (finding

beneficiaries property interest in trust res sufficient to warrant intervention).

c.    The Disposition of the Saudi Aramco Proceeding Without<br>SAMBA's Involvement Will Impair or Impede SAMBA's<br>Ability to Protect its Interests

SAMBA's interest will be materially and adversely affected by the disposition of

the Saudi Aramco proceeding without SAMBA's involvement. In denying SAMBA's

Motion to Intervene, the Court failed to consider the specific interests which may be

impaired and failed to consider the possibility and type of impairment. See United States

v. Alcan Aluminum, Inc., 25 F.3d 1174 (3rd Cir. 1994) (order denying intervention

vacated because record not clear as to whether intervenor's rights affected). The

settlement proposal described by Debtors, ASB&B, and Saudi Aramco at the October 3,

2002 hearing is designed to defeat SAMBA's interest in the Assignment of Contract

---

[8] At a status conference held on June 13, 2005, the Court appeared to agree that SAMBA had a sufficient interest in this proceeding to warrant intervention. At the conference, the Court posed the following questions to counsel for the SWE&C Liquidating Trustee: "Well, let me ask you a question. Saudi Arabian – Saudi American Bank claims it has – the contract proceeds are its collateral, right? . . . When a Debtor is in a contract dispute and its bank has a collateral interest in the proceeds of the contract, is that the bank's standing to intervene?" Mr. Houpt, the SWE&C Liquidating Trustee's counsel, replied, in part, "Your Honor, in most cases it would." June 13, 2005 Tr. at 45-46 [D.I. 91] (A4272-73).

Proceeds. If SAMBA is not allowed to intervene in the Saudi Aramco Proceeding, SAMBA may not have standing to object to a settlement between the SWE&C Liquidating Trustee and Saudi Aramco or to challenge any decision on the merits by the Bankruptcy Court with respect to the causes of action asserted in the Complaint.

Moreover, the determination as to whether Saudi Aramco is in breach of its contractual obligations under the In-Kingdom Contract, whether Saudi Aramco should pay damages thereunder and how much those damages should be unequivocally affect SAMBA's interests. Any and all damages arising from such a breach are payable to SAMBA pursuant to the terms of the Assignment of Contract Proceeds. The turnover of any retainage or other funds withheld by Saudi Aramco also falls within the coverage of the Assignment of Contract Proceeds and is payable to SAMBA. The SWE&C Liquidating Trustee admitted on the record, "SAMBA believes it has an interest in the contract proceeds, Your Honor. We do not believe that our litigation is ultimately about contract proceeds entirely. A portion of it is in contract proceeds." June 13, 2005 Tr. at 44-45 (emphasis added) [D.I. 91] (A4272-73). "Proposed intervenors need not have an interest in every aspect of the litigation. They are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable." Mountain Top Condo. Ass'n, 72 F.3d at 367-68.

The damages sought by Debtors in the Saudi Aramco Proceeding directly impinge upon SAMBA's contractual first priority right to any and all proceeds arising out of the In-Kingdom Contract. SAMBA has an interest in the very property that is the subject matter of the suit between the SWE&C Liquidating Trustee and Saudi Aramco. SAMBA's interest in the merits of the pending claims between the SWE&C Liquidating

Trustee and Saudi Aramco constitutes sufficient grounds to entitle it to intervene as of right. State Street Bank and Trust Co., 2002 WL 417013, at *2 (finding intervenor has interest in opposing contentions by creditors seeking to undermine intervenor's priority position); Prudential Prop. & Cas. Ins. Co. v. Leach, No. Civ. A. 03-6352, 2004 WL 1243763, at *1 n.1 (E.D. Pa. June 7, 2004).

SAMBA's presence in the Saudi Aramco Proceeding would also prevent Debtors from circumventing the Assignment of Contract Proceeds by characterizing Saudi Aramco's liability to Debtors as mere indemnification. Thus, it is indisputable that SAMBA is so situated that the disposition of the Saudi Aramco Proceeding in SAMBA's absence will impair or impede SAMBA's ability to protect its property interest in the subject matter of the Saudi Aramco Proceeding. Accordingly, the Bankruptcy Court improperly denied SAMBA's Motion to Intervene in the Saudi Aramco Proceeding. See generally June 13, 2005 Tr. [D.I. 91] (A4228-4277); see Dev. Finance Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 162 (3rd Cir. 1995) (finding tangible threat to interest warrants intervention).

### d.    SAMBA is not Adequately Represented by the Existing Parties

Finally, neither Debtors nor Saudi Aramco adequately represent SAMBA's interest. SAMBA's claims are adverse to the parties presently involved in the Saudi Aramco Proceeding. Furthermore, SAMBA has alleged that one or both of those parties has acted with an intent to circumvent SAMBA's rights. As such, there can be no dispute that the existing parties do not represent SAMBA's interests.

B.    The Bankruptcy Court's Denial of SAMBA's Motion to Intervene
      Constitutes an Abuse of Discretion

Rule 24(b) permits intervention in certain circumstances at the discretion of the

court. While a court may exercise broad discretion in reaching a determination as to

whether an applicant should be granted permissive intervention, the court is still

obligated to apply the correct legal standards. In this case, the Bankruptcy Court ignored

the basic elements of Rule 24(b) and failed to address any of the relevant factors

discussed in the case law, such as whether SAMBA has an economic or similar interest in

the matter, whether the intervention will cause undue delay to the proceedings or whether

a denial of SAMBA's request will adversely affect its interest. See Fed. R. Civ. P. 24(b);

First Interregional Equity Corp., 218 B.R. at 736. If the Court had engaged in the

necessary analysis, it would have been apparent that SAMBA is entitled to become a

party to the Saudi Aramco Proceeding. See id. Therefore, the Bankruptcy Court's ruling

was incorrect and should be overturned by this Court.

Pursuant to Rule 24(b), intervention is proper when the applicant's claim has a

question of law or fact in common with the main claim. Specifically, Rule 24(b) states:

> Upon timely application anyone may be permitted to
> intervene in an action: (1) when a statute of the United
> States confers a conditional right to intervene; or (2) when
> an applicant's claim or defense and the main action have a
> question of law or fact in common . . . In exercising its
> discretion the court shall consider whether the intervention
> will unduly delay or prejudice the adjudication of the rights
> of the original parties.

Fed. R. Civ. P. 24(b) (emphasis added).

SAMBA's Complaint in Intervention sets forth questions of law and fact that are

in common with the main claims. As discussed above, SAMBA's Complaint in

Intervention and Debtors' Complaint both turn on a determination of Saudi Aramco's

liability under the In-Kingdom Contract. The determination of Saudi Aramco's liability

will significantly impact SAMBA's rights under the Assignment of Contract Proceeds.

Moreover, SAMBA's Motion to Intervene was timely made and SAMBA's intervention

will not delay or prejudice the SWE&C Liquidating Trustee or Saudi Aramco. A

thoughtful consideration of the pleadings and the evidence on record indicates that the

Bankruptcy Court abused its discretion in denying SAMBA's Motion to Intervene. The

common questions of law and fact between SAMBA's and Debtors' actions warrant the

grant of permissive intervention and Rule 24(b). See United Minerals and Grains Corp.,

76 B.R. at 1000.

     C.     The Bankruptcy Court's Order Denying SAMBA's Motion to Intervene is
             Not Supported by the Doctrines of Election of Remedies or Judicial
             Estoppel

To determine whether intervention is warranted, the Court must apply the

standards set forth in the Federal Rules of Civil Procedure. The Federal Rules and the

case law are clear -- if a purported intervenor meets the intervention standard, intervention

must be allowed. Undertaking an analysis of the merits of an applicant's allegations or

the viability of such claims at trial is improper and constitutes reversible error. See supra

§ D. The doctrines of judicial estoppel and election of remedies are two of the many

affirmative defenses that the SWE&C Liquidating Trustee and Saudi Aramco can assert

once SAMBA is made a party to the Saudi Aramco Proceeding. See Fed. R. Civ. P. 8(c).

The application of these doctrines, however, rests in a determination of the factual

foundation of SAMBA's claims and does not impact the threshold issues raised by an

application for intervention. See Business and Commercial Litigation in Federal Courts

§§ 6.1(i)(2), 12.8 (Robert L. Haig ed.) (West Group & ABA 1998); Wright & Miller

Federal Practice and Procedure: Civil 3d § 1271; Fed. R. Civ. P. 24(a). The application

of the election of remedies doctrine or judicial estoppel as a means of precluding

SAMBA's intervention in the Saudi Aramco Proceeding would be both improper and

unfounded.

> 1.    SAMBA Should Not be Estopped from Intervening in the Saudi
>       Aramco Adversary Proceeding Because Neither the Election of
>       Remedies nor the Judicial Estoppel Doctrine is Applicable to the
>       Facts Before the Court

Judicial estoppel and the election of remedies are companion doctrines that are

equitable in nature. See 25 Am. Jur. 2d Election of Remedies § 4. The doctrines

"prevent[] a party from asserting his or her rights by maintaining inconsistent or

repugnant positions or by proceeding upon irreconcilable claims of right." See id. "The

doctrine of election of remedies does not apply if the available remedies are consistent

and concurrent or cumulative." 25 Am. Jur. 2d Election of Remedies § 21. If, as here,

"the remedies are alternative and concurrent, there is no bar until satisfaction has been

obtained." Id. In this case, neither the election of remedies nor the judicial estoppel

doctrine applies because SAMBA's claims in the Recovery Action and in the Saudi

Aramco Proceeding are not inconsistent in relation to the facts which form the basis of

SAMBA's respective remedies.[9] See Princeton-New York Investors, Inc., 255 B.R. 376,

385-87 (D. N.J. 2000). Moreover, even if the Court were to find that SAMBA

maintained an inconsistent position in the Recovery Action (which SAMBA denies), the

election of remedies doctrine would still be inapplicable because (i) satisfaction has not

been obtained in the Recovery Action; and (ii) under Section 1301 of the New York Real

---

[9] In fact, the only party that has taken an inconsistent position is the Debtors/SWE&C
Liquidating Trustee. The Debtors/SWE&C Liquidating Trustee previously maintained
albeit erroneously, that Shaw did not assume SWEC's obligations to SAMBA. The
SWE&C Liquidating Trustee should be estopped from now arguing that SAMBA is only
entitled to pursue Shaw.

Property and Actions Proceedings Law, the election of remedies doctrine does not apply
to remedies for the enforcement of commercial loans not involving a mortgage on real
estate.

> 2.    SAMBA has Neither Pursued Nor Taken Inconsistent Positions
> Concerning its Security Interest in the Proceeds of the In-Kingdom
> Contract

SAMBA's efforts to collect on the '98 Loan under the Guaranty and Payment
Letter in the Recovery Action, and under the Assignment of Contract Proceeds in the
Saudi Aramco Proceeding, can hardly be said to be inconsistent. The remedies are
consistent both in kind and purpose, and each has as its objective the reduction of the
debt owed by BS&W  See Adrian Research and Chemical Co., 269 F.2d 734, 737 (3rd
Cir. 1959). Through the Recovery Action and its Complaint in Intervention, SAMBA is
pursuing the independent sources for payment of the '98 Loan that it procured from
BS&W. As is customary in this type of commercial transaction, SAMBA specifically
bargained for two sources of security in case one failed or was inadequate to pay the full
amount of the loan obligation.

BS&W's obligation was to pay the debt owed to SAMBA. Neither BS&W nor
SWEC's successor, the SWE&C Liquidating Trustee, is entitled to the collateral security
assigned to SAMBA until the debt is discharged. SAMBA did not waive its right to rely
on the Assignment of Contract Proceeds by first seeking to enforce the Guaranty and
Payment Letter against Shaw. SAMBA cannot be compelled to surrender its security
interest in the proceeds of the In-Kingdom Contract until BS&W's debt is paid in full.
See Adrian Research and Chemical Co., 269 F.2d at 737. SAMBA bargained for and
obtained two separate but cumulative forms of security, and has diligently attempted to

26

collect the money it is legally owed under the '98 Loan by enforcing its rights under the Assignment of Contract Proceeds, Guaranty and the related loan documents.

      3.    Satisfaction has Not Been Obtained in the Recovery Action

In the Recovery Action, SAMBA moved for summary judgment seeking, *inter alia*, the balance owing to SAMBA under the '98 Loan, plus interest, commissions, reasonable attorneys' fees and costs. Although the District Court granted SAMBA's Motion for Summary Judgment, unless and until Shaw pays SAMBA the full amount due and owing under the District Court's judgment, including interest, commissions, attorneys' fees and costs, SAMBA has the right to seek recovery from Saudi Aramco under the Assignment and the Specific Payment Instruction Letter.

      4.    Under New York Law, Which Governs the Guaranty, the Election of Remedies Doctrine Does Not Apply to Remedies for the Enforcement of Commercial Loans

The Guaranty is governed by New York law. See Guaranty (A1846-1849); [District Ct. 04-00834-SLR, D.I. 11]. While New York does have an election of remedies statute, Section 1301 of the Real Property Actions and Proceedings Law ("RPAPL"), it applies only in the case of secured loans where the collateral includes a mortgage on real property. See N.Y. Real Property Actions and Proceedings Law § 1301 (McKinney 1962) (A1763). Accordingly under New York Law, the ability to pursue payment under the Guaranty and simultaneously to pursue separately rights in personal property collateral pledged by the primary obligor is not subject to the limitations contained in RPAPL Section 1301. The security for the '98 Loan does not include any security interest in any real property. Rather, the security for the '98 Loan consists of the Guaranties of SWEC and ASB&B on the one hand, and the Assignment of Contract Proceeds, on the other. The Assignment in effect creates a security interest in contract

rights which are a type of intangible personal property. Therefore, New York's Election of Remedies Doctrine, the only applicable election of remedies statute, is inapplicable to the security interests held by SAMBA.

     5.    The Theory of Judicial Estoppel is Inapplicable to the Facts Before the Bankruptcy Court

Judicial Estoppel "'precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted [successfully] in another.'" In re Charles Bobroff, Civ. A. No. 89-8123, 1990 WL 178557, at *5 (E.D. Penn. 1990) (quoting Patriot Cinemas, Inc. v. General Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987)). "Judicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice. It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims. . . . Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity." In re EXDS, Inc., 316 B.R. 817, 825 (Bankr. D. Del. 2004) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3rd Cir. 1996)). Here, the doctrine of judicial estoppel is inapplicable because SAMBA has not taken two positions that are irreconcilable nor has SAMBA taken an inconsistent position to the detriment of SWEC or the SWE&C Liquidating Trustee.

As discussed above, in the Recovery Action, SAMBA argued that Shaw had assumed SWEC's liability to SAMBA under the Guaranty and Payment Letter. SAMBA never took the position that the Assignment of Contract Proceeds was assumed by Shaw or that Shaw's assumption of SWEC's liability satisfied BS&W's obligations to SAMBA under the Assignment of Contract Proceeds. In fact, on May 11, 2002, seven months

28

after SAMBA filed its Complaint against Shaw, SAMBA sent a letter to Saudi Aramco informing Saudi Aramco that the Assignment of Contract Proceeds remained in full force and effect and that the Specific Payment Instruction Letter, including the assignment and authorization referred to therein, was not revocable and continued in effect. See Reminder Letter (A1339). On or about June 2, 2002, Saudi Aramco sent a letter to SAMBA confirming that the Assignment of Contract Proceeds and authorization contained in the Specific Payment Instruction Letter were irrevocable and continued to be in full force and effect. See Confirmation Letter (A1341). At no time did SAMBA make inconsistent representations with regard to the Assignment of Contract Proceeds. SAMBA has consistently maintained that it has the right to seek recovery under the two, supplemental sources of repayment for the '98 Loan.

> D.    The Bankruptcy Court's Statements and Purported Reasoning for Denying
>        SAMBA's Motion to Intervene do Not Constitute Proper Grounds for the
>        Denial of SAMBA's Motion

The only express judicial pronouncements in the record concern the Court's impression as to the validity and enforceability of the Assignment of Contract Proceeds, the theoretical availability of a different forum for SAMBA to prosecute its claims and the fact that if allowed to intervene, SAMBA's claims may require the interpretation of foreign law. As discussed above, in denying SAMBA's Motion to Intervene, the Bankruptcy Judge did not consider the requirements of either Rule 24(a) or 24(b) of the Federal Rules of Civil Procedure nor did he refer to any of the intervention standards in his oral decision. Rather, the Bankruptcy Judge focused on the merits of the application to intervene, as if SAMBA had been permitted to intervene and had filed a dispositive motion. None of the observations and/or comments made by the Bankruptcy Judge provide proper (much less adequate) grounds for the denial of SAMBA's application to

intervene. See Wright & Miller Federal Practice and Procedure: Civil 3d § 1902. As a result, in denying SAMBA's Motion to Intervene the Bankruptcy Court applied incorrect legal standards and rendered an incorrect decision.

1.    SAMBA's Complaint in Intervention Establishes, *Prima Facie*, a Valid and Enforceable Assignment of Contract Proceeds

In deciding whether to permit intervention, all well-pleaded material factual allegations supporting a motion to intervene are taken as true. Central States, Se. and Sw. Areas Health and Welfare Fund, 600 F.2d at 679. "The Court, in determining the intervention issues, does not undertake to decide the ultimate validity of petitioner's alleged rights." Pennamco, Inc. v. Nardo Management Co., 435 A.2d 726, 727 (D. Super. 1981). Despite this clear direction, the Bankruptcy Judge engaged in the following dialogue, which the Bankruptcy Judge ultimately adopted as the reasoning for his denial of SAMBA's Motion to Intervene:

> The Court:  [A]s I look at these documents, . . . I doubt if you have an assignment."
>
> ***
>
> The Court:  I'm questioning whether you have an assignment." . . . And if you don't have an assignment, I'm not going to allow you to intervene.
>
> ***
>
> Mr. Rosenfeld:  . . . What we're seeking is a declaratory judgment finding that our assignment is valid and enforceable, and also that – also injunctive relief stopping payments from being made in any other manner as set forth in either the assignment of contract proceeds or the specific payment instruction letter.
>
> The Court:  On the record before me today, you're not going to get that relief.

30

> Mr. Rosenfeld: Well, all I'm looking for is to be
> intervened, Your Honor. I'm not asking for summary
> judgment today on that relief today. I'm looking simply to
> be intervened in this case so that I can pursue the claim
> once I have been intervened. I can't take my discovery,
> and I can't move for –
>
> ***
>
> The Court: Well, I have – I think there is every good
> reason not to allow you to intervene. For the reasons I've
> indicated. I have serious doubts whether you have an
> assignment.

April 25, 2006 Tr. at 6, 8, 11 19 (A1801, A1803, A1806, A1814).

SAMBA's Complaint in Intervention set forth allegations sufficient to establish

the *prima facie* validity of the Assignment of Contract Proceeds. Moreover, the validity

of the Assignment of Contract Proceeds has never been at issue – neither the Debtors, the

SWE&C Liquidating Trustee nor Saudi Aramco have ever contested the validity of the

Assignment in connection with this litigation or otherwise. Despite SAMBA's *prima*

*facie* showing that it holds a valid, enforceable and irrevocable Assignment of Contract

Proceeds from BS&W, the Bankruptcy Court denied SAMBA's Motion to Intervene

because the Judge "questioned" the validity of the Assignment. The Court's

determination that the Assignment was "questionable" should not have entered into the

Court's analysis of the standards set forth in Rule 24(a)(2) of the Federal Rules of Civil

Procedure.

2. Federal Courts Routinely Decide Issues of Foreign Law

In addition to "questioning" the validity of the Assignment of Contract Proceeds,

the Bankruptcy Judge denied SAMBA's Motion to Intervene because, in the Judge's

view, a determination as to the validity of the Assignment would "involve[] Saudi

Arabian Law." April 25, 2006 Tr. at 19-20 (A1814-15). As demonstrated in the excerpts

31

below, the Bankruptcy Judge denied SAMBA's Motion, in part, because if SAMBA were

allowed to intervene, it may become necessary for the Court to address issues of foreign

law. The Court's reluctance to "muddy the water" with issues of Saudi Arabian law

clearly does not outweigh SAMBA's right to have its interests represented.

> The Court: . . . I have serious doubts whether you have an
> assignment. But that –
>
> * * *
>
> The Court: Obviously, it involves Saudi Arabian law. And
> why don't you go to Saudi Arabia and resolve that issue?
>
> * * *
>
> The Court: That's your home Court.
>
> Mr. Rosenfeld: This Court has Jurisdiction.
>
> * * *
>
> The Court: Isn't Saudi Arabia your home Court?
>
> Mr. Rosenfeld: . . . I thought that we were equally welcome
> in this Court as we were in any other Court, Your Honor.
> I'm a bit surprised –
>
> The Court: But you're not welcome to muddy the water
> with Saudi Arabian law.

April 25, 2006 Tr. at 19-20 (A1814-15).

Federal Courts regularly consider issues involving foreign law. See e.g., Ali v.

Al-Faisal, 73 F.3d 356 (4th Cir. 1995) (Saudi Arabian law applied in contract dispute);

Forzley v. AVCO Corp. Elec. Div., 826 F.2d 974 (11th Cir. 1987) (Saudi Arabian labor

law applied in contract dispute); Fogleman v. ARAMCO (Arabian Am. Oil Co.), 920

F.2d 278 (5th Cir. 1991) (Saudi Arabian law applied in personal injury suit); McGhee v.

Arabian American Oil Co., 871 F.2d 1412 (9th Cir. 1989) (Saudi Arabian law applied to

tort claims). In fact, the Bankruptcy Rules specifically proscribe the manner in which the

Court may make determinations concerning foreign law. See Bankruptcy Rule 9007;

Fed. R. Civ. P. 44.1. Accordingly, the Bankruptcy Court's belief that it would be

inappropriate for the Court to preside over a case that raised issues of foreign law is

incorrect and is an improper basis for the denial of SAMBA's Motion to Intervene.

> 3.    The Possible Availability of Another Forum in Which SAMBA
> Could Prosecute its Claim Does Not Defeat SAMBA's Substantial
> Interest in the Saudi Aramco Proceeding

In addition, whether SAMBA has a forum available to it in Saudi Arabia is

irrelevant to the issues at hand. The possible availability of another forum is not grounds

for barring SAMBA's intervention in the Saudi Aramco Proceeding. First, it is not clear

that SAMBA would have available to it a forum in Saudi Arabia in which it could sue all

the parties to this action. Second, even if SAMBA could bring an action in Saudi Arabia,

any decision or settlement reached in this proceeding could irreparably impair SAMBA's

ability to protect its interest as an assignee of the proceeds of the In-Kingdom Contract.

Lastly, even if SAMBA does have a cause of action that it could assert in a Saudi forum

in which all the present parties could be joined (which SAMBA does not believe is the

case), "'[t]he right to intervene is not barred merely by the existence of another remedy.'"

Central States, Se. and Sw. Areas Health and Welfare Fund, 600 F.2d at 681 (quoting

Clark v. Sandusky, 205 F.2d 915, 918 (7th Cir. 1953)). The potential availability of

another forum to prosecute SAMBA's claim does not preclude SAMBA's intervention in

this proceeding.

> E.    The Bankruptcy Court's Comments and Conduct Require Withdrawal of
> the Reference or Reassignment of the Case Upon Remand

The comments of Bankruptcy Judge Walsh during the hearings on SAMBA's

Motion to Intervene, as well as his conduct in the Preference, Recovery and Saudi

Aramco Proceedings, call into question his impartiality and warrant disqualification of

the Judge. In order to avoid the appearance of prejudice against SAMBA, this Court

should withdraw the reference with respect to this Adversary Proceeding, or, in the

alternative, the case should be reassigned to another judge upon remand.

The District Court has the authority to withdraw any case or proceeding referred

to the bankruptcy court, in whole or in part, for cause shown. See 28 U.S.C. 157(d); see

also Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4106.

As detailed below, the Bankruptcy Judge, by his words and actions, appears to harbor

prejudice against SAMBA and to have prejudged the adversarial proceedings over which

he would preside, and SAMBA therefore requests that the District Court exercise its

authority under 28 U.S.C. 157(d) to withdraw the reference of this non-core proceeding.[10]

"Impartiality and the appearance of impartiality in a judicial officer are the *sine*

*qua non* of the American legal system." Haines v. Liggett Group Inc., 975 F.2d 81, 98

(3rd Cir. 1992). For this reason, "[w]henever a judge's impartiality 'might reasonably be

questioned' in a judicial proceeding," the proper remedy, as mandated by 28 U.S.C

§ 455(a), is disqualification. In re Kensington International Limited, 368 F.3d 289, 301

(3rd Cir. 2004); see 28 U.S.C.A. § 455(a). Section 455 governs disqualification of

Bankruptcy judges. Fed. R. Bankr. P. 5004(a).[11] Under § 455(a), the test for

---

[10] Curing the appearance of prejudice by withdrawing the reference will serve judicial
economy and expedite the bankruptcy process, because, pursuant to 28 U.S.C. 157(c),
this Court must review any findings of fact and law to which the parties do not consent
before entering final judgment. See Hatzel & Buehler, Inc. v. Orange & Rockland
Utilities, Inc., 107 B.R. 34, 39-40 (D. Del. 1989) (holding that withdrawal promotes
judicial efficiency because the district court would still need to review the merits of the
dispute by re-considering Bankruptcy Court's proposed findings of fact and conclusions
of law).

[11] The Rule states: "A bankruptcy judge shall be governed by 28 U.S.C. § 455, and
disqualified from presiding over the proceeding or contested matter in which the

34

disqualification is "whether a reasonable man, with knowledge of all the facts, would

conclude that the judge's impartiality might reasonably be questioned." In re

Kensington, 368 F.3d at 301. The "reasonable person" of § 455(a) is a layperson, not a

person with experience of the judicial system, because

> judicial insiders, "accustomed to the process of
> dispassionate decision making and keenly aware of their
> Constitutional and ethical obligations to decide matters
> solely on the merits, may regard asserted conflicts to be
> more innocuous than an outsider would." United States v.
> DeTemple, 162 F.3d 279, 287 (4th Cir. 1998); see also
> United States v. Jordan, 49 F.3d 152, 156-57 (5th Cir. 1995)
> (remarking that average person on street "is less likely to
> credit judges' impartiality than the judiciary"); In re
> Mason, 916 F.2d 384, 386 (7th Cir. 1990) (noting that lay
> observer is less inclined to presume judge's impartiality
> than members of judiciary).

Id. at 303. There is no requirement that actual bias or prejudice on the part of the judge

be shown because the threshold requirement, mandated by the need to preserve the

public's confidence in the judiciary, is the "*appearance* of neutrality and impartiality in

the administration of justice." LaSalle National Bank v. First Connecticut Holding

Group, L.L.C. XXIII, 287 F.3d 279, 292 (3rd Cir. 2001) (emphasis added) (quoting

Alexander v. Primerica Holdings, 10 F.3d 155, 157 (3rd Cir. 1993). Thus, where a

reasonable layperson person "would harbor doubts about the judge's impartiality," the

judge must be disqualified. In re Kensington, 368 F.3d at 301.

The Bankruptcy Judge's comments at the hearing on SAMBA's Motion to

Intervene reveal, if not actual prejudice, the appearance of prejudice against SAMBA,

prejudgment of the issues in the case, and reluctance to adjudicate SAMBA's claims, all

---

disqualifying circumstance arises or, if appropriate, shall be disqualified from presiding
over the case. Fed. R. Bankr. P. 5004(a).

of which give rise to strong doubts in any reasonable layperson about the judge's

impartiality. The following exchanges took place during the hearing:

> THE COURT: Well, I have – I think there is every good reason not to
> allow you to intervene. For the reasons I've indicated. . . I have serious
> doubts whether you have any assignment. But that - -
>
> * * *
>
> Obviously, it involves Saudi Arabian law. And why don't you go to Saudi
> Arabia and resolve that issue?
>
> MR. ROSENFELD: Your Honor - -
>
> THE COURT: That's your home Court.
>
> MR. ROSENFELD: This Court has jurisdiction.
>
> THE COURT: Isn't it?
>
> MR. ROSENFELD: This Court has jurisdiction over - -
>
> THE COURT: Isn't Saudi Arabia your home Court?
>
> MR. ROSENFELD: . . . we thought this was a Court where we could
> come, where all the parties were present, where . . . this Court was
> exercising jurisdiction over the parties, and it made sense, since there was
> potential for our rights to be interfered with within the context of this
> Court's proceedings . . . and there still is that possibility, that we intervene
> in this proceeding to pursue our rights. Now with respect to the notion of
> what's our home court, . . . I thought that we were equally welcome in this
> Court as we were in any other Court, Your honor. I'm a bit surprised - -
>
> THE COURT: But you're not welcome to muddy the water with Saudi
> Arabian Law.
>
> * * *
>
> THE COURT: . . . I would again suggest to you that I don't think it's
> appropriate for this Court to decide Arabian commercial law issues.

April 25, 2006 Tr. at 19-21, 24 (A1814-16, 1819).

As an initial matter, these comments warrant disqualification because rather than

determining the issue of intervention according to the standards governing that question

as briefed by the parties, the Bankruptcy Judge instead raised *sua sponte* the issue of the validity of the Assignment of Contract Proceeds—a disputed issue which underlies the merits of SAMBA's claims, but upon which there has never been any discovery or briefing by the parties. As such, the Judge's comments indicate that he has prejudged the merits of the case or harbors a prejudice against SAMBA. Such prejudgment of the ultimate issues in the case is inconsistent with the appearance of neutrality and impartiality that is required by due process and to maintain public confidence in the judicial system. See, e.g., Haines, 975 F.2d at 98 (vacating District Court's ruling on discovery issue involving attorney-client privilege and ordering reassignment of case on remand due to Judge's comments which appeared to indicate prejudice against defendants and prejudgment of the ultimate issue in the case); Webbe v. McGhie Land Title Co., 549 F.2d 1358 (10th Cir. 1977) (disqualifying judge who had granted summary judgment without reading the depositions and without allowing one party to be heard despite disputed issues of fact, finding it not reasonably likely that the judge could preside in a "fair and impartial manner" or "with detachment and objectivity.").

The Court's stated unwillingness to delve into issues which might be governed by Saudi Arabian law is further evidence of prejudice, or at least the appearance thereof. As detailed supra § IV.D.2, there is no legal impediment to a court of competent jurisdiction applying the law of a foreign forum. The question of intervention is not governed by whether issues raised by the intervenor will implicate foreign law. See supra § IV.A (detailing the requirements for intervention). The Bankruptcy Court's statement that the need to consider Saudi Arabian law would "muddy the waters" indicates a legally unfounded desire to avoid the very task which is the Court's sole duty and

responsibility—the impartial, fair, and neutral adjudication of legal issues over which it

has jurisdiction, regardless of the source of governing law—a task which has repeatedly

and ably been undertaken by other courts. See, e.g., Chadwick v. Arabian American Oil

Co., 656 F. Supp. 857, 858 (D. Del. 1987) (noting that "[t]his case is governed by what

the Angel Gabriel said to the Prophet Mohammad in the Seventh Century A.D.," and

applying principles of Saudi Arabian tort and contract law to decide case); Ali v. Al-

Faisal, 73 F.3d 356 (4th Cir. 1995) (affirming a grant of summary judgment which was

based on ruling that contract was illegal under Saudi Arabian); Fogleman v. ARAMCO

(Arabian Am. Oil Co.), 920 F.2d 278 (5th Cir. 1991) (affirming District Court's

application of Saudi Arabian law and entry of judgment against plaintiffs thereunder).

The Court's statements regarding SAMBA's "home court" bolster the appearance of

prejudice against SAMBA as a foreign party.

In adversary proceedings in bankruptcy, the "home court" is often characterized

as "the court where the bankruptcy case itself is pending." In re Onco Investment Co.,

320 B.R. 577, 579 n.1 (D. Del. 2005). For adversary proceedings, there is a "strong

presumption in favor of maintaining venue" in the home court. Id. at 579. The Court's

reference to Saudi Arabia as the "home court" is thus both erroneous and meaningless,

and can only be understood to convey the Court's desire not to have to deal with SAMBA

as a litigant.[12] Such a view in the absence of any valid legal basis for denying

---

[12] The Bankruptcy Judge's reluctance to deal with SAMBA's claims has been evident in
the other three related adversary proceedings before him. In the Preference Action, there
were eight outstanding motions (including dispositive motions), dating back over two and
a half years, upon which the judge had declined to rule at the time that the Preference
case was dismissed. Similarly, in the Recovery Action, between January of 2002 and
December of 2002, the parties filed eight motions, including dispositive motions. For
over two years, the Court did not act on a single motion filed by the parties other than to

intervention constitutes prejudice against SAMBA. The Court's apparent unwillingness to perform its judicial duty with diligence requires disqualification and reassignment. See LaSalle National Bank, 287 F.3d at 290-91 (disqualifying judge who was "short circuiting the fact finding process" by purporting to take "judicial notice" of a fact which was in dispute, thereby denying a party "a meaningful opportunity to be heard").

The Court's subsequent comments heighten the appearance of partiality and prejudice against SAMBA. At the end of the hearing on the motion to intervene, after announcing his ruling denying intervention, the Judge asked the plaintiff about the status of its amended complaint, because "filing the amended complaint *would buttress the decision that I've just made* [to deny intervention]." Tr. at 27 (emphasis added). It is difficult to imagine why a judicial decision reached by a fair and impartial judge after a careful analysis of the law would require, in the judge's own words, "buttressing." It is even more difficult to understand why a supposedly impartial judge would seek to align himself with one of the parties by requesting that that party supply the necessary "buttressing." There is simply no way to view these comments as those of an impartial and unbiased arbiter who has reached a legally valid decision. In light of these comments, the Bankruptcy Judge's "impartiality might reasonably be questioned" and, were he to continue to preside, the "outcome of this case 'would be shrouded in suspicion.'" See Alexander v. Primerica Holdings, 10 F.3d 155, 163, 166 (3rd Cir. 1993) (disqualifying judge due to statements which appeared to indicate he had prejudged the

---

approve stipulations concerning page limits and briefing schedules. Then, in July of 2004, the Court granted Shaw's motion for a determination that the action was non-core. As a result, the case was transferred to the District Court. The District Court promptly scheduled oral argument on the outstanding summary judgment motions and rendered an opinion in SAMBA's favor (over two and a half years after it was originally filed with the Bankruptcy Court).

issues and favored one of the parties, holding that "a judge's participation in a case must

never reach the point where it appears, or is even perceived to appear, that the judge is

aligned with any party in the pending litigation," and further noting that "when the judge

is the actual trier of fact, the need to preserve the appearance of impartiality is especially

pronounced"); see also Fairley v. Andrews, 423 F. Supp.2d 800, 821-22 (N.D. Ill. 2006)

(harsh comments about defendants which appeared to favor plaintiffs and prejudge the

issues gave the appearance of bias and warranted disqualification of the judge despite the

absence of any actual prejudice).

## V.    CONCLUSION

For all of the foregoing reasons, the Bankruptcy Court's Order denying

SAMBA's Motion to Intervene should be reversed and the reference with respect to

Adversary Proceeding No. 02-03963-PJW should be withdrawn, or, in the alternative, the

case should be reassigned to another judge upon remand.

Respectfully submitted,
SAUDI AMERICAN BANK,
By its attorneys,

Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
Monzack & Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8163

Of Counsel:
Daniel E. Rosenfeld
John C. Hutchins
Amy B. Abbott
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Dated: January 16, 2007      (617) 261-3100

40

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STONE & WEBSTER, INCORPORATED | ) | Case No. 00-02142-PJW |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors | ) | |
| | ) | |
| | ) | |
| STONE & WEBSTER, INCORPORATED, | ) | |
| and STONE & WEBSTER ENGINEERING | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Plaintiffs | ) | Civ. No. 06-399 (SLR) |
| | ) | |
| -against- | ) | |
| | ) | |
| SAUDI ARABIAN OIL COMPANY | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| SAUDI AMERICAN BANK | ) | |
| | ) | |
| Appellant/ Movant for Intervention | ) | |

## <u>CERTIFICATE OF SERVICE</u>

**I, Heidi E. Sasso, certify that I am not less than 18 years of age, and that service of the foregoing documents was made on January 16, 2007 upon:**

<u>**Via Hand Delivery and Electronic Mail**</u>
Adam G. Landis, Esquire
Kerri K Mumford, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, Delaware 19801

Dennis Anthony Meloro, Esquire
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000
Fax: (302) 661-7360
Email: melorod@gtlaw.com


**Via US MAIL and Electronic Mail**
Lorraine S. McGowen, Esquire
Orrick Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103

James Houpt, Esquire
Orrick Herrington & Sutcliffe LLP
400 Capital Mall, Ste. 3000
Sacramento, CA 95814

Under penalty of perjury, I declare that the foregoing is true and correct.


January 16, 2007_____          ___/s/Heidi E. Sasso_____
Date                                     Heidi E. Sasso

Document #: 59370