# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>STONE & WEBSTER, INC., *et al.*,[1]<br><br>               Debtors. | Chapter 11<br><br>Case No. 00-2142 (PJW)<br>(Jointly Administered)<br><br>Adv. Pro. No. 02-03963 (PJW) |
| SAUDI AMERICAN BANK<br><br>               Appellant,<br><br>- against –<br><br>SAUDI ARABIAN OIL COMPANY,<br>STONE & WEBSTER, INC., STONE &<br>WEBSTER ENGINEERING CORP., and<br>SWE&C LIQUIDATING TRUSTEE,<br><br>               Appellees. | Civ. No. 06-399-SLR |

## BRIEF OF RESPONDENT SWE&C LIQUIDATING TRUSTEE IN OPPOSITION TO SAUDI AMERICAN BANK'S APPEAL OF THE BANKRUPTCY COURT'S DENIAL OF SAUDI AMERICAN BANK'S MOTION TO INTERVENE

---

[1] The Debtors are the Consolidated SWINC Estate and the Consolidated SWE&C Estate. As more particularly set forth in Article VII(B) of the Third Amended Joint Plan of the Debtors in Possession, the Official Committee of Unsecured Creditors, Federal Insurance Company, Maine Yankee Atomic Power Company, and the Official Committee of Equity Security Holders with Respect to (I) Stone & Webster, Incorporated and Certain of its Subsidiaries and Affiliates and (II) Stone & Webster Engineers and Constructors, Inc. and Certain of Its Subsidiaries ("Joint Plan"), certain debtor subsidiaries of Stone & Webster, Incorporated are merged into Stone & Webster, Incorporated, and their estates have been substantively consolidated to become the Consolidated SWINC Estate; and certain debtor subsidiaries of Stone & Webster Engineers and Constructors, Inc. are merged into Stone & Webster Engineers and Constructors, Inc., and their estates have been substantively consolidated to become the Consolidated SWE&C Estate. As of the Effective Date of the Joint Plan, all of the assets of the Consolidated SWE&C Estate were transferred to the SWE&C Liquidating Trust.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.    STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW..........3

    A.     Issues Presented For Review. ................................................................................3

    B.     Standard Of Review. .............................................................................................3

III.   STATEMENT OF THE CASE.........................................................................................3

    A.     Nature Of The Case, Course Of Proceedings, Disposition In
           The Court Below. ...................................................................................................3

    B.     Responsive Statement Of Facts. ...........................................................................5

           1.     The Bankruptcy Court's Denial of SAMBA's Motion
                  To Intervene. ............................................................................................5

           2.     The Bankruptcy Court's "Denial" Of SAMBA's "Request"
                  To Recuse The Mediator. ..........................................................................8

IV.    ARGUMENT ..................................................................................................................11

    A.     SAMBA Lacks Privity To The Contract Arguably At Issue In The Saudi
           Aramco Action And, Therefore, SAMBA Lacks Any Basis To Intervene. ..........11

           1.     SAMBA Lacks Article III Standing To Assert An Unconditional
                  Statutory Right To Intervention. ..............................................................11

           2.     SAMBA Lacks A Sufficiently Protectable Interest To Assert A
                  Right To Intervene As A Matter Of Right. ................................................13

            3.     SAMBA's Claim To Have An "Assignment" Does Not Involve
                  Common Questions Of Law Or Fact With The Trust's Claims
                  Against Saudi Aramco To Allow Permissive Intervention........................15

    B.     SAMBA's Only Claim To Privity With SWEC And The Contract Arguably
           At Issue In The Saudi Aramco Proceeding Was The SWEC Guaranty, And
           SAMBA Elected To Pursue That Claim To Judgment Against Shaw...................16

    C.     SAMBA Has Not Shown A Basis To Disqualify The Bankruptcy Court
           Where The Court Did Nothing More Than Make Legitimate Observations
           On Discrepancies In SAMBA's Evidence Allegedly Supporting Intervention.....19

V.     CONCLUSION...............................................................................................................22

# TABLE OF AUTHORITIES

## CASES

Page

Abdallah v. Abdallah,
    359 F.2d 170 (3d Cir. 1966)...............................................................................................17

Am. Mar. Transp., Inc. v. United States,
    870 F.2d 1559 (Fed. Cir. 1989)...................................................................................13, 16

Brody v. Spang,
    957 F.2d 1108 (3d Cir. 1992)..............................................................................................3

EXDS, Inc. v. Ernst & Young (In re EXDS, Inc.),
    316 B.R. 817 (Bankr. D. Del. 2004) ..................................................................................18

Fort Vancouver Plywood Co. v. United States,
    860 F.2d 409 (Fed. Cir. 1988)...........................................................................................16

Gen. Star Indem. Co. v. Virgin Islands Port Auth.,
    224 F.R.D. 372 (D. V.I. 2004) ..........................................................................................14

George N. Pegula Agency, Inc. v. Monumental Life Ins. Co.,
    No. 3:CV-95-2198, 1999 U.S. Dist. LEXIS 23196 (M.D. Pa. Mar. 9, 1999) ...................20

Harris v. Pernsley,
    820 F.2d 592 (3d Cir. 1987)................................................................................................3

Harris v. Reeves,
    946 F.2d 214 (3d Cir. 1991)..............................................................................................13

Hillside Enters., Inc. v. Carlisle Corp.,
    944 F. Supp. 793 (E.D. Mo. 1996)...............................................................................12, 15

In re Chambers Dev. Co., Inc.,
    148 F.3d 214 (3d Cir. 1998)..............................................................................................18

In re IT Group, Inc.,
    322 B.R. 729 (Bankr. D. Del. 2005) ..................................................................................19

Johnson v. Trueblood,
    629 F.2d 287 (3d Cir. 1980)..............................................................................................20

Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,
    337 F.3d 314 (3d Cir. 2003)..............................................................................................19

Liteky v. United States,
    510 U.S. 540 (1994)..........................................................................................................20

Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.),
    186 B.R. 414 (N.D. Ill. 1995) ...........................................................................................21

429.001-15689

## TABLE OF AUTHORITIES

### CASES
### (Contd.)

Page

*Mausolf v. Babbitt,*
    85 F.3d 1295 (8th Cir. 1996) ..........................................................................12

*McDaniel v. Am. Druggists' Ins. Co. (In re Nat'l Buy-Rite, Inc.),*
    11 B.R. 191 (Bankr. N.D. Ga. 1981) .............................................13, 14, 15, 16

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.,*
    72 F.3d 361 (3d Cir. 1995)...............................................................................14

*New Hampshire v. Maine,*
    532 U.S. 742 (2001)..........................................................................................18

*Nicini v. Morra,*
    212 F.3d 798 (3d Cir. 2000)................................................................................3

*Pasha Auto Warehousing, Inc. v. Phila. Regional Port Auth.,*
    Civil Action No. 96-6779, 1997 U.S. Dist. LEXIS 20511 (E.D. Pa. Dec. 23, 1997)........14

*Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.,*
    110 F.R.D. 180 (N.D. Tex. 1986) ......................................................................14

*Stoltz Realty Co., v. Raphael,*
    458 A.2d 21 (Del. 1983) ...................................................................................17

*United States v. Pearson,*
    203 F.3d 1243 (10th Cir. 2000) ........................................................................20

*United States v. Pelullo,*
    399 F.3d 197 (3d Cir. 2005)..............................................................................18

*Vazman, S.A. v. Fidelity Int'l Bank,*
    418 F. Supp. 1084 (S.D.N.Y. 1976)........................................................12, 13, 15

### STATUTES AND RULES

Page

11 U.S.C. § 1109.......................................................................................................11

28 U.S.C. § 455.........................................................................................................20

Federal Rule of Civil Procedure 24 ......................................................11, 12, 13, 14, 15

## TABLE OF AUTHORITIES

## SECONDARY AUTHORITIES

Page

Alan N. Resnick, Henry J. Sommer, *Collier on Bankruptcy* (14th ed. 2006)................................12

Am. Jur. 2d, *Election of Remedies*................................................................................17

28 C.J.S. Election of Remedies (1941)............................................................................17

The SWE&C Liquidating Trustee ("Trustee"), on behalf of the SWE&C Liquidating Trust (the "Trust"), as successor-in-interest to plaintiff Stone & Webster Engineering Corporation ("SWEC"), hereby responds to the Opening Brief of Saudi American Bank ("SAMBA") on appeal from the Bankruptcy Court's denial of SAMBA's motion to intervene in the underlying adversary proceeding against the Saudi Arabian Oil Company ("Saudi Aramco"). In opposition thereto, the SWE&C Liquidating Trustee states as follows:

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Despite personal attacks, mischaracterizations, and exposition of needless detail that obscures the relevant facts, SAMBA all but ignores the real issue: can SAMBA intervene in an action arising from contracts to which it is not a party, contracts that preclude third-party beneficiaries, relying only on a questionable "assignment" from an entity that is not a party to the underlying litigation, and is not likely subject to jurisdiction in the United States?

Rather than address this issue, SAMBA first proposes that it has a statutory right to intervene in the Trust's action against Saudi Aramco. However, even a statutory right to intervene cannot overcome the need for Article III standing, and SAMBA lacks standing to intrude in an adversary proceeding arising from contracts to which SAMBA is not a party, a third-party beneficiary, or an assignee of the rights of the Trust (or SWEC, its predecessor-in-interest). SAMBA's purported claims under another contract (a guaranty), issued by SWEC, also does not support SAMBA's efforts to intervene in this litigation because that guaranty was assumed by a non-party (The Shaw Group, Inc.).

SAMBA posits next that the Bankruptcy Court had no right to question SAMBA's conclusory allegations that it could intervene because it held an alleged assignment of proceeds at issue in the underlying adversary proceeding. However, the Bankruptcy Court had the right to review the alleged "assignment" and note the discrepancies between the "assignment's" clear

requirements, the lack of any evidence that the requirements were satisfied, and SAMBA's failure to explain how its "assignment" was valid despite the obvious discrepancies.

SAMBA argues that the Bankruptcy Court abused its discretion in denying intervention. However, the validity of its alleged "assignment" has no question of law or fact in common with the Trust's claims or Saudi Aramco's defenses, which arguably arise from contracts to which SAMBA is neither a party nor a third-party beneficiary. Moreover, SAMBA proposes intervention for the express purpose of delaying and prejudicing the adjudication of the rights of the Trust and Saudi Aramco, defeating its claim to permissive intervention.

Finally, SAMBA accuses the Bankruptcy Court of bias and prejudice because the Bankruptcy Court allegedly "denied" SAMBA's "request" to disqualify a mediator, failed to rule in other adversary proceedings on pending motions, and had the temerity to review and question the documents that SAMBA submitted to support intervention. First, SAMBA misrepresents the record: Even as SAMBA admitted at the time, it did not move to disqualify the mediator, and the Bankruptcy Court made no ruling. Second, even if the purposeful failure to rule on motions by SAMBA and its adversary were a sign of bias or prejudice, SAMBA wholly fails to show that anything but crowded dockets delayed consideration of the motions, or that SAMBA (or its adversary) had done anything more than file notices of completed briefing to draw the Bankruptcy Court's attention to any supposed need for a speedier resolution. Third, the Bankruptcy Court's legitimate inquiries into facial discrepancies in SAMBA's alleged assignment are hardly the badges of bias or prejudice that qualify for disqualification.

Under the well-recognized rule that a reviewing court affirms a lower court on any basis found in the record, ample reasons exist to affirm the Bankruptcy Court's conclusion that SAMBA lacks standing to intervene – and no reason to question the Bankruptcy Court's bias or prejudice for merely doing its job.

2

429.001-15689

## II. <u>STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW</u>

A.    <u>Issues Presented For Review</u>.

      1.    Whether the Bankruptcy Court properly denied SAMBA's motion to intervene.

      2.    Whether this Court should disqualify the Bankruptcy Court from hearing further proceedings because of alleged bias or prejudice.

B.    <u>Standard Of Review</u>.

The reviewing court reviews a denial of a motion to intervene for abuse of discretion. *See, e.g., Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992). Though review is "more stringent" for review of an order denying intervention of right, the reviewing court will affirm unless the lower court "reached a decision that we are confident is incorrect." *Id.* (quoting *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987)). The reviewing court is "more reluctant to intrude into the highly discretionary decision of whether to grant permissive intervention." *Id.* The reviewing court may affirm on any ground supported by the record. *See, e.g., Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir. 2000).

## III. <u>STATEMENT OF THE CASE</u>

A.    <u>Nature Of The Case, Course Of Proceedings, Disposition In The Court Below</u>.

The Trustee has little need for present purposes to dispute most of SAMBA's description of the underlying cases or their procedural histories, even though SAMBA's description frequently fails to cite support in the record. (*See, e.g.*, Opening Br. at 4 n.6.) However, SAMBA's detailed exposition omits or downplays events that are key to an understanding of the issues in SAMBA's appeal. Therefore, the Trust provides this abbreviated version to assist the Court in understanding the current posture of the underlying case.

This case arises from SAMBA's attempt to intervene in an adversary proceeding brought by Stone & Webster, Incorporated, and SWEC as debtors-in-possession against Saudi Aramco.

3

Following the effective date of a plan of liquidation in the underlying bankruptcy case, the Trust and the SWINC Plan Administrator, successors-in-interest to the debtors-in-possession, substituted as parties. (*See* Adversary Proceeding No. 02-03963-PJW ("Saudi Aramco Action"), D.I. #26 (Tab 20, A1492-A1495).)[2] By stipulation of the parties, the SWINC Plan Administrator later withdrew as a plaintiff. (*See* Saudi Aramco Action, D.I. #34 (Tab 30, A1532-A1534).)

SAMBA moved to intervene in the Saudi Aramco Action and to join Abdullah Said Bugshan & Brothers ("ASB&B") as a defendant on November 7, 2002. (*See id.*, D.I. #19 (Tab 15, A1309-A1401).) The debtors-in-possession opposed the motion. (*Id.*, D.I. #17 (Tab 17, A1437-A1452).) Though SAMBA filed a notice of completion of briefing, no party claimed any urgency in its resolution. (*Id.*, D.I. #25 (Tab 19, A1489-A1491).)

Following the Trust's involvement in the adversary proceeding, the Bankruptcy Court ordered the parties – including "proposed Intervenor" SAMBA – to mediation. (*Id.*, D.I. #28 (Tab 22, A1502-A1504).) Allegedly unhappy to learn that the parties had excluded SAMBA from further negotiation after their initial mediation session, SAMBA asserts that it "formally requested oral argument on its Motion to Intervene and requested that the Court officially terminate the mediation . . . ." (Opening Br. at 5-6.)

SAMBA declined to file a new intervention motion to advise the Bankruptcy Court of a significant development in the case: this Court's ruling that the Shaw Group, Inc. ("Shaw") had assumed and was liable for a guaranty from SWEC to SAMBA that assured payment on the debt for which SAMBA sought intervention in the Saudi Aramco Action. (*See, e.g.*, Saudi Aramco Action, D.I. #41 (Tab 36, A1564, A1570), D.I. #42 (Tab 37, A1705).) Though the debtors-in-possession had filed an Answering Brief in opposition to SAMBA's motion to intervene (*id.*, D.I.

---

[2] Tab and page references are to Saudi American Bank's Revised Record On Appeal.

4

#23 (Tab 17, A1437-A1452)), the Trust filed an opposition to advise the Bankruptcy Court of the judgment against Shaw. (*Id.*, D.I. #41 (Tab 36, A1563-A1580).) Thereafter, SAMBA filed a Reply. (*Id.*, D.I. #46 (Tab 40, A1713-A1728).)

At a hearing on April 25, 2006, the Bankruptcy Court denied SAMBA's motion to intervene. (*Id.*, D.I. #54 (Tab 47, A1796-A1825).) Though moving initially to intervene and join ASB&B as a defendant, SAMBA neither argued for the joinder in its reply (*id.*, D.I. #46 (Tab 40, A1713-A1728)) nor pursued the joinder at the hearing (*id.*, D.I. #54 (Tab 47, A1796-A1825)). SAMBA does not appeal from any action or inaction on its motion to join ASB&B. (*See, e.g., id.*, D.I. #52 (Tab 46, A1791-A1793).)

**B.    Responsive Statement Of Facts.**

Again, the Trustee has no present need to discuss much of SAMBA's Concise Statement of Facts, except to note again that much of it lacks support (*e.g.*, Opening Br. at 8), or cites to incompetent evidence such as counsel's unsworn allegations in pleadings for factual support (*e.g., id.* at 9-12). Again, however, SAMBA omits, obscures, and even misstates key facts in its effort to excuse the shortcomings of its motion to intervene, and pursue its crusade to discredit the Bankruptcy Court, and the Trustee limits his response to certain relevant facts.

**1.    The Bankruptcy Court's Denial of SAMBA's Motion To Intervene.**

SWEC and ASB&B were the sole shareholders of a Saudi Arabian limited liability company, Bugshan S&W Co. Ltd. ("BS&W"). (Saudi Aramco Action, D.I. #1 (Tab 1, A0005 ¶ 15).) SWEC and ASB&B provided guaranties to SAMBA for a 1998 loan to BS&W. (*See* Opening Br. at 8; Adversary Proceeding No. 01-07766-PJW ("Recovery Action"), D.I. #1 (Tab 49, A1846-A1847).) SAMBA concedes that it has settled and released any claims against ASB&B under the guaranty (Opening Br. at 8), and that it has settled its claims against SWEC (Opening Br. at 14; Adversary Proceeding No. 01-1120 ("Recovery Action"), D.I. #120 (Tab

5

157, A5675-A5685)).  Nevertheless, SAMBA insists it has a right to intervene in the underlying

action by the Trust, as successor to SWEC, to recover damages from Saudi Aramco.

Contrary to SAMBA's simplistic analysis of the Bankruptcy Court's opinion from the

bench, the opinion actually notes serious, irreconcilable discrepancies in SAMBA's claims:

> Looking first at Exhibit 1 to your motion, this is captioned Assignment of
> Contract Proceeds, I guess the first thing I would note is that it's dated the 22nd of
> January, 1995.  You said the loan was in January of '98.  But more importantly,
> that document, quote, "Assignment of Contract Proceeds" recites the assignor
> hereby assigns to the bank all the proceeds of the contract.  Further down on that
> column it says, The assignor shall immediately notify all payors under the
> contract of this assignment in such form as may be required by payor, or if no
> specific form is required, by letter in substantially the following form.  And then
> there's a form letter that says, We hereby advise you that we have executed an
> assignment of proceeds in favor of Saudi Arabian, Saudi American Bank.  But
> that's not the letter that was sent, and I'm now looking at Exhibit 2, which is a
> September 21, 1994, quote, "Specific Payment Instruction Letter", close quote.
> And it reads quote, "This letter" – and this is a letter from the borrower, to, to the
> Saudi Arabian Oil Company – quote, "This letter requests and authorizes you to
> pay Saudi American Bank, Floor (phonetic) branch, P.O. Box 842, Alchobar
> (phonetic) with a zip code, Saudi Arabia, for credit to our account any and all
> compensation due from you under contract number 65004."  It then goes on to
> say, and I quote, "We shall mark all our invoices presented to you to pay to Saudi
> American Bank, Floor Branch, P.O. Box" etcetera "for account of Bugshan, S &
> W Company Limited."  Close quote.  That doesn't sound like an assignment to
> me.  It sounds like a direction as to what account the proceeds should be paid, and
> it identifies account of the party that contracted with the Saudi Arabian Oil
> Company.  Isn't that what it says?  Let me go on.  In Exhibit no. 4, which is a
> May 11, 2002 letter from the bank to the oil company, it references as assignment
> of all payments, and it says, We write to remind Saudi Aramco that BS&W by
> letter dated September 21, 1994, paren (the, quote, "Specific Payment Instruction
> Letter", close quote) a copy of which is attached, requested and authorized,
> etcetera.  And in Exhibit 5, the response from the oil company to the bank is to
> confirm the assignment and authorization contained in the subject specific
> payment instruction letter which is not a letter suggesting an assignment.  And
> your response is?

(*Id.*, D.I. #54 (Tab 47, A1801-A1802).)  Even though SAMBA provided the documents to the

Bankruptcy Court to support intervention, SAMBA's response is the Bankruptcy Court had to

accept SAMBA's conclusory allegations – that the Bankruptcy Court had no right to examine

documents and question the basis of SAMBA's asserted right to intervene.

6

But as the Bankruptcy Court concluded, SAMBA's claim to a valid assignment fails even a cursory review, and SAMBA has yet to provide an explanation. The alleged assignment, dated January 22, 1995, requires BS&W to provide notice of "assignment" to the "payor," including a disclosure that "we have executed an assignment of proceeds of (the Contract) in favour of Saudi American Bank." (*Id.*, D.I. #19 (Tab 15, A1330, A1332).) The "Specific Payment Instruction Letter," dated September 21, 1994 – four months *before* the alleged assignment – makes no reference to an assignment: "This letter requests and authorizes you to pay Saudi American Bank, . . . for credit to our account any and all compensation due from you under Contract No. 65004, as it may be changed from time to time," and requires that Saudi Aramco make such payments to SAMBA "only . . . against invoices submitted by us and not otherwise." (*Id.* (Tab 15, A1334).) The letter makes no disclosure that it is an "assignment."

Moreover, both the "Specific Payment Instruction Letter" and the "Assignment of Contract Proceeds" are between SAMBA and BS&W – not with SWEC. The contract *partially* underlying the adversary proceeding brought by the debtors-in-possession – the so called "In-Kingdom Contract"[3] – precludes any claim by an alleged third-party beneficiary: "This Contract shall not be deemed for the benefit of any third party nor shall it give any person not a party to

_____

[3] The adversary complaint of the debtors-in-possession against Saudi Aramco actually relied on two contracts:

> [T]he In-Kingdom Contract was intertwined with a contract (the "Out-of-Kingdom Contract") between Aramco Services Corporation, a wholly-owned subsidiary of Saudi ARAMCO incorporated in Delaware and based [sic] Houston, Texas . . . . Despite the fact that the In-Kingdom Contract and Out-of-Kingdom Contract purport to be two separate contracts, the ARAMCO Entities did not always draw formal distinctions between the two contracts. For example, the ARAMCO Entities both responded to SWEC using the stationary [sic] of the other entity on matters concerning the contracts.

(Saudi Aramco Case, D.I. #1 (Tab 1, A0006-A0007 ¶ 19).)

7

this Contract any right to enforce its provisions." (Saudi Aramco Action, D.I. #6 (Tab 5, A0140 § 31.5).) SAMBA's only claim to privity of contract with SWEC is through the guaranty that Shaw assumed, as judicially determined by this Court at SAMBA's urging. But having elected to obtain its remedy from Shaw, SAMBA is estopped from intervening to wrest recoveries that will otherwise benefit all of SWEC's creditors.

Even if SAMBA had not elected to pursue a remedy from Shaw, SAMBA is claiming a right to a "first security interest" and a "first priority right" to alleged contract proceeds (Opening Br. at 2). SAMBA has never asserted, nor established, that it has a security interest in the Trust's rights against Saudi Aramco. Even if SAMBA has an assignment of BS&W's rights to contract proceeds, that assignment does not give a security interest in the rights of SWEC or the Trust. SAMBA has never asserted that it holds a security interest in the Trust's rights. In any event, it agreed in settling mutual claims between the debtors-in-possession and SAMBA that, at best, SAMBA is nothing more than an unsecured creditor (see, e.g., Recovery Action, D.I. #120 (Tab 157, A5681 ¶ 2 ("SAMBA will have an allowed general, unsecured claim"))), and cannot claim benefits as a secured creditor at this late stage of the bankruptcy case.

### 2.  The Bankruptcy Court's "Denial" Of SAMBA's "Request" To Recuse The Mediator.

SAMBA asks this Court to disqualify the Bankruptcy Court from further involvement in this matter – an issue that is moot if this Court agrees that the Bankruptcy Court was justified in denying SAMBA's intervention. But SAMBA's attempt to disqualify the Bankruptcy Court demonstrates SAMBA's willingness to misrepresent the record to achieve its goals.

SAMBA bases its claims of bias on the Bankruptcy Court's failure to rule on motions in adversary proceedings. But SAMBA fails to note that any delay equally affected motions brought by SAMBA and its adversaries, that SAMBA made no effort to seek expedited action,

8

and that no evidence supports an inference that anything but crowded dockets prevented quicker action. SAMBA criticizes the Bankruptcy Court's denial of SAMBA's motion to intervene. But SAMBA fails to concede its own failure to answer the Bankruptcy Court's concerns about discrepancies in SAMBA's supporting documents, or its failure to seek any opportunity to brief the issues. And SAMBA argues that the Bankruptcy Court had to disqualify the mediator because the parties excluded SAMBA from settlement talks. But SAMBA fails to accept that the parties made that choice because of SAMBA's unreasonable positions. (*Cf.* Recovery Action, D.I. #91 (Tab 100, A4271, *ll.* 3-8 ("[T]hey asked Your Honor to allow SAMBA to attend the mediation. We did not object to that. We were happy to have their involvement to find out what their position was, to understand it, to understand how that would affect any settlement discussions we would have. But at this point, Your Honor –"); A4275, *ll.* 19-24 ("I just wanted to note for the record that [Saudi Aramco] concur[s] with everything that Mr. Houpt has said today concerning the fact that progress has been made – significant progress has been made in terms of reaching a settlement and that we oppose the recusal of Judge Conrad.")).)

Most egregiously, SAMBA misrepresents the record on its alleged "request" to recuse the mediator in the Saudi Aramco Action. SAMBA began its attempt to disqualify the mediator by claiming that its law firm – Kirkpatrick & Lockhart – became involved in an unrelated matter adverse to the mediator in a pending arbitration. In response to SAMBA's request ***to the mediator*** that he recuse himself, the Trust disagreed and asked the mediator to deny the request:

> To the extent that there is a conflict in Judge Conrad's continued involvement in this matter (and we agree with Judge Conrad that there is no conflict), we believe that Kirkpatrick & Lockhart has the conflict and not the mediator. As I understand Judge Conrad's March 16 e-mail, your firm was retained for a matter in which Judge Conrad was already the arbitrator, well after his retention as mediator in the SWEC/Aramco matter. If a conflict now exists, Kirkpatrick & Lockhart had the duty to discover and avoid any such conflict before agreeing to a retention in the arbitration. We do not believe that SAMBA's legal counsel has the right to create an alleged conflict by agreeing to a retention under such

circumstances. Therefore, the Trustee has advised Judge Conrad that the Trustee does not believe a conflict exists for the reasons stated above, and we have asked Judge Conrad to deny your request that he recuse himself. We are also prepared to oppose any motion for the appointment of a new mediator.

(Saudi Aramco Action, no D.I. # (Tab 28, A1526).)

In truth, the Trust – not SAMBA – asked for a status conference on the issue because of the mediator's uncertainty about continuing in his role. (Recovery Action, D.I. #91 (Tab 100, A4251, *ll.* 7-8 ("Your Honor, the Trustee asked for this status conference.")).) SAMBA read a transcript at that conference about the mediator's criticism of other Kirkpatrick & Lockhart lawyers in the unrelated case where he acted as arbitrator. (Opening Br. at 4-5, fn. 7.) The transcript exists in the record only as counsel read it at the status conference. (Recovery Action, D.I. 91 (Tab 100, A4265-A4266).) No one had the opportunity to judge the alleged colloquy in context or in totality.

The Bankruptcy Court's reaction was merely an off-the-cuff response to counsel's selective reading of the transcript. (*Id.*) At that, the Bankruptcy Court was eminently fair in his reaction. (*Id.*, D.I. #91 (Tab 100, A4265, *ll.* 11-17 ("Suppose if one of your lawyers appears before me in a case and, for want of a better word, makes a serious misrepresentation which is [a] basis for discipline – disciplinary action. Would that disqualify your firm from appearing before me? MR. ROSENFELD: I would think not, Your Honor."); A4266, *ll.* 9-15 ("Your Honor, my view is is that this is a situation where Mr. Conrad has made it quite clear on the record in Court that he believes that our firm has acted improperly. THE COURT: I didn't understand it that way. He is characterizing perhaps one or more of your partners, but I don't think that's an indictment of your firm, by any means.")).)

But, most significantly, the Bankruptcy Court did not deny *any* request to disqualify the mediator – as SAMBA itself made clear (*id.*, D.I. #91 (Tab 100, A4275, *ll.* 11-13 ("Your Honor,

10

I'll also note that at the moment we're not here on our Motion to Disqualify. We're only here as part of a status conference with the Court.")) – as the Bankruptcy Court reiterated (*id.*, A4276, *l.* 9 ("But this is only a status conference.")); A4276, *ll.* 15-17 ("And – but nobody's filed a motion for me to rule on so there's no basis – there's nothing for me to rule on so there's no basis – there's nothing for me to rule on.")).) Since that status conference in 2005, SAMBA has filed no motion to disqualify, and the Bankruptcy Court has yet to deny any such "request."

## IV. ARGUMENT

SAMBA itself shows why its theories are wrong: SAMBA must support intervention with "***nonconclusory*** allegations." (Opening Br. at 17 (emphasis added).) As the Bankruptcy Court was entitled to find – as other cases have similarly found – SAMBA's supporting documents contradict its conclusory allegations. SAMBA's only argument for privity to SWEC was SWEC's guaranty – an argument that SAMBA waived both when it settled the guaranty claim and when it obtained a judgment against Shaw on the guaranty claim, thereby electing its remedy. SAMBA is now judicially estopped from relying on the guaranty – as it continues to do (Opening Br. at 27-28) – to support its effort to interfere in the Saudi Aramco Action.

A.    **SAMBA Lacks Privity To The Contract Arguably At Issue In The Saudi Aramco Action And, Therefore, SAMBA Lacks Any Basis To Intervene.**

1.    **SAMBA Lacks Article III Standing To Assert An Unconditional Statutory Right To Intervention.**

SAMBA first argues that it has an unconditional statutory right to intervene under Federal Rule of Civil Procedure 24(a)(1) and pursuant to Bankruptcy Code section 1109(b), giving "the debtor, [the] trustee, [a] creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee" a right to raise, appear, and be heard "on any issue in a case under this chapter." (Opening Br. at 18, citing 11 U.S.C. §

11

1109(b).)    However, even the seemingly broad statutory dictate cannot overcome the
constitutional requirement of "standing":

> Like all statutes, section 1109(b) is subject to this relevant constitutional
> restriction. Accordingly, even though section 1109(b) might appear to confer
> standing on any party in interest in any proceeding in a case, the section cannot be
> construed in a manner that would violate Article III's case or controversy
> requirement.

7 Alan N. Resnick, Henry J. Sommer, *Collier on Bankruptcy* ¶ 1104.04[4][a] (14th ed. 2006).

Furthermore:

> The constitutional requirement of "standing" requires 1) injury-in-fact;
> 2) causation, i.e., a causal connection between the alleged injury and the conduct
> being challenged; and 3) redressability.

*Hillside Enters., Inc. v. Carlisle Corp.*, 944 F.Supp. 793, 797 (E.D. Mo. 1996) (noting that,
"inherent in Rule 24(a) is a requirement that would-be intervenors have Article III standing to
litigate their claims in federal court" (citing *Mausolf v. Babbitt*, 85 F.3d 1295, 1299-1301 (8th
Cir. 1996)).

    Thus, even a "judgment creditor" who might benefit from a recovery by its debtor lacks
standing where it has no privity to the contractual relationship at issue in the case. *Id.* ("Houston
has failed to provide any caselaw which supports its argument that as a judgment creditor, by
virtue of a consent judgment entered in another lawsuit, it has a legally cognizable right or
protectable interest in dictating the manner of distribution of a judgment rendered in another
lawsuit."). SAMBA is not even a judgment creditor, having only the status of a claimant under
an alleged but questionable "assignment" with a third-party (BS&W) that is neither present in the
litigation nor subject to jurisdiction in the United States.

    SAMBA's lack of privity to the contract arguably at issue in the Saudi Aramco Action is
fatal for any claim to intervention-of-right. *See, e.g.*, *Vazman, S.A. v. Fidelity Int'l Bank*, 418 F.
Supp. 1084, 1086 (S.D.N.Y. 1976) ("[U]nder both New York law and general contract

429.001-15689

principles, a third party may sue on a contract only if the parties to that contract intended to confer a benefit on him when contracting; it is not enough that some benefit incidental to the performance of that contract may accrue to him."); *McDaniel v. Am. Druggists' Ins. Co. (In re Nat'l Buy-Rite, Inc.)*, 11 B.R. 191, 194 (Bankr. N.D. Ga. 1981) ("It must clearly appear from the contract that it was intended for the benefit of a third party.").

The BS&W-Saudi Aramco contract explicitly precluded claims by third parties, and SAMBA cannot claim third-party status to intervene in the Saudi Aramco Action. Lacking the necessary privity, SAMBA has no constitutional standing to intervene in the Saudi Aramco action, notwithstanding its claims of an absolute right to intervene under the Bankruptcy Code.

### 2.    SAMBA Lacks A Sufficiently Protectable Interest To Assert A Right To Intervene As A Matter Of Right.

As conditions to intervention-of-right, Rule 24(a)(2) requires that:

(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in litigation. Although these requirements are intertwined, each must be met to support intervention as of right.

*Harris v. Reeves*, 946 F.2d 214, 219 (3d Cir. 1991) (citation omitted). Intervention also requires a direct, legally protectable interest, as opposed to a contingent or remote interest. *Id.*

No less than it was under Rule 24(a)(1), SAMBA's lack of privity to the contract arguably at issue in the Saudi Aramco Action is fatal to any claim to intervention-of-right under Rule 24(a)(2). *See, e.g., Vazman, S.A.*, 418 F. Supp. at 1086-87; *McDaniel*, 11 B.R. at 194. But in addition, for purposes of Rule 24(a)(2), the proposed intervenor's interest "must be significant, must be direct rather than contingent, and must be based on a right which belongs to the proposed intervenor rather to an existing party to the suit." *Vazman, S.A.*, 418 F. Supp. at 1085-

13

86; *see also McDaniel*, 11 B.R. at 194 ("The mere fact that a person would benefit from the performance of the agreement is not sufficient to make that person a third party beneficiary.").

A direct interest does not exist if the intervenor lays claim only to a ***possible*** recovery. *See, e.g.*, *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1562 (Fed. Cir. 1989) ("The interest of an applicant non-party having no privity claim in a contract, the terms of which are disputed by the parties to it, also has not been recognized as legally protectable, even when the outcome of a contract action is almost certain to have a significant and immediate economic impact on the applicant."); *McDaniel*, 11 B.R. at 194 ("[I]ntervention as of right cannot be allowed on the ground that the outcome of a suit may increase or decrease the collectability of a claim. Other courts have also held that a third person's contingent interest in the outcome of pending litigation is not sufficient to justify intervention."); *Pasha Auto Warehousing, Inc. v. Phila. Regional Port Auth.*, Civil Action No. 96-6779, 1997 U.S. Dist. LEXIS 20511, at *13 (E.D. Pa. Dec. 23, 1997) ("Mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene."). The interest is not sufficient even if, as the Bankruptcy Court found here, the proposed intervenor must pursue remedies in another lawsuit or another court. *See, e.g., id.* ("The mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party the right to intervene." (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)).

A claim to proceeds that remain "purely contingent upon a favorable judgment" will not support intervention. *See Gen. Star Indem. Co. v. Virgin Islands Port Auth.*, 224 F.R.D. 372, 376 (D. V.I. 2004) ("Although identification of an interest in a specific fund has been determined sufficient to allow intervention, an actual fund must exist." (explaining *Mountain Top Condo. Ass'n*, 72 F.3d at 366)); *see also Rigco, Inc. v. Rauscher Pierce Refsnes, Inc.*, 110 F.R.D. 180, 184 (N.D. Tex. 1986) ("The possibility of a benefit because a party may have more money

14

available at the conclusion of a lawsuit does not constitute a direct, substantial, legally protectable interest under Rule 24(a)(2).").  SAMBA's claim – that it needs to intervene to protect its interest in an alleged "assignment" from BS&W – is not sufficient to intervene as a matter of right.  Indeed, SAMBA's involvement in proving an "assignment" that is otherwise not at issue in the Saudi Aramco Action would "only cause inordinate delay and place a great burden on the Court and the existing parties." *Vazman, S.A.*, 418 F. Supp. at 1087 (denying permissive intervention).  The Bankruptcy Court was fully justified in so finding.

3. **SAMBA's Claim To Have An "Assignment" Does Not Involve Common Questions Of Law Or Fact With The Trust's Claims Against Saudi Aramco To Allow Permissive Intervention.**

No less so in permissive intervention, an intervenor must have standing.  *See McDaniel*, 11 B.R. at 195 (construing permissive intervention; "[A] party has standing to prosecute a suit in federal court only if he is the real party in interest.  This rule applies to intervenors as well as to the original parties to the suit.").  Therefore, SAMBA's lack of standing for intervention-of-right precludes permissive intervention.  Additionally, permissive intervention is available only "when an applicant's claim or defense and the main action have a question of law or fact in common . . . ." Fed. R. Civ. P. 24(b).

SAMBA is merely a claimant under its alleged "assignment" – a matter that requires proof from SAMBA separate and apart from any issue in the litigation between the Trust and Saudi Aramco – a factor that frustrates even permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).  *Hillside Enters.*, 944 F. Supp. at 798 (denying permissive intervention to "judgment creditor" where intervenor's "claims do not involve common questions of law or fact as the underlying lawsuit").

Whether intervention-of-right or permissive intervention, SAMBA's rights under its alleged "assignment" from BS&W "arise out of [its] agreement[] with a party not subject to the

15

jurisdiction of this Court" – BS&W. *Vazman, S.A.*, 418 F. Supp. at 1087. As such, permissive intervention is not appropriate. *Id.* But even if an assignment with a third-party were sufficient to confer standing in the litigation between the Trust and Saudi Aramco, the Bankruptcy Court was not bound to accept SAMBA's conclusory claims of a valid assignment.

Contrary to SAMBA's claim that the Bankruptcy Court had to accept its conclusory allegations without question, "substantive law" must support the proposed intervenor's alleged interest in the matter. *See, e.g., Am. Mar. Trasp., Inc.*, 870 F.2d at 1562. That requirement would be meaningless if the Bankruptcy Court had no right to test SAMBA's claim. The Bankruptcy Court had every right to review and judge the evidence, and to place the burden on SAMBA to prove its right to intervene. *Cf. McDaniel*, 11 B.R. at 195 (finding against permissive intervention where party failed to submit security agreement under which it claimed standing; "Therefore the Court cannot make a determination as to [the intervenor's] standing to enforce this contract. Under these circumstances, the Court concludes that permissive intervention should not be allowed."). SAMBA failed to carry its burden and the Bankruptcy Court was justified in denying intervention.

**B.    SAMBA's Only Claim To Privity With SWEC And The Contract Arguably At Issue In The Saudi Aramco Proceeding Was The SWEC Guaranty, And SAMBA Elected To Pursue That Claim To Judgment Against Shaw.**

To evade the Bankruptcy Court's findings, or SAMBA's own election to proceed to judgment against Shaw, SAMBA employs a circuitous explanation that New York law applies to the guaranty, New York statute imposes an election of remedies on lawsuits arising from real estate transactions involving mortgages, so no election of remedies must apply to other commercial loan transactions (but without citing any authority for this argument). (Opening Br. at 25-28.) The first difficulty with SAMBA's position -- as it acknowledges -- is that election-of-remedies is equitable not statutory. (*See* Opening Br. at 25 ("Judicial estoppel and the election of

16

remedies are companion doctrines that are equitable in nature.")); *see also Fort Vancouver Plywood Co. v. United States*, 860 F.2d 409, 414 (Fed. Cir. 1988). The second problem is that SAMBA has surrendered its rights under the guaranty as asserted against SWEC, both by its settlement with the debtors-in-possession and by its judgment against Shaw.

The Delaware Supreme Court explained that "[t]he doctrine of election of remedies is based on 'any decisive act of a party, with knowledge of his rights and of the facts, indicating an intent to pursue one remedy rather than the other.'" *Stoltz Realty Co., v. Raphael*, 458 A.2d 21, 23 (Del. 1983) (quoting 28 C.J.S. Election of Remedies, § 11, at 1077 (1941)). "[T]he prosecution of one remedial right to judgment or decree, whether for or against the plaintiff, is a decisive act which constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights." *Id.* (citations omitted). But SAMBA alleges that only "satisfaction" of the judgment triggers the doctrine if "the remedies are alternative and concurrent." (Opening Br. at 25.) SAMBA ignores authority that the bar occurs when "judgment *or* satisfaction is obtained" (25 Am. Jur. 2d, *Election of Remedies* § 21 (emphasis added)), and that "a party must make an election of remedies after the verdict is entered and prior to the entry of judgment" (*id.*, § 13).

Here, there is no question that SAMBA prosecuted its claim against Shaw to judgment in this Court. Similarly, if Shaw assumed SWEC's guaranty, there can be no question that, continuing to assert liability against the Trust is an utterly inconsistent remedy. *See Abdallah v. Abdallah*, 359 F.2d 170, 174 (3d Cir. 1966) (explaining "that, when a party has two remedies proceeding upon opposite and irreconcilable claims of right, the one adopted excludes the other"). Therefore, SAMBA cannot use the guaranty as the bootstrap to intervene in the Saudi Aramco Action based on a facially invalid "assignment," having no privity to the contract arguably at issue in that action, and no other basis to assert a legally protectable interest.

17

Alternatively, SAMBA should be judicially estopped from claiming that it has a financial interest against SWEC that would warrant intervention in the Aramco Proceeding:

> Judicial estoppel, sometimes called the doctrine against the assertion of inconsistent positions, is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts.

*EXDS, Inc. v. Ernst & Young (In re EXDS, Inc.)*, 316 B.R. 817, 824 (Bankr. D. Del. 2004) (quoting *In re Chambers Dev. Co., Inc.*, 148 F.3d 214, 229 (3d Cir. 1998)). The requirements for judicial estoppel are met here.

In determining whether to invoke judicial estoppel, the Third Circuit generally applies the factors identified by the United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742 (2001), namely, that (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *See United States v. Pelullo*, 399 F.3d 197, 222-23 (3d Cir. 2005) (quoting *New Hampshire*, 532 U.S. at 750-51 (internal quotations and citations omitted)). The doctrine is fully applicable on these facts where SAMBA attempts to compel the Trust to defend litigation that its predecessor-in-interest settled, and that SAMBA pursued to judgment against Shaw:

> The criteria for determining when seemingly inconsistent litigation stances justify application of the doctrine are: First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position in bad faith – i.e., with intent to play fast and loose with the court.

18

> Finally, a . . . court may not employ judicial estoppel unless it is tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

*In re IT Group, Inc.*, 322 B.R. 729, 734 (Bankr. D. Del. 2005) (citation omitted) (quoting *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003)).

Allowing SAMBA to take inconsistent positions in this litigation not only will give SAMBA an unfair advantage and an opportunity to obtain a double recovery or double judgment for the same debt but, more importantly, it will prejudice the Trust and Saudi Aramco by interfering with and jeopardizing the progress that has been made in mediation and negotiation, at substantial time and expense of all involved. This would be particularly unfair where SAMBA already has obtained a final judgment against Shaw.

Though SAMBA has failed to assert a secured claim in the bankruptcy case and should not be allowed to do so now, SAMBA does not need to intervene in the Saudi Aramco Action to assert any alleged security interest against BS&W in contract proceeds.  As the Bankruptcy Court found, SAMBA can pursue Saudi Aramco or BS&W in an appropriate court (presumably in a Saudi forum).  SAMBA cannot assert a security interest in the Trust's share of any settlement proceeds. Because it already has obtained a judgment that will result in full payment, SAMBA simply lacks standing to intervene or to interfere in the ongoing negotiation process.

**C.    SAMBA Has Not Shown A Basis To Disqualify The Bankruptcy Court Where The Court Did Nothing More Than Make Legitimate Observations On Discrepancies In SAMBA's Evidence Allegedly Supporting Intervention.**

Though moot if this Court affirms the Bankruptcy Court, SAMBA's attempt to disqualify the Bankruptcy Court cannot go unanswered.  Though based on faulty or misstated facts – including the patent misstatement that the Bankruptcy Court "denied" its "request" to recuse the mediator – SAMBA has not made a valid case for disqualification.

19

Even crediting SAMBA's multifarious claims of bias – delay in ruling, denying a request to disqualify the mediator, ruling against SAMBA's motion for intervention – even taken all together are inadequate to make a case for disqualification:

> All of these grounds are inadequate [to support disqualification] under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 556 (1994) (emphasis in original). Even if SAMBA believed that the Bankruptcy Court exhibited bias or prejudice, waiting for years to seek disqualification and, indeed, waiting until after an adverse ruling, was a waiver of any right to disqualify the Bankruptcy Court. *See George N. Pegula Agency, Inc. v. Monumental Life Ins. Co.*, No. 3:CV-95-2198, 1999 U.S. Dist. LEXIS 23196, *20 (M.D. Pa. Mar. 9, 1999) (finding that assertion of motion to recuse after adverse ruling was untimely "Although timeliness in submitting a motion to recuse is not explicitly required under § 455(a), a number of courts have interpreted § 455(a) to require it implicitly. Those courts have determined that once a party seeking recusal knows of the facts on which recusal is based, it must move promptly to disqualify under § 455(a) or lose the right to do so." (citing cases)).

Stripping away faulty and unsupported claims of biased treatment by the Bankruptcy Court – that is, the alleged delay in rulings affected all parties, and the Bankruptcy Court did not deny any request to disqualify the mediator – SAMBA's claim comes down to the adverse ruling on intervention. However, the fact that a judge has made unfavorable rulings does not support an allegation of bias. *See, e.g., Liteky*, 510 U.S. at 550-51; *Johnson v. Trueblood*, 629 F.2d 287, 291 (3d Cir. 1980) ("Normally the judge's rulings at trial do not constitute grounds for recusal because they can be corrected by reversal on appeal."); *United States v. Pearson*, 203 F.3d 1243,

20

1277 (10th Cir. 2000) ("[A]dverse rulings cannot in themselves form the appropriate grounds for disqualification.").

But whatever the basis of SAMBA's motion to disqualify, SAMBA cannot raise it for the first time on appeal.  *See, e.g., Martino v. First Nat'l Bank of Harvey (In re Garofalo's Finer Foods, Inc.)*, 186 B.R. 414, 441 (N.D. Ill. 1995) ("[T]he judge presiding over the case must be afforded the opportunity to consider the issue and decide whether recusal is appropriate . . . . [the appellant] did not raise it before the bankruptcy judge, and cannot now pursue this argument in this forum as a means to defeat an unfavorable result.").   On multiple levels, SAMBA's attempt to disqualify the Bankruptcy Court is improper, and its argument should not prevail in this appeal.

[REMAINDER OF PAGE LEFT BLANK INTENTIONALLY]

21

## V. **CONCLUSION.**

The Bankruptcy Court acted well within its discretion, considering relevant factors in determining that SAMBA had no standing to intervene in the underlying case. Laying fault with the Bankruptcy Court for ruling from the bench without reciting each factor underlying a right to intervene is an elevation of form over substance that would wreak havoc for busy courts in this District and elsewhere. The record of the case below amply supports the Bankruptcy Court's determination that SAMBA was not entitled to intervene in the Saudi Aramco Action, and no credible evidence supports any suggestion that the Bankruptcy Court acted out of bias or prejudice in making its determinations. The Trust respectfully requests that this Court affirm the Bankruptcy Court's order denying SAMBA's motion for intervention.

Dated: March 2, 2007
       Wilmington, Delaware

                                THE SWE&C LIQUIDATING TRUST


                                By: _____
                                    Adam G. Landis (No. 3407)
                                    Kerri K. Mumford (No. 4186)
                                    LANDIS RATH & COBB LLP
                                    919 Market Street, Suite 600
                                    Wilmington, DE  19801
                                    Tel:  (302) 467-4400
                                    Fax:  (302) 467-4450

                                    - and -

                                    Lorraine S. McGowen
                                    Alyssa Englund
                                    ORRICK, HERRINGTON & SUTCLIFFE LLP
                                    666 Fifth Avenue
                                    New York, NY  10103-0002
                                    Tel:  (212) 506-5000
                                    Fax:  (212) 506-5151

22

429.001-15689

- and -

James E. Houpt
ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
Sacramento, CA  95814
Tel:  (916) 447-9200
Fax: (916) 329-4900

Counsel to the SWE&C Liquidating Trust

23

429.001-15689

## CERTIFICATE OF SERVICE

I, Kerri K. Mumford, hereby certify that on this 2nd day of March, 2007, I caused a true and correct copy of the *Brief of Respondent SWE&C Liquidating Trustee in Opposition to Saudi American Bank's Appeal of the Bankruptcy Court's Denial of Saudi American Bank's Motion to Intervene* to be filed with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Adam G. Landis (landis@lrclaw.com)
> Kerri King Mumford (mumford@lrclaw.com)
> Francis A. Monaco, Jr. (fmonaco@monlaw.com)
> Kevin J. Mangan (kmangan@monlaw.com)
> Dennis A. Meloro (melorod@gtlaw.com)

I further certify that I have served the parties listed on the service list below in the manner indicated:

*First Class Mail*
John C. Hutchins, Esquire
Daniel E. Rosenfeld, Esquire
Amy B. Abbott, Esquire
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Center
Boston, MA  02111

*First Class Mail*
Lorraine S. McGowen, Esquire
Alyssa Englund, Esquire
Orrick, Herrington & Sutcliff LLP
666 Fifth Avenue
New York, NY  10103-0002

*First Class Mail*
James E. Houpt, Esquire
Lynn Trinka Ernce, Esquire
Orrick, Herrington & Sutcliffe LLP
400 Capitol Mall, Suite 3000
Sacramento, CA  95814

Kerri K. Mumford (No. 4186)

429.001-15690