## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Bk. No. 00-02142 (PJW) |
| STONE & WEBSTER, INCORPORATED ) | Jointly Administered |
| et al., ) | |
| ) | |
| Debtors ) | |
| ) | |
| SAUDI AMERICAN BANK ) | Civil No. 06-399-SLR |
| ) | |
| Appellant, ) | |
| v. ) | |
| ) | |
| SAUDI ARABIAN OIL COMPANY, ) | |
| STONE & WEBSTER, INC., STONE & ) | |
| WEBSTER ENGINEERING CORP. and ) | |
| SWE&C LIQUIDATING TRUSTEE, ) | |
| ) | |
| Appellees. ) | |

## APPELLANT SAUDI AMERICAN BANK'S REPLY BRIEF IN SUPPORT OF ITS APPEAL OF THE BANKRUPTCY COURT'S DENIAL OF SAUDI AMERICAN BANK'S MOTION TO INTERVENE

**Monzack & Monaco, P.A.**
Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8163

**Kirkpatrick & Lockhart Preston Gates Ellis LLP**
Daniel E. Rosenfeld
John C. Hutchins
Amy B. Abbott
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100

Dated: March 23, 2007

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   ARGUMENT.......................................................................................................3

      A.    The Well-Pleaded Allegations in SAMBA's Complaint Establish
            *Prima Facie* Evidence of a Valid Assignment of Contract Proceeds.....................4

      B.    Questions of Fact Concerning the Validity of SAMBA's Assignment
            Should Not Impact SAMBA's Right to Intervene....................................................6

      C.    SAMBA has Standing to Enforce its Rights Under the In-Kingdom
            Contract...................................................................................................................8

      D.    SAMBA has a Sufficient and Direct Interest in the In-Kingdom
            Contract to Support Intervention as a Matter of Right ...........................................9

      E.    The Election of Remedies Doctrine Does not Apply to SAMBA'S
            Claims ...................................................................................................................10

            1.    SAMBA has Not Taken Inconsistent Positions Concerning its
                  Security Interest in the In-Kingdom Contract............................................11

            2.    Satisfaction has Not Been Obtained in the Recovery Action,
                  and therefore the Election of Remedies Doctrine is
                  Inapplicable...............................................................................................13

      F.    Judicial Estoppel is Inapplicable to the Facts of this Case ...................................14

      G.    The Settlement Agreement Entered Into Between SAMBA and
            Debtors Does Not Affect SAMBA's Right to Intervene in the Saudi
            Aramco Proceeding...............................................................................................16

      H.    The Bankruptcy Judge's Statements Demonstrate Extrajudicial Bias...................17

III.  CONCLUSION....................................................................................................19

## TABLE OF AUTHORITIES

### FEDERAL CASES

Abdallah v. Abdallah, 359 F.2d 170 (3d Cir. 1966) ....................................................11, 13

In re Adrian Research and Chemical Co., 269 F.2d 734 (3d Cir. 1959)...........................12

Central States, Southeast and Southwest Areas Health and Welfare Fund
    v. Old Security Life Insurance Co., 600 F.2d 671 (7th Cir. 1979) ...........................5, 6

In re Chambers Development Co., Inc., 148 F.3d 214 (3d Cir. 1998)...............................14

Commonwealth v. Cianfrani, 600 F. Supp. 1364 (E.D. Pa. 1985) ..............................11, 13

Development Finance Corp. v. Alpha Housing & Health Care, Inc., 54
    F.3d 156 (3d Cir. 1995)...................................................................................................10

Evans v. Buchanan, 130 F.R.D. 306 (D. Del. 1990)...........................................................9

In re First Quality Realty, LLC, No. 02-14758(PCB), 2006 WL 686868
    (Bankr. S.D.N.Y. Feb. 17, 2006) ................................................................................17

Healthcare Services Group, Inc. v. Royal Healthcare of Middlesex, LLC,
    276 F. Supp. 2d 255 (D. N.J. 2003)........................................................................13, 14

Johnson v. Trueblood, 629 F.2d 287 (3d Cir. 1980)..........................................................18

Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.,
    337 F.3d 314 (3d Cir. 2003)...........................................................................................15

Liteky v. United States, 510 U.S. 540 (1994)....................................................................17

Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d
    773 (3d Cir. 2001)..............................................................................................14, 15

Mountain Top Condominium Association v. Dave Stabbert Master
    Builder, Inc., 72 F.3d 361 (3d Cir. 1995) .....................................................................10

Otis Elevator Co. v. Standard Construction Co., 10 F.R.D. 404 (D. Minn.
    1950) ...............................................................................................................................3, 4

Seidel v. Lee, No. CIV. A. 93-494-JJF, 1994 WL 913930 (D. Del. Oct.
    14, 1994) ............................................................................................................................4

United States v. Alcan Aluminum, Inc., 25 F.3d 1174 (3d Cir. 1994) .................................1

United States v. State Street Bank and Trust Co., No. ADV. A-01-04605,
   2002 WL 417013 (Bankr. D. Del. Mar. 2, 2002)....................................................9, 10

Yong Wong Park v. Attorney General, 472 F.3d 66 (3d Cir. 2006)..................................15

## STATE CASES

Brandenburger & Davis, Inc. v. Estate of Lewis, 771 A.2d 984 (D.C.
   2001) ................................................................................................................8, 9

Crawford Central Sch. District v. Commonwealth, 888 A.2d 616 (Pa.
   2005) ................................................................................................................8, 9

Employers Insurance of Wausau v. Commonwealth, 581 Pa. 381 (2005) ..........................8

Moss v. Jones, 93 N.J. Super. 179 (App. Div. 1966)........................................................13

Weinberger v. Goldstein, 132 A. 659 (N.J. Eq. 1926)........................................................6

## STATUTES AND ACTS

11 U.S.C. § 1109(b) ............................................................................................................9

Fed. R. Civ. P. 24................................................................................................................9, 10

U.C.C. §§ 9-203(b), 9-310(a), 9-322 (2005)........................................................................7

## TREATISES AND ARTICLES

3 E. Allan Farnsworth, Farnsworth on Contracts § 11.3 (1990)..........................................5

Restatement (Second) of Contracts §§ 317, 324 (1981) ......................................................5

35A C.J.S. Federal Civil Procedure § 196 (2007) ..............................................................3

Am. Jr. 2d Election of Remedies § 21 ................................................................................11

Daniel Wise, Bankruptcy Arbitration Award is Overturned, 36 N.Y.L.J., Feb. 23,
   2005)..............................................................................................................17

## I.    **INTRODUCTION**

The arguments set forth in the SWE&C Liquidating Trustee's ("Trustee")

Opposition are premised on a complete disregard of the undisputed facts of this case,

black letter law, the procedural posture of the Recovery Action[1], and the Bankruptcy

Court's Order approving the settlement between SAMBA and Debtors.  Moreover, the

Trustee glosses over the Bankruptcy Court's failure to address the requisite elements of

intervention and focuses on the Court's consideration of the merits of SAMBA's claim—

the very reason for this appeal—as support for the Trustee's untenable position.

As set forth below, SAMBA satisfied the conditions for intervention as a matter of

right under Rule 24(a)(2) and the denial of intervention constitutes reversible error.  In

addition, SAMBA has also met the conditions for permissible intervention under Rule

24(b)(2) and the denial of intervention constitutes an abuse of discretion.  As such, this

Court should reverse the Bankruptcy Court's decision denying SAMBA's Motion to

Intervene.  See United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1179 (3d Cir. 1994)

(district court will be reversed if district court "applied an improper legal standard or

reached a decision we are confident is incorrect")(internal quotations omitted).

First, the Assignment of Contract Proceeds is *prima facie* valid.  Saudi Aramco

acknowledged its validity and neither the Trustee nor Saudi Aramco has ever disputed the

enforceability or validity of the Assignment. See Saudi Aramco Acknowledgement and

Confirmation (Tab 15, A01337, A01341); see generally Debtors' Answering Brief [D.I.

23] (Tab 17, A01437-52); Trustee's Objection to SAMBA's Motion to Intervene [D.I. 41]

(Tab 36, A01563-1618); Trustee's Opp'n [D.I. 10].  Notably absent from the Trustee's

---

[1]  All capitalized terms not otherwise defined herein have the meaning ascribed to them in SAMBA's Opening Brief.

Opposition is *any* discussion or argument concerning the actual validity of the Assignment. See generally Trustee's Opp'n [D.I. 10]. The allegations set forth in SAMBA's proposed Complaint in Intervention and the Declaration of S. Ali, filed herewith, are sufficient to establish an interest that requires protection and justifies intervention. See infra § II(A)-(D).

Second, SAMBA has standing to enforce its rights in the Saudi Aramco proceeding. It is black letter law that the assignment of a contractual right confers privity of contract to the assignee—in the same manner that the assignor, as an original party to the contract, held privity. Thus, as an assignee, SAMBA is in privity of contract with Saudi Aramco and has the requisite standing to intervene in the Saudi Aramco proceeding. See infra § II(C)-(D).

Third, the election of remedies doctrine is inapplicable to the facts of this case. Although the District Court granted SAMBA's Motion for Summary Judgment in the Recovery Action, the judgment remains uncertain pending Shaw's appeal to the Third Circuit Court of Appeals. See Notice of Appeal[2] [No. 04-834-SLR, D.I. 24] (Tab 172, A06705-36). Accordingly, the debt owed by BS&W to SAMBA remains outstanding. In the absence of *satisfaction* through a *final adjudication*, the election of remedies doctrine is inapplicable. See infra § II (E)(1)-(2).

Fourth, the Settlement Agreement between SAMBA and Debtors in Bankruptcy Case No. 00-02142 specifically states that the Settlement Agreement has no effect "on any claims or causes of action asserted by . . . SAMBA in the action commenced by the

---

[2] Shaw filed a second notice of appeal on March 14, 2007. [No. 04-834-SLR, D.I. 57] The United States Court of Appeals for the Third Circuit consolidated the two appeals (Nos. 05-2717 and 07-1772) for all purposes.

Debtors against Saudi Arabian Oil Company (Adversary Proceeding No. 02-03963-PJW),

the Motion by SAMBA to Intervene therein, or SAMBA's proposed Complaint in

Intervention." Order Approving Settlement with Saudi American Bank (emphasis added)

[No. 00-2142, D.I. 4289] (Tab 181, A07201-59). Thus, the Trustee's contention that

SAMBA somehow "surrendered its rights" is without merit. Trustee's Opp'n at 17-18

[D.I. 10]; see also infra § II(G).

Fifth, SAMBA is not seeking the disqualification of Bankruptcy Judge Walsh

based on the adverse ruling on SAMBA's Motion to Intervene. Judge Walsh's comments

and conduct call into question his impartiality and warrant disqualification. See infra

§ II(H).

## II.    ARGUMENT

The Bankruptcy Court's stated basis for its denial of SAMBA's Motion to

Intervene was the Court's perception that there were "discrepancies" in the language

employed by the Assignment documents. See Tr. at 6-7 [D.I. 54] (Tab 47, A1801-02);

see also Trustee's Opp'n at 1. The proper question on a petition to intervene, however, is

whether a well-pleaded defense or claim is asserted. Otis Elevator Co. v. Standard

Construction Co., 10 F.R.D. 404, 406 (D. Minn. 1950) (finding allegation of agency

sufficient to warrant intervention). "Its merits are not to be determined. The defense or

claim is assumed to be true on motion to intervene, at least in the absence of sham,

frivolity, and other similar objections." Id. "The Court must be liberal in determining

whether a valid cause of action or defense has been pleaded, at least as liberal as it is on

dismissal of motions. This is required, as the court's ruling determines whether the claim

or defense can be litigated and justice sought." 35A C.J.S. Federal Civil Procedure § 196

(2007). Thus, pursuant to Rule 24 and the principals governing intervention, the

3

Bankruptcy Court was required to accept all of SAMBA's well-pleaded facts in the proposed Complaint in Intervention as true and should have drawn all reasonable inferences from those facts in the light most favorable to SAMBA. See Seidel v. Lee, No. CIV. A. 93-494-JJF, 1994 WL 913930, at *1 (D. Del. Oct. 14, 1994) (setting forth motion to dismiss standard). The Bankruptcy Court, however, did the exact opposite of what is prescribed by the rules and controlling precedent—the Court, *sua sponte*, and without notice, raised purported issues of fact concerning the operative documents. The Bankruptcy Court's unilateral inquiry does not comport with the Court's obligations to determine with "reasonable certainty" whether SAMBA would be "entitled to relief under any set of facts that could be proven." Otis Elevator Co., 10 F.R.D. at 407. As set forth below, the undisputed facts, when viewed in the light most favorable to SAMBA, establish a sufficient and direct interest in the In-Kingdom Contract to support the grant of intervention.

### A.   The Well-Pleaded Allegations in SAMBA's Complaint Establish *Prima Facie* Evidence of a Valid Assignment of Contract Proceeds

In SAMBA's Complaint in Intervention and Opening Brief in Support, SAMBA pleaded with specificity material facts sufficient to establish *prima facie* evidence of an assignment. [D.I. 19, 20] (Tab, 15-16, A 01309-1436). Specifically, SAMBA asserted the following material allegations: (1) the existence of an assignable contractual right, i.e. contract proceeds (Compl. ¶¶ 29-31, 37-38) [D.I. 19] (Tab 15, A1321, 1323); (2) BS&W's manifestation of intent to make a present transfer of the right to the contract proceeds (Id. ¶¶ 29-38) (Id., A1321-23); (3) SAMBA's acceptance of BS&W's assignment of contract proceeds (Id. ¶¶ 29-39) (Id.); (4) the existence of consideration, i.e. security for a debt or obligation (Id. ¶¶ 30-37) (Id.); and (5) the assent of Saudi

4

Aramco to the assignment (Id. ¶¶ 38-40) (Id., A1323). See Restatement (Second) of Contracts §§ 317, 324 (1981); 3 E. Allan Farnsworth, Farnsworth on Contracts § 11.3 (1990). Here, the Trustee has neither pleaded nor set forth uncontroverted material facts to defeat SAMBA's *prima facie* showing that SAMBA holds a valid, enforceable and irrevocable Assignment from BS&W.

The validity of the Assignment has never been at issue—neither the Debtors, the Trustee nor Saudi Aramco has ever contested the validity or enforceability of the Assignment in connection with this litigation or otherwise. See generally Debtors' Answering Brief [D.I. 23] (Tab 17, A01437-52); Trustee's Objection to SAMBA's Motion to Intervene [D.I. 41] (Tab 36, A01563-1618); Trustee's Opp'n [D.I. 10]; Tr. [D.I. 54] (Tab 47, A01796-1825). Moreover, neither the Debtors, the Trustee nor Saudi Aramco has ever contested SAMBA's security interest in the contract at issue in this proceeding, namely the In-Kingdom Contract.[3] In fact, in its Opposition, the Trustee does not argue that the Assignment is invalid and/or unenforceable. Rather, the Trustee focuses on the fact that the Bankruptcy Court "note[d] serious, irreconcilable discrepancies in SAMBA's claims" and simply restates the Bankruptcy Court's conclusions as to the validity of SAMBA's assignment. See Trustee's Opp'n at 6 [D.I. 10]. These unsupported conclusory observations, however, do not defeat the well-pleaded allegations in SAMBA's Complaint that establish, *prima facie*, a valid Assignment and the right to intervene in the Saudi Aramco proceeding. See Cent. States, Se. and Sw. Areas Health and Welfare Fund v. Old Sec. Life Ins. Co., 600 F.2d 671, 680

---

[3] In the Trustee's Opposition, the Trustee concedes that the In-Kingdom contract is the contract *partially* underlying the adversary proceeding brought by debtors-in-possession. Opp'n at 7 n3.

(7th Cir. 1979) (finding material allegations sufficient to warrant grant of intervention as of right).

**B.     Questions of Fact Concerning the Validity of SAMBA's Assignment Should Not Impact SAMBA's Right to Intervene**

Both the Court and the Trustee (for the first time in its Opposition), put great emphasis on the fact that the Assignment is dated four months after the Specific Payment Instruction Letter, as providing some indication that the Assignment is not valid. See Trustee's Opp'n at 7; Tr. 6-7 [D.I. 54] (Tab 47, A1801-02). Any perceived discrepancy between the effective dates of the Assignment documents or the language employed therein, however, does not render the Assignment invalid. At best, it raises a factual dispute that must be resolved *after* SAMBA is allowed to intervene in the case. It is not the function of the court to resolve questions of fact on a motion to intervene. See Weinberger v. Goldstein, 132 A. 659, 661 (N.J. Eq. 1926) (allowing mechanics' lien claimants to join suit). "All that the court is required to do—all that it should do—is to satisfy itself that the petitioners have a bona fide claim of or to such an interest as entitles them to be made parties to the suit[.]" Id. 661.

As discussed in SAMBA's Opening Brief, the uncontested evidence shows that by letter dated September 21, 1994, BS&W requested and authorized Saudi Aramco to pay SAMBA for credit to BS&W's account any and all compensation due from Saudi Aramco under the In-Kingdom Contract ("Specific Payment Instruction Letter"). See Specific Payment Instruction Letter (Tab 15, A01334-35). On or about November 13, 1994, Saudi Aramco executed an Acknowledgment of Assignment to BS&W, attaching BS&W's September 21, 1994 Specific Payment Instruction Letter. See Acknowledgement of Assignment (Id., A01337). Saudi Aramco sent a copy of the

6

Acknowledgment of Assignment to SAMBA. <u>See</u> <u>id.</u> Then, on or about January 22,

1995, BS&W executed and delivered to SAMBA an Assignment of Contract Proceeds.

<u>See</u> Assignment (<u>Id.</u>, A01330-32). In addition, by letter dated June 2, 2002, Saudi

Aramco confirmed to SAMBA that both the Assignment and the authorization contained

in the Specific Payment Instruction Letter are irrevocable and continue to be in full force

and effect. <u>See</u> 2002 Confirmation Letter (<u>Id.</u>, A01341).

As explained in the Declaration of Sheheryar Ali, filed herewith, SAMBA

officials routinely advise prospective borrowers, such as BS&W, of the security

arrangements that SAMBA requires to be in place prior to the bank's grant of a requested

credit facility.[4] <u>See</u> Decl. S. Ali ¶ 4. Indeed, with respect to the credit facility granted to

BS&W, SAMBA required two forms of security — first, guarantees of the two owners of

BS&W, and second, an acknowledged assignment of the proceeds under the construction

contract between BS&W and Saudi Aramco, Contract No. 65004/00 ("In-Kingdom

Contract"). <u>See</u> <u>id.</u> ¶ 5. In its dealings with banks, including SAMBA, in and around

1994-1995, Saudi Aramco required any instructions concerning the routing of payments

under assigned contracts to be in place prior to the issuance of the first invoice under a

given contract. <u>See</u> <u>id.</u> ¶ 6. Accordingly, SAMBA took the necessary actions to make

certain that Saudi Aramco had received and acknowledged specific instructions regarding

the payment of invoices related to the In-Kingdom Contract to SAMBA even before

BS&W executed the Assignment. <u>See</u> <u>id.</u> ¶ 6. Then, once Saudi Aramco's

---

[4] This is analogous to the practice of lenders in this country of having their borrowers authorize the filing of UCC financing statements prior to the actual closing of the financing so that the lender's security interest is perfected immediately upon execution of the security agreement and the lender's providing value to the borrower. <u>See</u> U.C.C. §§ 9-203(b), 9-310(a), 9-322 cmt. n.4 (2005).

acknowledgement of the Assignment was in place, BS&W formally assigned the legal

rights over the funds by executing the Assignment in SAMBA's favor. See id. ¶ 7. As

evidenced by the letter dated June 2, 2002, from Saudi Aramco to SAMBA, the

Assignment and the authorization contained in the Specific Payment Instruction Letter

are irrevocable and continue to be in full force and effect. See id. ¶ 8.

### C.    SAMBA has Standing to Enforce its Rights Under the In-Kingdom Contract

Throughout his Opposition, the Trustee repeatedly raises the issue of "privity" in

an effort to obscure SAMBA's lawful right to intervene in the Saudi Aramco proceeding.[5]

The Trustee's arguments are fundamentally flawed and ignore black letter law governing

assignments—the assignment of a contractual right confers privity of contract to the

assignee. See Crawford Cent. Sch. Dist. v. Commonwealth, 888 A.2d 616, 620 (Pa.

2005) (stating "privity is not an issue in case involving assignment claims"); Employers

Ins. of Wausau v. Commonwealth, 581 Pa. 381, 389-90 (2005); Brandenburger & Davis,

Inc. v. Estate of Lewis, 771 A.2d 984, 988 (D.C. 2001) (discussing long recognized view

that assignee may pursue legal action predicated on assignment). The rights of an

assignee are generally characterized by the oft-quoted phrase: "an assignee stands in the

shoes of the assignor." Crawford Cent. Sch. Dist., 888 A.2d at 620. The assignment of a

---

[5] The Trustee argues, in part, that SAMBA lacks privity to the contract at issue, and
therefore its interests in the contract are not sufficiently direct to support intervention.
See Trustee's Opp'n at 13-15. In fact, the Trustee is the party whose standing in the
Saudi Aramco proceeding is tenuous. In the Saudi Aramco Proceeding, the Trustee and
the SWINC Plan Administrator, as successors in interest to the debtors in possession, are
bringing claims on behalf of Stone & Webster Engineering Corporation ("SWEC") and
SWINC. Neither SWEC nor SWINC has an agreement with Saudi Aramco and neither
was a party to the underlying contract. In contrast, SAMBA is seeking to enforce its
contractual right to the proceeds of the In-Kingdom Contract, which was expressly
acknowledged and agreed to by both parties to the contract—Saudi Aramco and BS&W.

contractual right, therefore, confers privity of contract to the assignee in the same manner
that the assignor, as an original party to the contract, held privity.  See id.

Here, BS&W's Assignment to SAMBA of "all proceeds of the Contract . . . which
shall include proceeds of claims arising out of the Contract" gives SAMBA the
unconditional right to intervene in this proceeding and seek the declaratory and injunctive
relief set forth in its Complaint in Intervention.  As the assignee, SAMBA has the right to
pursue legal action predicated on its rights arising from the Assignment.  See
Brandenburger & Davis, Inc., 771 A.2d at 988.  The Assignment gives SAMBA both
substantive and legally protectable rights in the In-Kingdom Contract, and to the extent
standing is required, confers sufficient standing to support intervention under Rule
24(a)(1), 24(a)(2), and 24(b).[6]

**D.    SAMBA has a Sufficient and Direct Interest in the In-Kingdom
       Contract to Support Intervention as a Matter of Right**

As an assignee, SAMBA has a sufficient and direct interest in the In-Kingdom
Contract to support intervention as a matter of right.  Intervention as a matter of right is
justified:

---

[6] Similarly, the Trustee's argument that SAMBA lacks standing to assert an
unconditional statutory right to intervention under Fed. R. Civ. P. 24(a)(1) has no merit.
See 11 U.S.C. § 1109(b); United States v. State Street Bank and Trust Co., No. ADV. A-
01-04605, 2002 WL 417013, at *2 (Bankr. D. Del. Mar. 2, 2002) (ruling that all parties
listed in section 1109 have an absolute right to intervene).  Moreover, despite the
Trustee's statements to the contrary, whether Article III standing is a prerequisite to
intervention is a question open to dispute.  See Evans v. Buchanan, 130 F.R.D. 306, 310
n.5 (D. Del. 1990).  Neither the United States Supreme Court nor the Third Circuit has
addressed the issue.  See id.  The precedent in the District of Delaware, in fact, suggests
that Article III standing does not control whether a party may intervene.  See id.  Even
assuming that Article III standing is a prerequisite to intervention – a position which
neither the Third Circuit nor the District of Delaware has recognized – SAMBA has the
requisite standing as an assignee and/or creditor, to enforce its rights in the In-Kingdom
contract at issue in the Saudi Aramco proceeding.  See id. at 311 n.5.

> [W]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest unless the applicant's interest, is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). The interest of an assignee in privity of contract is a legally protectable, substantive, and direct interest in that contract. See e.g., Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d 361 (3d Cir. 1995) (finding beneficiaries' property interest in trust res sufficient to warrant intervention); United States v. State Street Bank and Trust Co., No. ADV. A-01-04605, 2002 WL 417013, at *2 (Bankr. D. Del. Mar. 4, 2002) (finding intervenor has interest in opposing contentions by creditors seeking to undermine intervenor's priority position); Dev. Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 162 (3d Cir. 1995) (finding tangible threat to interest warrants intervention). Therefore, contrary to the Trustee's arguments, SAMBA has a sufficient interest in the In-Kingdom contract to justify intervention in the Saudi Aramco Proceeding.

### E.    The Election of Remedies Doctrine Does not Apply to SAMBA'S Claims

As discussed in SAMBA's Opening Brief, the doctrine of election of remedies is inapplicable to the facts of this case.[7] Despite the Trustee's arguments to the contrary,

---

[7] In its Opposition, the Trustee takes the puzzling position that "SAMBA's only claim to privity with SWEC and the Contract arguably at issue . . . was the SWEC Guaranty, and SAMBA elected to pursue that claim to judgment against Shaw. Therefore, the Trustee argues, "SAMBA has surrendered its rights under the guaranty as asserted against SWEC," and "SAMBA cannot use the guaranty as the bootstrap to intervene." Trustee's Opp'n at 16, 17 [D.I. 10]. This argument is premised on an entirely incorrect assumption—SAMBA is seeking to intervene in this action on the basis of the Assignment of Contract Proceeds, not the Guaranty. Moreover, as discussed above, the Assignment, not the Guaranty, confers privity on SAMBA. Lastly, SAMBA's pursuit of

the Third Circuit has unmistakeably held that the doctrine of election of remedies turns

on the satisfaction, through a final adjudication, of a party's first claim for recovery. See

Abdallah v. Abdallah, 359 F.2d 170, 175 (3d Cir. 1966); Commonwealth v. Cianfrani,

600 F. Supp. 1364, 1368 (E.D. Pa. 1985) (refusing to apply the election of remedies

doctrine because the earlier remedy did "not constitute satisfaction of a remedy such as to

preclude further recovery"). In fact, the Third Circuit has specifically repudiated the

Trustee's position. As the Court explained:

> When a certain state of facts under the law entitles a party
> to alternative remedies, both founded upon the identical
> state of facts, these remedies are not considered
> inconsistent remedies, though they may not be able to
> "stand together"; the enforcement of the one remedy being
> a *satisfaction* of the party's claim. In such case, the
> invocation of the one remedy is not an election which will
> bar the other, unless the suit upon the remedy first invoked
> shall reach the stage of *final adjudication*, or unless by the
> invocation of the remedy first sought to be enforced the
> plaintiff shall have gained an advantage thereby or caused
> detriment or change of situation to the other.

Abdallah, 359 F.2d at 175 (internal quotation marks and citation omitted) (emphasis

added); see also 25 Am. Jr. 2d Election of Remedies § 21 ("If the remedies are alternative

and concurrent, there is no bar until satisfaction has been obtained.").

### 1.    SAMBA has Not Taken Inconsistent Positions Concerning its Security Interest in the In-Kingdom Contract

Through the Recovery Action and its Complaint in Intervention, SAMBA is

pursuing two independent sources for payment of the '98 Loan that it procured from

BS&W. The facts and legal claims underlying SAMBA's two remedies are entirely

---

its claim against Shaw does not preclude SAMBA's intervention in the Saudi Aramco
proceeding unless and until SAMBA collects the full amount due under the '98 Loan.

consistent. Remedies are inconsistent "if the assertion of one involves the negation or repudiation of the other, as where one of them admits a state of facts and the other denies the same facts or where the one is founded upon the affirmance, and the other upon the disaffirmance, of a voidable transaction." In re Adrian Research and Chemical Co., 269 F.2d 734, 736 (3d Cir. 1959). In the Recovery Action, SAMBA is seeking to collect the '98 loan, or a portion thereof, by seeking to enforce the Guaranty and Payment Letter against Shaw. In the Saudi Aramco action, SAMBA is seeking to pursue a distinct and independent source for payment of the '98 Loan—the Assignment. These remedies are consistent in both kind and purpose, as each has the objective of reducing the debt owed by BS&W. See id. at 737 ("remedies are consistent both in kind and purpose for each results in the application to the debt of the chattels covered by the security agreement and each has as its objective the reduction of the debt").

SAMBA bargained for two sources of security to ensure its recovery of the entire amount of BS&W's loan. Now, SAMBA is merely seeking to protect its security interest through intervention in the present action. These remedies, and the facts underlying them, are hardly inconsistent or repugnant. See id. ("absence of inconsistency is highlighted by . . . [the fact] that petitioner could have proceeded first against the collateral, and if a deficiency remained, proceeded by execution and levy against any other property of the debtor"). SAMBA is not seeking a "double recovery," but is merely seeking to ensure that it can recover the entire amount of the '98 Loan through its two separate forms of security. See id. (stating petitioner's recourse to two funds in no way impairs right to proceed against either or both).

12

2.   <u>**Satisfaction has Not Been Obtained in the Recovery Action,**</u>
     <u>**and therefore the Election of Remedies Doctrine is**</u>
     <u>**Inapplicable**</u>

Although the District Court granted SAMBA's Motion for Summary Judgment in

the Recovery Action, the judgment remains uncertain pending Shaw's appeal to the Third

Circuit. <u>See</u> Notice of Appeal [No. 04-834-SLR, D.I. 24] (Tab 172, A06705-36).

SAMBA, therefore, has not (and in fact may not) recover any portion of the outstanding

loan through the Guaranty at issue in the Recovery Action.[8]   Accordingly, the judgment is

not final and BS&W's '98 Loan remains outstanding.

In the absence of satisfaction through a final adjudication, the election of

remedies doctrine is inapplicable. <u>See</u> <u>Abdallah</u>, 359 F.2d at 176; <u>Cianfrani</u>, 600 F. Supp.

at 1368.   "'There may be several judgments against different persons for the same

obligation or liability, so long as there is only one satisfaction or recovery.'" <u>See</u>

<u>Healthcare Servs. Group, Inc. v. Royal Healthcare of Middlesex, LLC</u>, 276 F. Supp. 2d

255, 261 (D.N.J. 2003) (quoting <u>Moss v. Jones</u>, 93 N.J. Super. 179 (App. Div. 1966)).

Furthermore, in the absence of satisfaction there is no threat of a double recovery and,

---

[8]  The Trustee asserts that SAMBA "*declined to file a new intervention motion* to advise
the Bankruptcy Court of a significant development in the case: this Court's ruling that . . .
Shaw . . . had assumed and was liable for a guaranty from SWEC to SAMBA that assured
payment on the debt for which SAMBA sought intervention. . . .  Though the debtors-in-
possession had filed an Answering Brief in Opposition to SAMBA's motion to intervene
. . . *the Trust filed an opposition to advise the Bankruptcy Court of the judgment against
Shaw.*" Trustee's Opp'n at 4-5 [D.I. 10] (emphasis added).  These statements are patently
untrue and serve to mislead the Court.  First, SAMBA did not "decline" to do anything.
As discussed above, the case law is clear – judgment in the Recovery Action did not
impact SAMBA's right to pursue intervention in the Saudi Aramco Proceeding
(especially given Shaw's prompt filing of a notice of appeal).  As such, there were no
"significant developments" that SAMBA needed to bring to the Bankruptcy Court's
attention.  Moreover, the Trustee filed its Opposition on April 18, 2006, after learning
that SAMBA's Motion to Intervene was set for oral argument, not in response to the
District Court's May 4, 2005 Order granting SAMBA summary judgment. [D.I. 41; No.
04-834-SLR D.I. 12].

thus, the public policy justifying imposition of the doctrine is lacking. See id. Where, as here, satisfaction has not been obtained, the election of remedies doctrine is inapplicable and does not, in any way, affect SAMBA's right to intervene in the Saudi Aramco proceeding.

### F.    Judicial Estoppel is Inapplicable to the Facts of this Case

The Trustee has failed to set forth any valid basis in law or fact to justify the imposition of judicial estoppel to bar SAMBA from intervening in the Saudi Aramco proceeding. Judicial estoppel is a harsh doctrine that "should only be applied to avoid a miscarriage of justice." Montrose Med. Group Participating Sav. Plan v. Bulger, 243 F.3d 773, 784 (3d Cir. 2001). Judicial estoppel prohibits a party from taking inconsistent positions before one or more courts in order to obtain an unfair advantage over the party's adversary. See, e.g, Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp., 337 F.3d 314, 319 (3d Cir. 2003); In re Chambers Dev. Co., Inc., 148 F.3d 214, 229 (3d Cir. 1998) (describing judicial estoppel as "a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding"). To justify the imposition of judicial estoppel, the Third Circuit requires proof of the following elements:

> First, the party to be estopped must have taken two positions that are *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted unless the party *changed his or her position "in bad faith* – i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct.

14

Krystal Cadillac, 337 F.3d at 319 (quoting Montrose Med. Group, 243 F.3d at 779-80) (emphasis in original). Furthermore, "bad faith" requires that the litigant "behaved in a manner that is somehow culpable" and that "he or she has engaged in culpable behavior *vis-à-vis* the court." Montrose Med. Group, 243 F.3d at 781. All three of the above-listed necessary elements are absent from this case, and therefore, there is no basis for the Court to impose the "extraordinary" doctrine of judicial estoppel. See id. at 784.

First, SAMBA has not taken "irreconcilably inconsistent" positions with respect to the current action and the Recovery Action against Shaw. As discussed above, SAMBA merely seeks to obtain a full recovery of the '98 loan and is pursuing its two different but entirely consistent sources of payment. In other words, SAMBA is merely asserting an "alternative, yet compatible" position (1) that Saudi Aramco, if it owes any money under the In-Kingdom Contract, is obligated to satisfy BS&W's debt, or some portion thereof, under the Assignment of Contract Proceeds; and (2) that Shaw is obligated to satisfy the debt, or some portion thereof, under the Guaranty. See Yong Wong Park v. Attorney Gen., 472 F.3d 66, 73 (3d Cir. 2006). These theories of recovery are based on a series of factual and legal assertions that are entirely consistent. Through both theories, SAMBA seeks to protect its secured rights to repayment of the full amount of the '98 loan.

Despite the Trustee's unsupported argument to the contrary, SAMBA does not stand to gain an unfair advantage in pursuing the two remedies at issue.[9] SAMBA is not "playing fast and loose" with the courts in order to obtain a double recovery. It seeks

---

[9] Again, contrary to Respondent's allegations, SAMBA has not yet recovered any portion of the loan from Shaw through the Recovery Action. Shaw is currently appealing the judgment in the Recovery Action and, therefore, SAMBA's right to any recovery/satisfaction of the loan amount remains unsettled.

15

only to recover the full amount of the loan obligation to which it is entitled both under the

Guaranty and the Assignment. Similarly, SAMBA has not acted in bad faith simply by

asserting its contractual rights to repayment. Vigorous pursuit of one's legal claims can

hardly be considered to constitute bad faith or an intentional attempt to gain an unfair

advantage by committing a fraud on the court.

**G.     The Settlement Agreement Entered Into Between SAMBA and
         Debtors Does Not Affect SAMBA's Right to Intervene in the Saudi
         Aramco Proceeding**

The Settlement Agreement entered into between Debtors and SAMBA has <u>no</u>

effect on the claims and causes of action set forth in SAMBA's Motion to Intervene or

SAMBA's proposed Complaint in Intervention. Significantly, the Bankruptcy Court's

Order approving the Settlement Agreement between Debtors and SAMBA specifically

states:

> *Neither this Order nor the Settlement Agreement has any
> effect . . . on any claims or causes of action asserted by*
> either the Debtors or *SAMBA in the action commenced by
> the Debtors against Saudi Arabian Oil Company*
> (Adversary Proceeding No. 02-03963-PJW), *the Motion by
> SAMBA to Intervene therein, or SAMBA's proposed
> Complaint in Intervention,* relating to a certain contract
> between BSW and Saudi Arabian Oil Company (Contract
> No. 65004/00) and a related Assignment of Contract
> Proceeds from BSW to SAMBA.

Order Approving Settlement with Saudi American Bank (emphasis added) [No. 00-2142,

D.I. 4289] (Tab 181, A07201-59). Despite this clear, unequivocal language (and without

addressing it), the Trustee argues that "SAMBA's only argument for privity to SWEC was

SWEC's guaranty – an argument that SAMBA waived . . . when it settled the guaranty

claim . . . , thereby electing its remedy." Trustee's Opp'n at 11, 17 [D.I. 10]. The plain

language of the Order effectively vitiates the Trustee's position. There is absolutely

16

nothing in the Settlement Agreement that bars or limits SAMBA's right to collect the

proceeds of the In-Kingdom Contract under the Assignment until BS&W's debt to

SAMBA is paid in full.

**H.    The Bankruptcy Judge's Statements Demonstrate Extrajudicial Bias**

As with its other arguments, the Trustee's tortured mischaracterization of

SAMBA's judicial bias argument is nothing more than an attempt to distract the Court

from the validity of SAMBA's claim for disqualification.[10]  SAMBA seeks

disqualification based not on unfavorable rulings, as the Trustee asserts, but on evidence

of "deep-seated and unequivocal antagonism that would render fair judgment

impossible"—as demonstrated by the Judge's extrajudicial anti-Saudi bias in the hearing

on the motion to intervene.[11]  Liteky v. United States, 510 U.S. 540, 556 (1994).  The fact

---

[10]  In addition, in his Opposition, the Trustee downplays the significance and nature of
Mr. Conrad's adverse engagement, as well as the relevant course of events.  As set forth
in SAMBA's Opening Brief, Kirkpatrick & Lockhart Preston Gates Ellis LLP, formerly
known as Kirkpatrick & Lockhart Nicholson Graham LLP, ("K&L Gates") represented a
party seeking to disqualify Mr. Conrad as an arbitrator and vacate the arbitration award
issued by Mr. Conrad.  The Bankruptcy Court (S.D.N.Y.) disqualified Mr. Conrad and
vacated the arbitration award because Mr. Conrad's "actions both during the arbitration
and while the matter was under advisement" gave rise to an appearance of partiality.  See
In re First Quality Realty, LLC, No. 02-14758(PCB), 2006 WL 686868 (Bankr. S.D.N.Y.
Feb. 17, 2006).  This decision appeared as the cover story of the February 23, 2006 issue
of the New York Law Journal.  See Daniel Wise, Bankruptcy Arbitration Award is
Overturned, 36 N.Y.L.J., Feb. 23, 2006, at 1.

Moreover, Mr. Conrad himself notified SAMBA's counsel of this "potential" adverse
engagement.  By electronic mail, Mr. Conrad informed SAMBA's counsel: "I want to
disclose this to you in the event it may impair my position as a mediator in this matter.  I
do not believe it does, but I wanted to disclose it to you because it is your call."
(emphasis added).  Then, when SAMBA notified Mr. Conrad that it would be in the best
interest of the parties for Mr. Conrad to recuse himself from the mediation, he refused.
See Letter from D. Rosenfeld to F. Conrad dated May 10, 2005 (Tab 27, A1523-24).

[11]  Given that the facts giving rise to the basis for recusal occurred at the hearing on the
motion for intervention on April 25, 2006, SAMBA's request for disqualification is not
untimely.

that the statements displaying the judge's deep-seated antagonism were uttered in the

course of a judicial proceeding does not render them unbiased; extrajudicial bias includes

the judge's "purely personal feelings towards the parties and the case." Johnson v.

Trueblood, 629 F.2d 287, 291 (3d Cir. 1980). The Bankruptcy Judge's comments at the

hearing (upon which he based his cursory disposition of the motion) show that the Judge

denied SAMBA's motion to intervene based on his personal bias, and SAMBA is

therefore entitled to reassignment of the case upon remand.[12]

---

[12] As stated in SAMBA's Opening Brief, the Bankruptcy Judge's comments at the
hearing on SAMBA's Motion to Intervene reveal the appearance of prejudice against
SAMBA. For example, the following exchange took place:

> The Court: . . . I have serious doubts whether you have an
> assignment. But that –
>
> * * *
>
> The Court: Obviously, it involves Saudi Arabian law. And
> why don't you go to Saudi Arabia and resolve that issue?
>
> * * *
>
> The Court: That's your home Court.
>
> Mr. Rosenfeld: This Court has Jurisdiction.
>
> * * *
>
> The Court: Isn't Saudi Arabia your home Court?
>
> Mr. Rosenfeld: . . . I thought that we were equally welcome
> in this Court as we were in any other Court, Your Honor.
> I'm a bit surprised –
>
> The Court: But you're not welcome to muddy the water
> with Saudi Arabian law.
>
> * * *

## III.    **CONCLUSION**

For all of the foregoing reasons and those set forth in SAMBA's Opening Brief,

the Bankruptcy Court's Order denying SAMBA's Motion to Intervene should be reversed

and the reference with respect to Adversary Proceeding No. 02-03963-PJW should be

withdrawn, or, in the alternative, the case should be reassigned to another judge upon

remand.

Respectfully submitted,
SAUDI AMERICAN BANK,
By its attorneys,

Francis A. Monaco, Jr. (#2078)
Kevin Mangan (#3810)
Monzack & Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
(302) 656-8163

Of Counsel:
Daniel E. Rosenfeld
John C. Hutchins
Amy B. Abbott
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
Dated: March 23, 2007            (617) 261-3100

---

The Court: . . . I would again suggest to you that I don't
think it's appropriate for this Court to decide Arabian
commercial law issues.

April 25, 2006 Tr. at 19-21, 24 [D.I. 54] (Tab 47, A1814-16, 1819).

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| STONE & WEBSTER, INCORPORATED | ) | Case No. 00-02142-PJW |
| et al., | ) | Jointly Administered |
| | ) | |
| Debtors | ) | |
| | ) | |
| STONE & WEBSTER, INCORPORATED, | ) | |
| and STONE & WEBSTER ENGINEERING | ) | |
| CORPORATION, et al., | ) | |
| | ) | |
| Plaintiffs | ) | Civ. No. 06-399 (SLR) |
| | ) | |
| -against- | ) | |
| | ) | |
| SAUDI ARABIAN OIL COMPANY | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| SAUDI AMERICAN BANK | ) | |
| | ) | |
| Appellant/ Movant for Intervention | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

**I, Heidi E. Sasso, certify that I am not less than 18 years of age, and that service of the foregoing documents was made on March 23, 2007 upon:**

<u>**Via Hand Delivery and Electronic Mail**</u>
Adam G. Landis, Esquire
Kerri K Mumford, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, Delaware 19801

Document #: 59370

Dennis Anthony Meloro, Esquire
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
(302) 661-7000
Fax: (302) 661-7360
Email: melorod@gtlaw.com


**<u>Via US MAIL and Electronic Mail</u>**
Lorraine S. McGowen, Esquire
Orrick Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103


James Houpt, Esquire
Orrick Herrington & Sutcliffe LLP
400 Capital Mall, Ste. 3000
Sacramento, CA 95814


     Under penalty of perjury, I declare that the foregoing is true and correct.



<u>March 23, 2007_____</u>     ___/s/Heidi E. Sasso_____
Date                                    Heidi E. Sasso