# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STONE & WEBSTER, INC., *et al.*,[1] | Case No. 00-2142 (PJW) |
| Debtors. | Jointly Administered |
| | |
| SAUDI AMERICAN BANK | Civil No. 06-399-SLR |
| Appellant, | |
| - against – | |
| STONE & WEBSTER, INCORPORATED, STONE & WEBSTER ENGINEERING CORP., and SWE&C LIQUIDATING TRUST, | |
| Respondents. | |

**[CORRECTED] ANSWERING BRIEF OF THE SWE&C LIQUIDATING TRUSTEE
IN OPPOSITION TO SAUDI AMERICAN BANK'S
<u>MOTION FOR STAY PENDING APPEAL</u>**

---

[1] The Debtors are the Consolidated SWINC Estate and the Consolidated SWE&C Estate. As more particularly set forth in Article VII(B) of the Third Amended Joint Plan of the Debtors in Possession, the Official Committee of Unsecured Creditors, Federal Insurance Company, Maine Yankee Atomic Power Company, and the Official Committee of Equity Security Holders with Respect to (I) Stone & Webster, Incorporated and Certain of its Subsidiaries and Affiliates and (II) Stone & Webster Engineers and Constructors, Inc. and Certain of Its Subsidiaries ("Joint Plan"), certain debtor subsidiaries of Stone & Webster, Incorporated are merged into Stone & Webster, Incorporated, and their estates have been substantively consolidated to become the Consolidated SWINC Estate; and certain debtor subsidiaries of Stone & Webster Engineers and Constructors, Inc. are merged into Stone & Webster Engineers and Constructors, Inc., and their estates have been substantively consolidated to become the Consolidated SWE&C Estate.

# **TABLE OF CONTENTS**

Page

I. FACTUAL DISCUSSION ................................................................................................... 1

II. LEGAL DISCUSSION ................................................................................................... 4

A.  SAMBA's Motion For Stay Should Fail Because SAMBA Did Not Seek A Stay From The Bankruptcy Court, Or Explain Why SAMBA Did Not Do So. ............. 5

B.  SAMBA's Motion For Stay Should Fail Because The Mooting Of SAMBA's Appeal In The Absence Of A Stay Is Not Irreparable Injury. ............................... 6

C.  SAMBA's Motion For Stay Should Fail Because Of The High Likelihood Of Substantial Injury To Other Unsecured Creditors. ................................................ 7

D.  SAMBA's Motion For Stay Should Fail Because A Stay Would Confound The Bankruptcy Code's Protections And Harm The Public Interest.            9

III. CONCLUSION .............................................................................................................. 11

## TABLE OF AUTHORITIES

### CASES

Page

*Babco, Inc. v. Markusic (In re Babco, Inc.),*
    25 B.R. 325 (W.D. Pa. 1982) ..................................................................... 5, 9

*Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship (In re Family Kingdom, Inc.),*
    225 B.R. 65 (D.N.J. 1998).......................................................................... 5, 7

*In re 203 N. LaSalle St. P'ship,*
    190 B.R. 595 (N.D. Ill. 1995) ......................................................................... 6

*In re Adelphia Commc'ns,*
    333 B.R. 649 (S.D.N.Y. 2005) ....................................................................... 4

*In re Baldwin United Corp.,*
    45 B.R. 385 (Bankr. S.D. Ohio 1984).......................................................... 4, 7

*In re Baltic Assocs., L.P.,* No. 93-MC-303,
    1993 U.S. Dist. LEXIS 18359 (E.D. Pa. Dec. 29, 1993) .................................. 6

*In re Charter Co.,*
    72 B.R. 70 (Bankr. M.D. Fla. 1987) ............................................................ 6, 8

*In re Deep,*
    288 B.R. 27 (N.D.N.Y. 2003)......................................................................... 4

*In re Great Barrington Fair & Amusement, Inc.,*
    53 B.R. 237 (Bankr. D. Mass. 1985) ............................................................... 7

*In re Mader,*
    100 B.R. 989 (D. Ill. 1989)............................................................................ 4

*In re Smith,*
    34 B.R. 144 (Bankr. D. Vt. 1983)................................................................... 9

*In re Smoldt,*
    68 B.R. 533 (Bankr. N.D. Iowa 1986) .......................................................... 10

*In re Trans World Airlines, Inc.,* No. 01-0056,
    2001 Bankr. LEXIS 722 (Bankr. D. Del. March 16, 2001) ............................... 4

*In re Tulane Hotel Investors Ltd. P'Ship,*
    68 B.R. 145 (E.D. La. 1986).......................................................................... 8, 9

*In re Wilson,*
    53 B.R. 123 (D. Mont. 1985)........................................................................ 4, 6

*Jarboe v. Yukon Nat'l Bank (In re Porter),*
    54 B.R. 81 (Bankr. N.D. Okla. 1985) .......................................................... 4, 9

## TABLE OF AUTHORITIES

### CASES
#### (Contd.)

Page

*Official Comm. of Unsecured Creditors v. Columbia Gas Sys, Inc.*
    *(In re Columbia Gas Sys., Inc.)*, No. 92-127-SLR,
    1992 U.S. Dist. LEXIS 3253 (D. Del. March 10, 1992)................................................. 8-9

*Ohanian v. Irwin (In re Irwin)*,
    338 B.R. 839 (E.D. Cal. 2006) ...............................................................................4, 6, 7

*Pavy v. Ardoin (In re Norman)*,
    74 B.R. 7 (Bankr. W.D. La. 1986)................................................................................... 8

*Zahn Farms v. KeyBank of New York*,
    206 B.R. 643 (B.A.P. 2d Cir. 1997)................................................................................. 5

### STATUTES, RULES

11 U.S.C. § 506 ............................................................................................................... 10

Fed. R. Bankr. P. 8005...................................................................................................... 5, 8

Fed. R. Evid. 408.............................................................................................................. 8

The SWE&C Liquidating Trustee ("Trustee"), on behalf of the SWE&C Liquidating Trust ("Trust"), as successor-in-interest to plaintiff Stone & Webster Engineering Corporation ("SWEC"), submits this [corrected] answering brief to Saudi American Bank's Motion For Stay Pending Appeal ("Motion To Stay"). In opposition thereto, the Trust states as follows:

## I. FACTUAL DISCUSSION

Nowhere is the lack of clarity in Saudi American Bank's theories more evident than in its Motion For Stay. Saudi American Bank ("SAMBA") settled any claims against SWEC for a $1 million cash payment and a $2.5 million *unsecured* claim against the SWE&C Trust.[2] SAMBA cannot argue now that it has a secured claim that it did not bargain for, give notice of, or support with any evidence. And SAMBA cannot argue that it has any cause of action against SWEC's successor, the SWE&C Trust, because SAMBA released those claims.[3]

Instead, SAMBA now appears to allege that it has a cause of action against Saudi Arabian Oil Company ("Aramco"), *should Aramco pay the SWE&C Trust* under any settlement between the SWE&C Trust and Aramco – despite SAMBA's failure to submit any document showing that it has a binding agreement with Aramco or SWEC to pay any settlement proceeds to SAMBA. As discussed more fully in the Respondent's Brief – and as the Bankruptcy Court found – SAMBA has produced nothing more than a "Specific Payment Instruction Letter" by Bugshan S&W Company, Ltd. ("BS&W") – not SWEC – and an acknowledgment by Aramco, to deposit payments made pursuant to invoice from BS&W in a specific SAMBA branch.[4]

---

[2] Saudi American Bank's Revised Record On Appeal ("RROA"), Tab 37, A1628, ¶¶ 1, 2.

[3] *Id.*, A1628-1629, ¶ 5.

[4] Brief Of Respondent SWE&C Liquidating Trustee In Opposition To Saudi American Bank's Appeal Of The Bankruptcy Court's Denial Of Saudi American Bank's Motion To Intervene, March 2, 2007 (D.I. #10), at 6-8.

Significantly, SAMBA remains silent on its failures (1) to provide the "Assignment of Contract Proceeds" that it allegedly required of BS&W as a condition to loaning money, (2) to explain how any such assignment would affect SWEC's (rather than BS&W's) right to recover from Aramco; or (3) to show a right of action against Aramco based on an "acknowledgment" that lacks any factual evidence or legal authority that the acknowledgment is a binding and enforceable agreement between SAMBA and Aramco. Therefore, SAMBA cannot show the substantial likelihood of success it needs to justify a stay.[5]

But if SAMBA has a right of action against Aramco despite the lack of any factual or legal support for it, SAMBA has every right to vindicate that right in Saudi Arabia – its home turf. By its silence when challenged by the Bankruptcy Court,[6] and by its failure to refute the point in any of its briefing in this Court, SAMBA has conceded that it could seek relief in Saudi Arabia. Therefore, SAMBA lacks the necessary irreparable injury to support a stay.

---

[5] In fact, even SAMBA's Motion For Stay continues to concede that its Complaint In Intervention is facially inadequate. SAMBA tacitly argues that it states a claim only when accompanied by the conclusory declaration of a SAMBA official – a declaration that SAMBA did not provide to the Bankruptcy Court, and filed without leave in this Court along with its Reply Brief:

> As more fully discussed in SAMBA's Opening Brief in Support of its Appeal of the Bankruptcy Court's Denial of SAMBA's Motion to Intervene [D.I. 8], SAMBA's Reply Brief [D.I. 11] *and the Declaration of S. Ali filed in support of SAMBA's Reply* [D.I. 12], SAMBA holds a valid, enforceable and irrevocable assignment ("Assignment") of all proceeds of a contract at issue in the Saudi Aramco Proceeding, namely the In-Kingdom Contract, including all claims arising out of the In-Kingdom Contract.

(Saudi American Bank's Opening Brief In Support Of Its Motion For Stay Pending Appeal, May 9, 2007 ("Stay Brief") at 5 (emphasis added).) As the SWE&C Trust has demonstrated already, SAMBA had no right on appeal to try explaining away the deficiencies of its case for intervention when it failed to present that alleged evidence to the Bankruptcy Court. (*See* Memorandum Of The SWE&C Liquidating Trustee In Support Of Its Motion To Strike The Declaration Of Sheheryar Ali In Support Of Saudi American Bank's Reply Brief, April 10, 2007 (D.I. #15).

[6] RROA, Tab 47, A1808-A1816.

SAMBA has no claim at all if it prevails in the appeal of the Shaw Group, Inc. ("Shaw") from this Court's judgment that Shaw assumed SWEC's guarantee of BS&W's debt to SAMBA. Indeed, in its settlement agreement with SWEC, SAMBA contractually agreed that SAMBA's allowed claim against the SWE&C Trust will be reduced by SAMBA's recovery from Shaw. Given SAMBA'S judgment against Shaw entered by this Court, SAMBA should not retain any unsecured creditor of the SWE&C Trust.[7] Even if SAMBA loses on its appeal against Shaw, at most SAMBA has only an allowed $2.5 million unsecured claim against the SWE&C Trust. Any settlement between the SWE&C Trust and Aramco will only help SAMBA (and other creditors) by augmenting recoveries and, in turn, distributions to creditors holding allowed claims against the SWE&C Trust. As a mere unsecured creditor (for the time being anyway), SAMBA cannot use the devices of intervention and stay to gain the advantages of a secured creditor, placing itself ahead of all other unsecured creditors. Such a result would be contrary to the Bankruptcy Code and not in the public interest, and could not justify a stay.

However, if SAMBA's continued meddling upsets the Aramco settlement because the SWE&C Trust is unable to dismiss the underlying adversary proceeding,[8] SAMBA will deny the benefit of the settlement to all creditors. Therefore, if SAMBA is correct that it deserves a stay despite its unlikelihood of success, its failure to show irreparable injury from the denial or a stay, or the damage to the public interest from the grant of a stay, SAMBA should not get that stay without posting a bond for the full amount of the settlement that it may deny to other creditors.

---

[7] RROA, Tab 37, A1629, ¶ 7.

[8] *See* Declaration Of James E. Houpt In Opposition To Saudi American Bank's Motion For Stay Pending Appeal, May 22, 2007 ("Houpt Declaration"), ¶¶ 5, 6.

SAMBA's Motion For Stay must fail for a more basic reason: though a discretionary stay pending appeal is an extraordinary and rarely granted remedy, the movant must present the motion first to the Bankruptcy Court, or explain why it did not. SAMBA did neither. SAMBA's Motion For Stay does not satisfy even the threshold requirement for seeking a stay.

## II. <u>LEGAL DISCUSSION</u>

SAMBA correctly asserts that a stay pending appeal requires: (1) a likelihood of success on the merits of its appeal, (2) irreparable injury to SAMBA if the stay is denied; (3) no substantial injury to other interested parties if a stay issues; and (4) no harm to the public interest by granting the stay. (Stay Brief at 4-5 (citing *In re Mader*, 100 B.R. 989, 991 (D. Ill. 1989)).) "[P]roper judgment under Rule 8005 entails a delicate balancing of all elements." *In re Trans World Airlines, Inc.*, No. 01-0056, 2001 Bankr. LEXIS 722 at *5 (Bankr. D. Del. March 16, 2001) (internal quotation marks omitted).

Put more bluntly, as SAMBA's own legal authority says, a "motion for stay pending appeal is in the nature of extraordinary relief necessitating a substantial showing on the part of the [movant]." *In re Mader*, 100 B.R. at 990; *see also In re Adelphia Commc'ns*, 333 B.R. 649, 659 (S.D.N.Y. 2005) ("A party seeking a stay pending appeal carries a heavy burden."); *In re Wilson*, 53 B.R. 123, 124 (D. Mont. 1985) ("[C]ase law indicates that stay of a final order is not to be lightly granted."); *In re Baldwin United Corp.*, 45 B.R. 385, 386 (Bankr. S.D. Ohio 1984) (requiring a "stringent burden of proof" for stay). SAMBA's failure to satisfy even one prong of the test "dooms the motion." *Ohanian v. Irwin (In re Irwin)*, 338 B.R. 839, 843 (E.D. Cal. 2006) (quoting *In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003)). SAMBA fails on all factors – and it fails to jump even the preliminary hurdle to obtain the extraordinary relief of a stay.[9]

---

[9] The SWE&C Trustee does not address likelihood of success further given the contradictions discussed in the Factual Discussion, and the extensive briefing on the issue. Suffice it to say that

A.    **SAMBA's Motion For Stay Should Fail Because SAMBA Did Not Seek A**
**Stay From The Bankruptcy Court, Or Explain Why SAMBA Did Not Do So.**

Before getting to the merits of its Motion For Stay, SAMBA had to clear an unavoidable

procedural hurdle:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge . . .
> for . . . relief pending appeal must ordinarily be presented to the bankruptcy judge
> in the first instance. . . .  A motion for such relief . . . may be made to the district
> court . . ., but the motion shall show why the relief, modification, or termination
> was not obtained from the bankruptcy judge.

Fed. R. Bankr. P. 8005. Rather than trying to jump this hurdle, SAMBA argues simplistically

and without relevant legal support that "it is appropriate for the District Court to review and

resolve SAMBA's Motion for Stay Pending Appeal in the first instance." (Stay Brief at 4.)

SAMBA's reasoning does not withstand scrutiny. Courts invariably require far more

explanation. *Zahn Farms v. KeyBank of New York*, 206 B.R. 643, 644 (B.A.P. 2d Cir. 1997)

("We are of the view that we may not consider the merits of the request for a stay pending

appeal, because by their own admission, the Debtors have not complied with the duty imposed

by FRBP 8005 to present the request for stay first to the bankruptcy judge from whose order the

appeal is taken."); *cf. Babco, Inc. v. Markusic (In re Babco, Inc.)*, 25 B.R. 325, 327 (W.D. Pa.

1982) (deciding stay under former Bankruptcy Act; "It should be noted that Rule 805 provides

that the party requesting the stay in the district court must show why the relief was not obtained

from the Bankruptcy Court. Babco has satisfied this requirement by attaching to its motion the

Bankruptcy Court's opinion and order, which deny its request for an injunction in this

---

a failure to show a likelihood of success is fatal to a motion for stay, despite any showing on
other factors. *See, e.g., Family Kingdom, Inc. v. EMIF New Jersey Ltd. P'ship (In re Family
Kingdom, Inc.)*, 225 B.R. 65, 69 n.6 (D.N.J. 1998) (rejecting argument that an "affirmative
showing on the three other factors" allows a "relaxed" showing on likelihood of success; "[T]his
is not the rule for preliminary injunctions in the Third Circuit."); *Jarboe v. Yukon Nat'l Bank (In
re Porter)*, 54 B.R. 81, 82 (Bankr. N.D. Okla. 1985) ("Without a substantial indication of
probable success on appeal a court should not issue a stay as there is no justification for a court's
intrusion into the normal process of administration and judicial review.").

instance."). The requirement to present the matter to the Bankruptcy Court, or explain a cogent

reason for not doing so, goes to the heart of appellate review:

> [A]n appellate panel (or a district court sitting as such), by generally staying enforcement of a bankruptcy court judgment pending appeal, departs from fundamental principles of appellate review and unnecessarily assumes responsibilities ordinarily reserved to the trial court, where the party requesting relief is not only unable to demonstrate any abuse of discretion by the trial judge, but also is unable to show that issue of a stay pending appeal was presented to the trial judge.

*In re Wilson*, 53 B.R. at 124

SAMBA fails to satisfy the prerequisite of presenting the Motion For Stay to the

Bankruptcy Court, or explain why SAMBA failed to do so (rather than subtly implying that the

Bankruptcy Court is biased – a charge that SAMBA has yet to prove). SAMBA has presented no

evidence or argument for waiving this preliminary procedural requirement, and its Motion For

Stay must fail "on this basis alone." *In re Baltic Assocs., L.P.*, No. 93-MC-303, 1993 U.S. Dist.

LEXIS 18359 at *3 (E.D. Pa. Dec. 29, 1993)

**B.    SAMBA's Motion For Stay Should Fail Because The Mooting Of SAMBA's Appeal In The Absence Of A Stay Is Not Irreparable Injury.**

To show irreparable harm, SAMBA argues only that a settlement between Aramco and

the SWE&C Trust "would render SAMBA's appeal (and Complaint-in-Intervention) moot,

thereby depriving SAMBA of its rights under the Assignment to receive all proceeds of the In-

Kingdom Contract." (Stay Brief at 6.) SAMBA is incorrect that either argument satisfies its

burden of showing irreparable injury.

"It is well settled that an appeal being rendered moot does not itself constitute irreparable

harm." *In re Irwin*, 338 B.R. at 853 (quoting *In re 203 N. LaSalle St. P'ship*, 190 B.R. 595, 598

(N.D. Ill. 1995)); *In re Charter Co.*, 72 B.R. 70, 71 (Bankr. M.D. Fla. 1987) ("In this regard,

Syntex argues primarily that consummation of the Settlement Agreement during the pendency of

Syntex's appeal may render that appeal moot. That argument, however, is insufficient by itself

to establish irreparable injury."); *In re Great Barrington Fair & Amusement, Inc.*, 53 B.R. 237, 240 (Bankr. D. Mass. 1985) (rejecting argument that "appeal will be rendered moot" constitutes irreparable harm); *In re Baldwin United Corp.*, 45 B.R. at 386 (finding no irreparable injury where movant claims "that only a stay will prevent their appeal from being moot").

As SAMBA conceded by its continuing silence, if SAMBA has a claim against Aramco for paying a settlement (despite the lack of any factual or legal support for such a claim), SAMBA can vindicate its right in Saudi Arabia's courts. That fact again defeats any showing of irreparable injury. *See, e.g., In re Family Kingdom, Inc.*, 225 B.R. at 75 (finding no harm where "the alleged 'harm' can be remedied in the form of money damages"); *In re Irwin*, 338 B.R. at 854 (finding no irreparable harm where "[t]he only harms [movant] has put forth are economic in nature"). SAMBA may be in a better position to coerce concessions from Aramco or the SWE&C Trust if SAMBA can impede any settlement, but that does not suffice as irreparable injury. *See, e.g., In re Irwin*, 338 B.R. at 854 ("Loss of bargaining power or negotiating position does not constitute irreparable harm.").

The harm that SAMBA must show is "a significant threat of irreparable injury," even if SAMBA could satisfy any other prong of the test for a stay. *See, e.g., In re Irwin*, 338 B.R. at 854 ("As appellant cannot show the threat of irreparable injury under any standards, Appellant's motion for stay can be denied on this basis alone."). SAMBA's failure to show irreparable injury requires denial of its Motion For Stay.

C.    **SAMBA's Motion For Stay Should Fail Because Of The High Likelihood Of Substantial Injury To Other Unsecured Creditors.**

If SAMBA prevails in Shaw's appeal from this Court's award of damages, SAMBA unquestionably has no claim in the underlying adversary proceeding by the SWE&C Trust against Aramco. But if SAMBA frustrates the hoped-for settlement between the SWE&C Trust and Aramco in the meantime, SAMBA will prevent the recovery of this asset, and the improved

distribution to hundreds of creditors. On the other hand, if SAMBA does not prevail in Shaw's appeal but still frustrates a settlement, SAMBA will hurt not only the hundreds of creditors who will benefit from the settlement, but its own recovery on its $2.5 million allowed, unsecured claim. (*See* Houpt Declaration, ¶¶ 5-7.)

Either way, SAMBA's actions threaten a substantial injury to other creditors of the SWE&C Trust, and require that the Motion For Stay be denied. *See, e.g., In re Charter Co.*, 72 B.R. at 72 (denying stay where "other parties will suffer substantial harm if a stay pending appeal is granted"); *In re Tulane Hotel Investors Ltd. P'Ship*, 68 B.R. 145 (E.D. La. 1986) (denying stay where it "could result in the collapse of such [a settlement] agreement to the detriment of the estate and, accordingly, the estate's creditors"). But if this Court were disposed to grant the Motion To Stay nonetheless, the SWE&C Trustee respectfully asks that the Court require, at a minimum, a bond from SAMBA to protect other creditors from the loss of the settlement. The Federal Rules of Bankruptcy Procedure contemplate that the Court:

> may suspend or order the continuation of other proceedings in the case under the Code . . . on such terms as will protect the rights of all parties in interest. . . . The district court . . . may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court.

Fed. R. Bankr. P. 8005; *see also Pavy v. Ardoin (In re Norman)*, 74 B.R. 7, 8 (Bankr. W.D. La. 1986) ("Bankruptcy Rule 8005 gives the bankruptcy court the discretion to make an appropriate order during the pendency of an appeal to protect the rights of all parties in interest.").

The SWE&C Trustee is reluctant to disclose the amount of the proposed settlement while confidential and sensitive negotiations proceed, subject to the protection of Rule 408 of the Federal Rules of Evidence. Nevertheless, if the Court were disposed to grant a stay, the SWE&C Trustee would seek Aramco's authority to disclose the amount of the nascent settlement, and would ask the Court to protect creditors by compelling SAMBA to post a bond in the amount of the settlement and "protect non-appealing parties from any loss occasioned by a stay." *Official*

*Comm. of Unsecured Creditors v. Columbia Gas Sys, Inc. (In re Columbia Gas Sys., Inc.)*, No.

92-127-SLR, 1992 U.S. Dist. LEXIS 3253 at *2 (D. Del. March 10, 1992); *In re Babco, Inc.*, 25

B.R. 325, 327 (D. Pa. 1982) ("The district court may condition the relief it grants under this rule

upon the filing of a bond or other appropriate security with the referee.").

**D.    SAMBA's Motion For Stay Should Fail Because A Stay Would Confound**
**The Bankruptcy Code's Protections And Harm The Public Interest.**

Like its conclusory allegations to support the three other prongs of the test for a stay,

SAMBA implies without relevant legal support that granting its Motion For Stay to "maintain

the status quo" would not harm "the public's interest." (Stay Brief at 7.) SAMBA's sole support

for this conclusion is a curious case that rejects the four-pronged test (including the public-

interest prong), that SAMBA quotes and then tries to satisfy in its Stay Brief. *See In re Smith*, 34

B.R. 144, 145-46 (Bankr. D. Vt. 1983) ("The bankruptcy courts have consistently held that these

factors must be established before a stay pending appeal is issued. . . .  This Court is not

convinced that bankruptcy courts should uniformly require compliance with the four criteria

enumerated above before a stay on appeal is granted."; rejecting the conclusion that a "public

interest issue" is involved in consideration of a stay).  Furthermore, the case concedes that the

four-prong test is the controlling law of the Third Circuit. *Id.*

Not surprisingly, other courts – including this Court – consistently require satisfaction of

the four-prong test, including the public interest prong. *See In re Columbia Gas Sys., Inc.*, 1992

U.S. Dist. LEXIS 3253 at *3. Delay of litigation caused by a stay is one factor that can frustrate

public policy. *In re Porter*, 54 B.R. at 82 ("The public interest, though difficult to measure in a

case involving primarily private rights, is generally served by moving forward."); *see also In re*

*Tulane Hotel Investors Ltd. P'Ship*, 68 B.R. at 150 (finding stay is not in the public interest

where settlement "will contribute to the quick and orderly termination of this litigation";

"Consequently, it appears that denial of the stay, rather than its granting, will serve the public

interest."). In this case, where difficult negotiations have consumed years and are on the verge of possible success, and where the underlying case has been stalled in the interim to the Bankruptcy Court's frustration (*see* Houpt Declaration, ¶ 8), further delay while Shaw's appeal wends its way through the Third Circuit is not in the public interest.

A stay is not in the public interest for at least one additional reason: SAMBA is a general, unsecured creditor like hundreds of others who may or will benefit from the SWE&C Trustee's efforts to collect assets. (*See supra* note 3.) Giving SAMBA the benefit it seeks by intervening in the SWE&C Trust's case against Saudi Aramco, or giving SAMBA a stay that delays collection of assets, gives SAMBA advantages that only a secured creditor may claim. *See* 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . .").

SAMBA is claiming just such an interest, though SAMBA is only an unsecured creditor, and never asserted status as a secured creditor. (*See* RROA, Tab 49, A1855 (submitting proof of claim in support of adversary proceeding against Shaw; asserting an "Unsecured Nonpriority Claim").) To give SAMBA the benefits of a secured creditor, to the detriment of other unsecured creditors, constitutes the harm to public policy that a stay must avoid. *See, e.g., In re Smoldt*, 68 B.R. 533, 535 (Bankr. N.D. Iowa 1986) (finding an "injury to the public interest" where "granting a stay pending appeal would eviscerate the Bankruptcy Code and undermine the clear intent of Congress by giving the Debtors what this Court denied them"). SAMBA was not, is not, and cannot be a secured creditor – and SAMBA does not have the right to assert that status now by delaying or frustrating a settlement that should go to the benefit of all unsecured creditors of the SWE&C Trust.

## III. <u>CONCLUSION</u>

WHEREFORE, the Trust respectfully asks this Court to deny SAMBA's Motion To Stay.

Dated:  May 24, 2007
       Wilmington, Delaware

THE SWE&C LIQUIDATING TRUST

By: _____
    Adam G. Landis (No. 3407)
    Kerri K. Mumford (No. 4186)
    LANDIS RATH & COBB LLP
    919 Market Street, Suite 600
    Wilmington, DE  19801
    Tel:  (302) 467-4400
    Fax:  (302) 467-4450

    - and -

    Lorraine S. McGowen
    Alyssa Englund
    ORRICK, HERRINGTON & SUTCLIFFE LLP
    666 Fifth Avenue
    New York, NY  10103-0002
    Tel:  (212) 506-5000
    Fax:  (212) 506-5151

    - and -

    James E. Houpt
    ORRICK, HERRINGTON & SUTCLIFFE LLP
    400 Capitol Mall, Suite 3000
    Sacramento, CA  95814
    Tel:  (916) 447-9200
    Fax: (916) 329-4900

    Counsel to the SWE&C Liquidating Trust

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| STONE & WEBSTER, INC., *et al.*, | Case No. 00-2142 (PJW) |
| Debtors. | Jointly Administered |
| | |
| SAUDI AMERICAN BANK | Civil No. 06-399-SLR |
| Appellant, | |
| - against – | |
| SAUDI ARABIAN OIL COMPANY, STONE & WEBSTER, INCORPORATED, STONE & WEBSTER ENGINEERING CORP. and SWE&C LIQUIDATING TRUSTEE, | |
| Respondent. | |

### DECLARATION OF JAMES E. HOUPT IN OPPOSITION TO
### SAUDI AMERICAN BANK'S MOTION FOR STAY PENDING APPEAL

I, James E. Houpt, declare as follows:

1.      I am a partner with the law firm of Orrick, Herrington & Sutcliffe LLP, counsel to the SWE&C Liquidating Trustee ("SWE&C Trustee") and the SWE&C Liquidating Trust ("SWE&C Trust") in the above-referenced cases. I am licensed to practice law before the courts of Virginia, Maryland, the District of Columbia, and California, the United States Courts of Appeal for the Fourth and Ninth Circuits, and in several United States District Courts. I submit this declaration in opposition to Saudi American Bank's Motion For Stay Pending Appeal.

-1-

2.      On or about June 7, 2004, the Honorable Peter J. Walsh of the United States Bankruptcy Court for the District of Delaware ordered the parties to Adversary Proceeding No. 02-3963, SWE&C Trust versus Saudi Arabian Oil Company ("Aramco") ("Adversary Proceeding"), to participate in mediation in an effort to resolve the matter.  Although Saudi American Bank ("SAMBA") was not a party to the Adversary Proceeding, I agreed at a hearing before Judge Walsh that SAMBA could participate in mediation in the hopes of reaching a universal settlement among all parties claiming an interest in the matter.

3.      During formal mediation sessions with former United States Bankruptcy Judge Frank Conrad acting as mediator, it became apparent to me that universal settlement among all of the parties would be impossible largely because of unreasonable and intractable positions taken by SAMBA.    Nonetheless, Aramco and the SWE&C Trustee and their respective counsel determined to continue negotiating toward a potential resolution of the Adversary Proceeding between Aramco and the SWE&C Trustee, which negotiations did not need to include SAMBA or its counsel to be binding upon Aramco and the SWE&C Trustee.

4.      As a result of further negotiation, Aramco and the SWE&C Trustee have reached a tentative settlement of the Adversary Proceeding.  These negotiations were quite difficult in that the Parties needed to resolve numerous issues relating to the settlement, such as tax issues and third-party claims, and the resulting proposed settlement is a complicated, multi-party transaction.  Although I believe that the parties have reached a general agreement, issues still remain to be resolved, and I do not believe that any Party to the settlement is yet bound by its terms.  Therefore, the settlement remains vulnerable.

5.      I do not have authorization to release economic terms of the settlement, and I believe that the ongoing negotiations are confidential and subject to the protections of Rule 408 of the Federal Rules of Evidence.  Nevertheless, I believe it is safe and prudent to disclose that

any settlement is contingent on the SWE&C Trust dismissing the Adversary Proceeding. Therefore, any order that would prevent the dismissal would necessarily frustrate our efforts to effectuate the settlement, and could prevent the Parties from ever reaching a consensual resolution.

6.     If a settlement is not effectuated, the creditors of the SWE&C Trust will be denied the benefits of the settlement.  Any recovery for the benefit of the SWE&C Trust's creditors would require that the SWE&C Trustee and his counsel pursue that recovery through litigation, resulting in additional cost, delay, and uncertainty.

7.     I believe that releasing the economic terms of the proposed settlement prematurely presents certain risks and may not be in the best interests of the SWE&C Trust. Nevertheless, if this Court is disposed to grant SAMBA's motion to stay the Adversary Proceeding, I would seek my client's and Aramco's agreement to release those terms so that the Court could establish a bond and require SAMBA to post such a bond to protect the SWE&C Trust's creditors in the event that the stay prevents the parties from effecting their settlement.

8.     The settlement negotiations described above have taken nearly three years.  The Bankruptcy Court has required periodic reports on the status of negotiations, and has expressed what I would characterize as frustration at the long time that settlement has taken the Parties.  If this Court stays the Adversary Proceeding pending an appeal by the Shaw Group, Inc. ("Shaw") from this Court's order that Shaw is liable on a purported guarantee of amounts owed to SAMBA, the delay in resolution of the Adversary Proceeding will continue for months or even years as the appeal progresses.  It is very possible that one or more of the Parties may withdraw from the negotiated settlement.

Executed on May 23, 2007.  I declare under penalty of perjury that the foregoing is true and correct.

_James E. Houpt_

James E. Houpt

## CERTIFICATE OF SERVICE

I, Kerri K. Mumford, hereby certify that on this 24th day of May 2007, I caused a true and correct copy of the *[Corrected] Answering Brief of the SWE&C Liquidating Trustee in Opposition to Saudi American Bank's Motion for Stay Pending Appeal and Declaration of James E. Houpt in Opposition to Saudi American Bank's Motion for Stay Pending Appeal* to be filed with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Adam G. Landis (landis@lrclaw.com)
> Kerri King Mumford (mumford@lrclaw.com)
> Francis A. Monaco, Jr. (fmonaco@monlaw.com)
> Kevin J. Mangan (kmangan@monlaw.com)
> Dennis A. Meloro (melorod@gtlaw.com)

I further certify that I have served the parties listed on the service list below in the manner indicated:

**First Class Mail**
John C. Hutchins, Esquire
Daniel E. Rosenfeld, Esquire
Amy B. Abbott, Esquire
Kirkpatrick & Lockhart Preston Gates Ellis LLP
State Street Financial Center
One Lincoln Center
Boston, MA 02111

**First Class Mail**
Lorraine S. McGowen, Esquire
Alyssa Englund, Esquire
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0002

**First Class Mail**
James E. Houpt, Esquire
Lynn Trinka Ernce, Esquire
Orrick, Herrington & Sutcliffe LLP
400 Capitol Mall, Suite 3000
Sacramento, CA 95814

Kerri K. Mumford (No. 4186)

429.001-16770